IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
------------------------------------------------------------------- X
HASSAN BIN ATTASH,                                                  :
     Detainee, Camp Delta,                                          :
     Guantánamo Bay Naval Station,                                  :
     Guantánamo Bay, Cuba;                                          :
                                                                    :       PETITION FOR WRIT
BENYAMIN MOHAMMED AL HABASHI,                                       :       OF HABEAS CORPUS
     as Next Friend of HASSAN BIN ATTASH;                           :
                                                                    :       No. _____
A'AMER SHAKER,                                                      :
     as Next Friend of HASSAN BIN ATTASH;                           :
                                                                    :
          Petitioners,                                              :
     v.                                                             :
                                                                    :
GEORGE W. BUSH,                                                     :
     President of the United States                                 :
     The White House                                                :
     1600 Pennsylvania Ave., N.W.                                   :
     Washington, D.C.  20500;                                       :
                                                                    :
DONALD RUMSFELD,                                                    :
     Secretary, U.S. Department of Defense                          :
     1000 Defense Pentagon                                          :
     Washington, D.C.  20301-1000;                                  :
                                                                    :
ARMY BRIG. GEN. JAY HOOD,                                           :
     Commander, Joint Task Force – GTMO                             :
     JTF-GTMO                                                       :
     APO AE 09360; and                                              :
                                                                    :
ARMY COL. BRICE GYURISKO,                                           :
     Commander, Joint Detention                                     :
     Operations Group – JTF-GTMO,                                   :
     JTF-GTMO                                                       :
     APO AE 09360,                                                  :
                                                                    :
          Respondents.                                              :
                                                                    :
All Respondents are sued in their                                   :
official capacities.                                                :
------------------------------------------------------------------- X
```

**PETITION FOR WRIT OF HABEAS CORPUS**

1. Petitioner Hassan Bin Attash ("Petitioner") seeks a Writ of Habeas Corpus. He is a citizen of Yemen being held, virtually *incommunicado* and without access to counsel, in Respondents' unlawful custody in Camp Delta, Guantánamo Bay Naval Station, Guantánamo Bay, Cuba ("Guantánamo Bay" or "Guantánamo").

2. Petitioner Attash acts on his own behalf and through his Next Friends, Benyamin Mohammed Al Habashi and A'amer Shaker ("Next Friends"), who are also detained at Guantánamo. *See* Authorization of Benyamin Mohammed Al Habashi (Ex. A) and Authorization of A'amer Shaker (Ex. B).

## I. JURISDICTION

3. Petitioner brings this action under 28 U.S.C. §§ 2241 and 2242. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1651, 2201 and 2202; 5 U.S.C. § 702; the Fifth, Sixth and Eighth Amendments to the United States Constitution; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; and customary international law. Insofar as he seeks declaratory relief, Petitioner also relies on Federal Rule of Civil Procedure 57.

4. This Court has authority under 28 U.S.C. § 2241 to grant the Writ of Habeas Corpus and, under 28 U.S.C. § 2242, to entertain the Petition filed by Next Friends on behalf of Petitioner.

5. Pursuant to 28 U.S.C. § 2201, this Court is empowered to declare the rights and other legal relations of the parties herein and, under 28 U.S.C. § 2202, to effectuate and enforce declaratory relief by all necessary and proper means, as this case involves an actual controversy within the Court's jurisdiction.

## II.  VENUE

6.  Venue is proper in the United States District Court for the District of Columbia because at least one Respondent resides in the district, a substantial part of the events or omissions giving rise to the claim occurred in the district, at least one Respondent may be found in the district, and all Respondents are either officers or employees of the United States or an agency thereof acting in their official capacities.  *See* 28 U.S.C. §§ 1391(b); 1391(e).

## III.  THE PARTIES

### A.  Petitioners and Their Next Friends

7.  Petitioner Attash is presently incarcerated and held in Respondents' unlawful custody at Guantánamo Bay, Cuba.

8.  Because Mr. Attash has been denied access to legal counsel and to the courts of the United States, fellow detainees with legal representation act as Next Friends for him in this proceeding.

### B.  Respondents

9.  Respondent George W. Bush is the President of the United States and Commander in Chief of the United States military.  It is pursuant to the November 13, 2001 Military Order promulgated by Respondent Bush, *see* ¶¶ 22-28 *infra*, or alternatively under his authority as Commander in Chief and under the laws and usages of war, that Petitioner is being detained.  Accordingly, Respondent Bush is ultimately responsible for Petitioner's unlawful detention.

10. Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Pursuant to either the November 13, 2001 Military Order or the President's authority as Commander in Chief and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining the custody and control of Petitioner.

11.  Respondent Army Brig. Gen. Jay Hood is the Commander of Joint Task Force–GTMO, the task force running the detention operation at Guantánamo. He has supervisory responsibility for Petitioner.

12.  Respondent Col. Brice Gyurisko is the Commander of the Joint Detention Operations Group and the Joint Task Force–GTMO detention camps, including the United States facility where Petitioner is presently held. He is the immediate custodian responsible for Petitioner's detention.

### IV.  STATEMENT OF FACTS

#### A.  Petitioner Attash

13.  Petitioner Attash is a citizen of Yemen. He is approximately 20 years old.

#### B.  Petitioner's Arrest and Prior Detention

14.  Respondents have produced no information concerning the circumstances of the seizure and prior detention of Mr. Attash. On information and belief, Mr. Attash was seized in 2002 from his home in Karachi, Pakistan, when he was 17 years old. He was held in a Karachi prison for four days, then transferred to a prison near Kabul, Afghanistan operated by U.S. forces, where he was subjected to torture and held until September, 2002. Then he was transferred by U.S. authorities to Jordan, where he was imprisoned for sixteen months and suffered abuse and torture at the hands of his captors. During his imprisonment in Jordan, Mr. Attash was, for a period of three months, tortured for twelve hours per day. In early 2004, he was transferred and held throughout that year in U.S. prison facilities in Bagram and Kabul, Afghanistan, where he suffered abuse that left him with, among other things, a shattered eardrum and damaged throat. In early 2005, he was transferred to Guantánamo.

### C. Petitioners' Current Detention

15. Petitioner seeks to enforce his rights to a judicial determination of whether he is being legally confined at Guantánamo and whether there is a factual basis for Respondents' determination that Petitioner is an "enemy combatant."

16. Petitioner is not and never has been an enemy alien, lawful or unlawful belligerent, terrorist, or combatant of any kind. He is not and never has been an "enemy combatant." He is not "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

17. Aside from an unsupported assertion that all detainees at Guantánamo Bay are enemy combatants, Respondents have advanced no justification for the detention of Petitioner. Respondents have failed even to publicly acknowledge that they are detaining Mr. Attash at Guantánamo Bay.

18. Respondents have produced no evidence linking Petitioner to al Qaeda or any other organization or persons involved in either the terrorist attacks on September 11, 2001, or any other terrorist attack on the United States or its citizens. Mr. Attash is not a member of any organization that planned, authorized, committed or aided the terrorist attacks against the United States on September 11, 2001, or any other terrorist attack on the United States or its citizens.

### D. The Joint Resolution

19. In the wake of the September 11, 2001 attacks, the United States, at the direction of Respondent Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized the President to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (Jan. 18, 2001).

4

20. Neither the Respondents nor any other agents of the United States government have produced any information to support any link between Petitioner Attash and organizations or persons involved in the terrorist attacks on September 11, 2001, or any other terrorist attack attributed by the United States to Al Qaeda or any other international terrorist group.

### E. The Detention Order

21. On November 13, 2001, Respondent Bush issued a Military Order authorizing indefinite detention without due process of law. The Order authorizes Respondent Rumsfeld to detain anyone Respondent Bush has "reason to believe":

    i. is or was a member of the organization known as al Qaida;
    ii. has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or
    iii. has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

Military Order of November 13, 2001.

22. Respondent Bush must make this determination in writing. The Order was neither authorized nor directed by Congress, and it is beyond the scope of the Joint Resolution of September 18, 2001.

23. The Military Order vests the President with complete discretion to identify the individuals that fall within its scope. It establishes no standards governing the use of his discretion. Once a person has been detained, the Order contains no provision for the person to be notified of the charges he may face. Instead, the Order authorizes detainees to be held without charges. It contains no provision for detainees to be notified of their rights under domestic and international law, and provides neither the right to counsel nor the right to consular access. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and no provision for appeal to an

Article III or any other court. In fact, the Order expressly bars any form of judicial review. The Order authorizes indefinite and unreviewable detention, based on nothing more than the President's written determination that an individual is subject to its terms.

24. The Military Order authorizes the use of military commissions to try noncitizens accused of terrorism and other war crimes. It establishes no guarantee that charges will be promptly brought, that these charges will be made known to the accused and his counsel, or that a speedy trial providing adequate legal process will be afforded to determine guilt on such charges or their legal validity under domestic or international law. It permits prolonged pre-commission detention in solitary confinement, risking long-term psychological injury.

25. Petitioner is not properly subject to the Military Order.

26. The Military Order was promulgated in the United States and in this judicial district; the decision to detain and designate Petitioner Attash was made by Respondents in the United States and in this judicial district; the decision to detain Petitioners at Guantánamo was made in the United States and in this judicial district; and the decisions to continue detaining Petitioner were, and are, being made by Respondents in the United States and in this judicial district.

27. In the related case of *Rasul v. Bush*, 215 F. Supp. 2d 55 (D.D.C. 2002), Respondents contended that the petitioners in that case were being detained, not pursuant to the President's Military Order, but under the President's authority as Commander in Chief and under the laws and usages of war. However, Petitioner Attash was not arrested or detained by the United States in the course of the armed conflict.

### F.  Guantánamo Bay Naval Station

28. On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray, at the United States Naval Base, in Guantánamo Bay, Cuba. In April 2002, all prisoners were transferred to Camp Delta, a more

permanent prison facility in Guantánamo. Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

29. Detainees incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).

30. On a precise date unknown to counsel for Petitioner, but known to Respondents, the United States transferred Mr. Attash to Guantánamo Bay Naval Station, where upon information and belief, he currently resides in the custody and control of Respondents.

### G. Conditions of Detention at Guantánamo

31. Upon information and belief, the United States has held detainees at Guantánamo Bay Naval Station virtually *incommunicado* under conditions that violate their constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment.

32. Many of these violations – including isolation for up to thirty days, twenty-eight hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer.

33. On information and belief, Petitioner Attash has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, although he has not been charged with an offense or notified of any pending or contemplated charges. Mr. Attash has not appeared before a lawful military or civilian tribunal and has not been provided counsel or the means to contact and obtain counsel.

34. Petitioner has not been informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and

       Duties of Man, or customary international law. Respondents have taken the position that Mr. Attash should not be told of these rights. As a result, Mr. Attash is completely unable either to protect or to vindicate his rights under domestic and international law.

35. The ICRC has charged the U.S. military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantánamo*, N.Y. Times, Nov. 30, 2004, at A1. According to ICRC, doctors and other medical workers at Guantánamo have participated in planning for interrogations. *Id.*

36. In memoranda spanning a two-year period, the FBI described "highly aggressive interrogation techniques" used at Guantánamo including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. Carol D. Lenning, *Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos*, Wash. Post, Dec. 26, 2004, at A1. A military investigation confirmed that these and other aggressive techniques were approved for use and were used at Guantánamo. *Investigators Urged Reprimand of Guantánamo Ex-Commander*, A.P., July 12, 2005. The report also confirmed that female interrogators have engaged in sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. *Id.*

37. Newspapers have widely reported allegations of religious abuses, including confiscation of prayer items, disrespect of the Koran, and taking away the detainees' trousers with the knowledge that this would prevent them from praying. Carol Rosenberg, *Guantánamo Bay: Captives Allege Religious Abuse*, Miami Herald, Mar. 6, 2005, at A1.

38. The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical, psychological, and religious abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information

       from the detainees. *See* Neil A. Lewis, *U.S. Eroding Inmates' Trust at Cuba Base, Lawyers Say*, N.Y. Times, Mar. 8, 2005, at A18.

39. Respondents, acting individually or through their agents, have stated that whatever limitations apply to coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense do not apply to interrogations conducted by agents of the CIA or other entities under President Bush.

40. Counsel for Respondents maintain that the United States may hold the detainees at Guantánamo under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Mot. to Dismiss at 22–24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle. Moreover, the Government has acknowledged plans to begin constructing a permanent facility at Guantánamo. *Investigators Urged Reprimand of Guantánamo Ex-Commander*, A.P., July 12, 2005.

41. According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo Bay indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, *available at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html.

### H. Combatant Status Review Tribunal

42. On July 7, 2004, Deputy Secretary of Defense Paul Wolfowitz signed an Order directing the Secretary of the Navy to establish a Combatant Status Review Tribunal ("CSRT") to be convened at Guantánamo Bay. *See* Memorandum for the Secretary of the Navy, July 7, 2004 ("Memorandum"). The ostensible purpose of the CSRT is to determine on a case-by-case basis whether a detainee is "properly detained as an enemy combatant," *id.* at ¶ g.12, notwithstanding Deputy Secretary Wolfowitz's assertion that each detainee has already "been determined to be an enemy combatant through multiple levels of review by officers of the Department of Defense," *id.* at ¶ a.

9

43. The procedures ordered by Deputy Secretary Wolfowitz for the CSRT are plainly deficient, failing to provide due process protection for the detainees as a whole and for Petitioners in particular. For instance, notice of the factual basis for a detainee's designation as an "enemy combatant" is provided to the detainee only if the factual basis is unclassified, Memorandum at ¶ g.1, and detainees' counsel may not be present at the CSRT hearings. Instead, the detainees are offered the assistance of "Personal Representatives," *id.* at ¶ c – a non-lawyer military officer whose conversations with individual detainees are not privileged and will, on information and belief, be monitored by the United States military. These factors alone are sufficient to establish a violation of due process. *See In re Guantánamo Detainee Cases*, 355 F. Supp. 2d 443, 472 (D.D.C. 2005). Moreover, the panels are not bound by the rules of evidence applicable in a court of law, Memorandum at ¶ 9, and "enemy combatant" status is determined only under a preponderance-of-the-evidence standard, with a rebuttable presumption in favor of the government's evidence, *id.* at ¶ g.12. The procedures also violate due process to the extent that they rely upon statements obtained under torture or otherwise involuntarily as evidence, and because they employ a vague and overbroad definition of "enemy combatant." *See In re Guantánamo Detainee Cases*, 355 F. Supp. 2d at 472, 474.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**(Unlawful Detention)**

44. Petitioner and his Next Friends incorporate paragraphs 1–43 by reference.

45. Petitioner is not, and never has been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind. Petitioner is not, and never has been, an "enemy combatant." He was not "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004). Petitioner has committed no violation

of domestic, foreign, or international law. There is no basis whatsoever in law for his detention.

## SECOND CLAIM FOR RELIEF
### (Due Process – Fifth Amendment to the United States Constitution)

46. Petitioner and his Next Friends incorporate paragraphs 1–45 by reference.

47. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the Fifth Amendment to the United States Constitution. Respondent Bush has ordered the prolonged, indefinite and arbitrary detention of individuals without Due Process of Law. Respondents Rumsfeld, Hood and Gyurisko are likewise acting in violation of the Fifth Amendment since they act at the President's direction. On its face, the Executive Order violates the Fifth Amendment.

## THIRD CLAIM FOR RELIEF
### (Due Process – Fifth Amendment to the United States Constitution)

48. Petitioner and his Next Friends incorporate paragraphs 1–47 by reference.

49. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner to be free from arbitrary, prolonged and indefinite detention, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. The Executive Order, as applied to Petitioners, violates the Fifth Amendment.

## FOURTH CLAIM FOR RELIEF
### (Due Process – International Law)

50. Petitioner and his Next Friends incorporate paragraphs 1–49 by reference.

51. By the actions described above, Respondents, acting under color of law, have violated and continue to violate customary international law, the Third and Fourth Geneva Conventions, Articles 9 and 14 of the International Covenant on Civil and Political Rights, and Articles XXVIII, XXV and XXVI of the American Declaration on the Rights and Duties of Man. On its face, the Executive Order violates international law.

11

## FIFTH CLAIM FOR RELIEF
### (Due Process – International Law)

52. Petitioner and his Next Friends incorporate paragraphs 1–51 by reference.

53. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner to be free from arbitrary, prolonged and indefinite detention, in violation of customary international law, the Third and Fourth Geneva Conventions, Articles 9 and 14 of the International Covenant on Civil and Political Rights, and Articles XXVIII, XXV and XXVI of the American Declaration on the Rights and Duties of Man.  Respondent Bush has ordered the prolonged, indefinite and arbitrary detention of Petitioner, without legal process, in violation of binding obligations of the United States under international law.  Respondents Rumsfeld, Hood and Gyurisko are likewise acting in violation of international law, since they act at the President's direction.  The Executive Order, as applied to Petitioner, violates these and other binding obligations of the United States under international law.

## SIXTH CLAIM FOR RELIEF
### (Due Process – Failure to Comply with United States Military Regulations and International Humanitarian Law)

54. Petitioner and his Next Friends incorporate paragraphs 1–53 by reference.

55. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the rights accorded to persons seized by the United States Military in times of armed conflict, as established by, *inter alia*, the regulations of the United States Military, Articles 4 and 5 of the Third Geneva Convention, the Fourth Geneva Convention and customary international law.

## SEVENTH CLAIM FOR RELIEF
### (War Powers Clause)

56. Petitioner and his Next Friends incorporate paragraphs 1–55 by reference.

57. By the actions described above, Respondents, acting under color of law, have exceeded the constitutional authority of the Executive and have violated and continue to violate the

War Powers Clause by ordering the prolonged and indefinite detention of Petitioner without congressional authorization.

**EIGHTH CLAIM FOR RELIEF**
**(Suspension of the Writ)**

58. Petitioner and his Next Friends incorporate paragraphs 1–57 by reference.

59. To the extent the Executive Order of November 13, 2001 disallows any challenge to the legality of Petitioner's detention by way of habeas corpus, the Order and its enforcement constitute an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution. The actions of the Respondents in claiming the legal right to detain Petitioner without judicial authorization or review constitute a suspension of the Writ of Habeas Corpus in violation of Article I of the United States Constitution.

**NINTH CLAIM FOR RELIEF**
**(Arbitrary and Unlawful Detention – Violation of the Administrative Procedures Act)**

60. Petitioner and his Next Friends incorporate paragraphs 1–59 by reference.

61. By detaining Petitioner for the duration and in the manner described herein, Respondents have arbitrarily, unlawfully and unconstitutionally detained Petitioner in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

**TENTH CLAIM FOR RELIEF**
**(Violation of Due Process and Convention Against Torture—Rendition)**

62. Petitioner and his Next Friends incorporate paragraphs 1–61 by reference.

63. Upon information and belief, Petitioner is at risk of being rendered, expelled, or returned without lawful procedures to a country that engages in torture. Such transfer creates a foreseeable and direct risk that Petitioner will be subjected to torture in violation of the Due Process Clause of the Fifth Amendment to the Constitution, the Convention Against Torture, and the 1954 Convention Relating to the Status of Refugees.

64. Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief that the Court may deem appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner and his Next Friends pray for relief as follows:

1. Grant Ali Mohammed Benyamin Mohammed Al Habashi and A'amer Shaker status as Next Friends of Petitioner Attash;

2. Order and declare the Executive Order of November 13, 2001 unlawful as a violation of the Fifth Amendment to the United States Constitution; the War Powers Clause of Article I of the United States Constitution; the Administrative Procedures Act, 5 U.S.C. § 702; customary international law; the International Covenant on Civil and Political Rights; and the American Declaration on the Rights and Duties of Man;

3. Order and declare that Petitioner's indefinite detention is in violation of the Fifth Amendment to the United States Constitution; customary international law; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; the regulations of the United States Military; the Geneva Conventions; and international humanitarian law;

4. Order and declare that the Combatant Status Review Tribunal, as currently constituted and designed, is in violation of the Fifth Amendment to the United States Constitution; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; the regulations of the United States Military; the Geneva Conventions; and international humanitarian law;

5. Order and declare that Petitioner is subject to the protections of the Geneva Conventions and international humanitarian law;

6. Order and declare that the provision of the Executive Order of November 13, 2001 that bars Petitioner from seeking relief in this Court is an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution;

7. Order immediate, private and unmonitored access by counsel to Petitioner;

8.     Order immediate cessation of direct or indirect interrogation of Petitioner while the instant litigation is pending;

9.     Order immediate preservation of all evidence of torture or other abusive interrogation techniques or treatment by any individual acting for or on behalf of the United States military, the United States, or any agency thereof;

10.     Order Petitioner's immediate release from unlawful custody if Respondents refuse to comply with the terms of relief sought in paragraphs 1 through 9, *supra*;

11.     Order Respondents not to move Petitioner from Guantánamo Bay without providing thirty-days' notice to the Court and Petitioner's counsel of any proposed transfer;

12.     To the extent Respondents contest any material factual allegations in this Petition, schedule an evidentiary hearing at which Petitioner may adduce proof in support of his allegations; and

13.     Grant such other legal or equitable relief as the Court deems necessary and appropriate to protect Petitioner's rights under the United States Constitution and international law.

Dated: Washington, D.C.
August 9, 2005

Respectfully submitted,

COVINGTON & BURLING

By: _____
David H. Remes
D.C. Bar No. 370782
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Tel: (202) 662-5212
Fax: (202) 778-5212

Marc D. Falkoff
D.C. Bar No. 491149
Robert H. Knowles, *pro hac vice* to be filed
1330 Avenue of the Americas
New York, NY 10019
Tel: (212) 841-1166 Fax: (646) 441-9166
*Lead Counsel for Petitioners*

CENTER FOR CONSTITUTIONAL RIGHTS
Michael Ratner
Barbara Olshansky
Tina Monshipour Foster
666 Broadway, 7th Floor
New York, NY  10012
Tel:  (212) 243-3805
*Of Counsel for Petitioners*

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on this 9th day of August 2005.

_____
David H. Remes
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Tel: (202) 662-5212
Fax: (202) 662-6291

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing Petition for Writ of Habeas Corpus and a Local Rule 405 Related-Case Notification to be served this 9th day of August 2005, by registered mail on:

The Honorable Alberto R. Gonzales
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530;

The Honorable Donald Rumsfeld,
Secretary, United States
Department of Defense
1000 Defense Pentagon
Washington, D.C. 20301-1000;

Army Brigadier General Jay Hood
Commander, Joint Task Force–GTMO
JTF-GTMO
APO AE 09360; and

Army Col. Brice Gyurisko,
Commander, Joint Detention Operations Group – JTF-GTMO
JTF-GTMO
APO AE 09360

I further certify that I have caused a copy of the foregoing Petition for Writ of Habeas Corpus and a Local Rule 405 Related-Case Notification to be served this same day by hand on:

The Honorable Kenneth L. Wainstein
Interim United States Attorney for the District of Columbia
Judiciary Center
555 4th Street, N.W.
Washington, D.C. 20530

David H. Remes
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401