IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HASSAN BIN ATTASH, et al.,<br><br>    Petitioners,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br><br>    Respondents. | Civil Action No. 05-1592 (RCL) |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO
PETITIONER'S MOTION TO RECONSIDER AND VACATE
PORTIONS OF THE COURT'S SEPTEMBER 1, 2005 ORDER**

Petitioner has moved for reconsideration (see dkt. no. 17) of certain portions of the Court's September 1, 2005 Order staying this case, entering the protective order, and denying petitioner's motion for a preliminary injunction (dkt. no. 12).  However, petitioner fails to grasp the concept of a motion for reconsideration.  Instead, he either simply repeats arguments he made in the original round of briefing or introduces new arguments that he never presented in the first instance, supplemented by a mountain of 34 largely cumulative exhibits.  The volume of paper submitted by petitioner is not matched by the strength of his arguments, and the motion for reconsideration should be denied.

**PROCEDURAL HISTORY**

This petition for habeas corpus was filed on or about August 9, 2005 (dkt. no. 1).  Along with the petition, petitioner filed a materially incomplete "Notice of Related Case" that identified a single Guantanamo detainee case, Abdah v. Bush, Civ. A. No. 04-1254 (HHK), as "related" to this one notwithstanding that Abdah is no more related than are the other approximately 150 Guantanamo detainee cases pending in this Court (dkt. no. 2).  Petitioner's apparent attempt to

commandeer the assignment process proved unavailing; even before respondents had filed an objection, the case was reassigned, apparently on a random basis, and ultimately to this Court.

On August 10, 2005, petitioner filed a motion for a temporary restraining order and preliminary injunction requiring thirty-days notice to the Court and petitioner's counsel of any repatriation or transfer from Guantanamo on the alleged ground that he faced a likelihood of being transferred by the United States to another country for purposes of torture or continued custody on behalf of the United States (dkt. no. 4) ("Petr's Mot. for TRO/PI").  Apparently assuming that the relief sought was a fait accompli, petitioner merely filed a short, pro forma motion containing two paragraphs of argument and citing as authority three orders issued by other Judges in other Guantanamo detainee cases, without touching on the legal standard for issuance of a preliminary injunction.[1]

On August 12, 2005, after the case had been reassigned, petitioner filed a motion for a writ of habeas corpus or order to show cause, asking in effect that respondents be ordered to produce a factual return immediately (dkt. nos. 6, 8) ("Petr's Mot. for OSC").[2]

Respondents filed oppositions to both motions, including memoranda of points and authorities and supporting declarations (dkt. nos. 9, 10, 11).  Respondents also moved to stay proceedings in this case during the pendency of appeals in related Guantanamo detainee cases (dkt. no. 10).

---

[1] The very next day, August 11, 2005, Judge Urbina (who was not assigned to the case but presumably was acting as Emergency Judge or in some similar capacity) granted petitioner a TRO, without awaiting a response from the government (dkt. no. 5).

[2] Petitioner represents that briefing on the factual return issue occurred before the case had been reassigned to this Court, Petr's Recon. Mot. at 1, but, in fact, the reassignment occurred on August 11 and petitioner filed his motion, commencing briefing, on August 12.

2

On September 1, 2005, this Court issued an Order disposing of the pending motions (dkt. no. 12). The Court granted a pending motion by petitioner for entry of a protective order, but stayed the case pending resolution of the appeals in Khalid and In re Guantanamo Detainee Cases. The Court equitably crafted the stay to account for petitioner's interests, making clear that the stay would not bar petitioner from availing themselves of procedures under the protective order (i.e., enabling petitioner's counsel to visit him at Guantanamo), and would not bar the filing or disposition of any motion for emergency relief. Consistent with the general stay of proceedings in the case, the Court stayed respondents' obligation to show cause. Finally, the Court denied petitioner's motion for preliminary injunction "for the reasons well stated by Judge Bates in Al-Anazi v. Bush, 370 F. Supp. 2d 188 (D.D.C. April 21, 2005)," superseding the TRO that had previously been entered without the benefit of briefing by respondents.

On or about September 19, 2005, petitioner filed the instant motion for reconsideration of certain portions of the Court's September 1, 2005 Order ("Petr's Recon. Mot.").

## ARGUMENT

This Court has held that Federal Rule of Civil Procedure 54(b) governs reconsideration of orders other than final judgments. Cobell v. Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). While the Court may revise its interlocutory orders "as justice requires," this phrase is "a shorthand for more concrete considerations." Singh v. George Washington Univ., Civ. A. No. 03-1681(RCL), 2005 WL 2009875, *1 (D.D.C. Aug. 23, 2005). Specifically, "[j]ustice may require revision when the Court has 'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has

3

occurred] since the submission of the issue to the Court.'" Id. (citing Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)). "Errors of apprehension may include a Court's failure to consider 'controlling decisions or data that might reasonably be expected to alter the conclusion reached by the court.'" Id. (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). Importantly, "'the district court's discretion to reconsider a non-final ruling is, however, limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should not be required, nor without good reason permitted, to battle for it again.'" Id. (citing In re Ski Train Fire, 224 F.R.D. 543, 546 (S.D.N.Y. 2004) (internal quotation marks and citation omitted)).

Petitioner does not attempt to address the standard for a motion for reconsideration, but instead opts to address the issues at hand as though they were before the Court de novo. In any event, the outcome on application of the standard is clear. The Court has not "patently misunderstood" the contentions of either party; has not made a decision outside the scope of the adversarial issues; has not made any errors even of reasoning, let alone of apprehension; and there have been no controlling or significant changes in law or facts since the time the issues were submitted in regular briefing.

**A.     Petitioner Fails to Meet the Standard Warranting Reconsideration of the Portion of the Order That Denies a Preliminary Injunction Requiring Advance Notice of Transfer**

With respect to the portion of the September 1, 2005 Order denying a preliminary injunction requiring advance notice of transfer or repatriation, petitioner now submits through the vehicle of a motion for reconsideration the detailed substantive brief that he neglected during regular briefing. Compare Petr's Recon. Mot. at 2 & n.2, 3-6, 9-16, with Petr's Mot. for TRO/PI

at 1-2; see Local Rule 7(a) ("Each motion shall be include or be accompanied by a statement of the specific points of law and authority that support the motion."). Astonishingly, even though the Court explained that petitioner's motion for a preliminary injunction was being denied "for the reasons well stated . . . in Al-Anazi," petitioner devotes a scant three sentences of his 16-page motion to discussion of that decision. Petr's Recon. Mot. at 16.

Petitioner's main asserted ground for distinguishing Al-Anazi appears to be that petitioner's counsel here have made bare, unsourced and uncorroborated allegations that he has experienced torture in various countries where he has been detained before arriving at Guantanamo. Petr's Recon. Mot. at 16. However, even putting aside the fact that petitioner could have made these arguments in the original briefing but did not, petitioner ignores that it is incumbent on the party moving for a preliminary injunction to come forward with competent evidence supporting his claims, not cryptically vague allegations copied from pleadings and devoid of any citation.[3] In any event, these allegations do not provide a valid basis for distinguishing Al-Anazi, where, as in this case, the issue was whether petitioner faced irreparable harm in the future from a transfer or repatriation from Guantanamo and whether he had legal grounds giving rise to a likelihood of success in challenging a transfer. As respondents made clear in original briefing, the United States does not repatriate or transfer Guantanamo detainees to countries where it believes it is more likely than not that they will be tortured. The Court

---

[3] The allegations in petitioner's reconsideration motion in this regard consist of recycled general language from petitioner's petition for habeas corpus, with only minor editing of syntax, and in both cases couched with the standard "[o]n information and belief" disclaimer, compare Pet. ¶ 14, with Petr's Recon. Mot. at 3, even after counsel were afforded an opportunity to meet with petitioner and procure any specific evidence he may have, see Petr's Recon. Mot. at 3 ("habeas counsel have been permitted to meet with him, and have met with him").

correctly held, following Al-Anazi, that neither irreparable harm nor likelihood of success had been established, and made no "error of apprehension" in so holding.[4] Singh, 2005 WL 2009875, at *1.

Petitioner also cites and quotes extensively from several orders by other Judges of this Court who granted similar motions in other Guantanamo detainee cases, principally Al-Joudi v. Bush, Civ. A. No. 05-301(GK), 2005 WL 774847 (D.D.C. Apr. 4, 2005).[5] However, these orders were in existence well prior to both briefing and the Court's decision in this case, and, in any

---

[4] Nor is petitioner's motion for reconsideration salvaged by counsel's trolling through records in other cases for classified material susceptible to their distortion and manipulation. The information cited in bullet points at page 5 of petitioner's motion for reconsideration simply echoes the statements in the Waxman and Prosper Declarations that one type of transfer is a transfer for continued detention, investigation, and/or prosecution. Those materials are perfectly consistent with the fact that a detainee transferred to the control of a foreign government is no longer subject to the control of the United States, and does not support any inference of a "constructive custody" situation. Likewise, the unelaborated file notation by a low-level agent cited at page 4 simply does not rebut the clear policy of the United States as set forth in two sworn declarations of high-level officials in two different Executive Branch agencies. Cf. Almurbati v. Bush, 366 F. Supp. 2d 72, 76 (D.D.C. 2005); O.K. v. Bush, 377 F. Supp. 2d 102, 117-18 (D.D.C. 2005).

[5] Petitioner erroneously characterizes certain orders in his attempt to keep score of the orders granting and denying advance notice. See Petr's Recon. Mot. at 2 n.2. Petitioner describes Judge Walton's order in Almurbati v. Bush, 366 F. Supp. 2d 72, 73-74 (D.D.C. 2005), as "ordering Respondents to provide notice to the court of any transfer" and stresses that "[o]nly two judges besides your Honor have declined to require notice, either to counsel or to the Court, before removal." Petr's Recon. Mot. at 2 n.2 (emphasis added). To the contrary, Judge Walton in Almurbati, in addition to the two Judges cited by petitioner, denied petitioners' motion for a preliminary injunction in a lengthy, carefully reasoned opinion and required only an after-the-fact notice "upon the transfer or repatriation of any petitioner," in order to be "kept abreast of the petitioners' detention status," not to facilitate judicial review. Almurbati, 366 F. Supp. 2d at 73, 82-83 (emphasis added); see also Order dated May 3, 2005, in Battayav v. Bush, Civ. A. No. 05-714 (RBW) (denying motion for preliminary injunction requiring advance notice of transfer). Petitioner's citations also omit Judge Collyer's order in Deghayes v. Bush, Civ. A. No. 04-2215 (RMC) (D.D.C. June 15, 2005), denying a similar motion, though requiring notice to the Court of any decision to transfer a particular individual to a particular country.

6

event, the decision of another District Judge is not controlling precedent on this Court,[6] so <u>Al-Joudi</u> and the other orders cited hardly constitute "a controlling or significant change in the law . . . since the submission of the issue to the Court." <u>Singh</u>, 2005 WL 2009875, at *1. More importantly, (1) petitioner already cited and attached a representative sample of the orders supporting their position in regular briefing, <u>see</u> Petr's Mot. for TRO/PI at 1-2 and Exs. A-C thereto; (2) respondents' opposition brief is replete with references to and discussion of these orders;[7] and (3) Judge Bates discussed them in the <u>Al-Anazi</u> opinion, 370 F. Supp. 2d at 192-93, that this Court followed. Respondents are thus at a loss to understand how petitioner could pretend that this Court was unaware of or failed to apprehend the full range of persuasive authority among the Judges of this District when it issued the September 1, 2005 Order.

Petitioner also makes various legal arguments, none of which he was prevented from making in the original briefing, and all of which are without merit. For example, petitioner now contends that Federal Rule of Appellate Procedure 23(a) prohibits his transfer or repatriation while the appeals in <u>Khalid</u> and <u>In re Guantanamo Detainee Cases</u> are pending. Petr's Recon. Mot. at 15-16. However, among other defects in this argument, which respondents fully briefed the first time around, <u>See</u> Resps' Opp. at 14-18, petitioner overlooks the obvious fact that Fed. R. App. P. 23(a) only applies to cases in which there has been a decision that is on appeal. <u>See</u> <u>Al-Anazi</u>, 370 F. Supp. 2d 188, 199 n.11 (D.D.C. 2005) ("The Court notes that petitioners did not

---

[6] <u>Cf.</u> <u>Singh</u>, 2005 WL 2009875, at *2 (rejecting motion for reconsideration based on newly cited out-of-circuit authority because "[t]he Court would be free to disagree with the reasoning contained in any or all of the cited cases").

[7] <u>See</u> Resps.' Opp. Mem. at 1-2 n.2 (string citing representative cross-section of orders), 8 n.7, 9, 11 n.9, 13, 14 n.10, 17, 25 n.18.

even attempt to argue in their papers that Federal Rule of Appellate Procedure 23 requires a stay of a transfer decision, because petitioners' habeas petition is not presently on appeal."). Similarly, petitioner invokes the Foreign Affairs Reform and Restructuring Act of 1998, Petr's Recon. Mot. at 13, but curiously ignores Judge Bates' well-reasoned analysis of this statute and his conclusion that it does not provide a basis for a court to prohibit or limit the transfer of wartime detainees to other countries, see Al-Anazi, 370 F. Supp. 2d at 194. See also O.K. v. Bush, 377 F. Supp. 2d at 118 n.17 (again rejecting this argument). Petitioner also briefly alludes to alleged substantive due process rights under the "state endangerment" doctrine, but even assuming he possesses such substantive due process rights – which respondents vigorously dispute and no Judge has held[8] – he fails altogether to articulate any theory of how application of respondents' policies and practices, pursuant to which detainees are not transferred to countries in circumstances where the United States believes it is more likely than not the detainee will be tortured, runs afoul of that doctrine. Of course, mere reference to the existence of a legal doctrine in the abstract is not a ticket to a preliminary injunction, in the absence of any particularized analysis of how the doctrine would apply to the facts of the case.

It is clear that petitioner has not presented appropriate grounds for reconsidering, let alone for vacating, the part of the Court's September 1, 2005 Order that denies a preliminary injunction.

---

[8] Indeed, whether alien enemy combatants such as petitioner detained by the Department of Defense at Guantanamo may avail themselves even of procedural due process rights is a matter currently being considered by the D.C. Circuit in the pending appeals in In re Guantanamo Detainee Cases and Khalid.

**B.    Petitioner Fails to Meet the Standard Warranting Reconsideration of the Portion of the Order Staying Respondents' Obligation to Produce a Factual Return**

With respect to the portion of the order staying respondents' obligation to show cause, petitioner does little more than repeat arguments made in his motion for an order to show cause. Thus, petitioner recycles his string cites and quotations of orders by other Judges who have come out the other way on this question. Compare Petr's Mot. for OSC at 2, 3 n.1, with Petr's Recon. Mot. at 1-2 & n.1, 7.[9] Petitioner reiterates in almost the same words his prior argument that Rasul v. Bush, 124 S. Ct. 2686 (2004), and the habeas statute forbid a stay and inflexibly command immediate production of factual returns. Compare Petr's Mot. for OSC at 1, with Petr's Recon. Mot. at 6-7.

Such repetition of previously made arguments is not sufficient to justify reconsideration. See Judicial Watch, Inc. v. Dep't of Energy, 319 F. Supp. 2d 32, 24 (D.D.C. 2004) (motion for reconsideration is "'not simply an opportunity to reargue facts and theories upon which a court has already ruled'" (quoting New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995) (three-judge panel))). The government already responded substantively to these arguments in the original briefing. See Respondents' Motion to Stay Proceedings Pending Related Appeals and

---

[9] Of course, "[d]istrict courts . . . are free to disagree as they seek to apply [] the law and to reach just results in their cases." Singh, 2005 WL 2009875, at *3. In any event, petitioner's assertion that "[o]nly one judge besides your Honor has denied the show-cause order" is inaccurate. Petr's Recon. Mot. at 2 n.1. This Court did not "den[y] the show-cause order" but merely crafted the stay pending the appeals to include respondents' obligation to show cause, as not one but two other Judges have done so far. See, e.g., Imran v. Bush, Civ. A. No. 05-764 (CKK) (dkt. no. 6) (ordering "that the Government shall file factual returns with respect to Petitioners within 30 calendar days of a ruling on the relevant cases from the Court of Appeals"); Sliti v. Bush, Civ. A. No. 05-429 (RJL) (dkt. no. 5) (staying all proceedings, including factual returns).

for Continued Coordination and Memorandum in Opposition to Petitioners' Motion for Writ of Habeas Corpus or Order to Show Cause (dkt. no. 11), at 11-14.

Petitioner opines that the burden of producing potentially unnecessary factual returns in hundreds of Guantanamo detainee cases is "vastly overblown" because the record of CSRT proceedings already exists, leaving nothing to do but "photocopying, sorting, and stapling." Petr's Recon. Mot. at 8. But this glib characterization is oblivious to the multi-agency, pre-filing preparation process that respondents described in the original brief:

> Each factual return must be obtained by the Department of Defense, and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations, and Executive Orders. Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel. Each return can range from dozens to hundreds of pages, depending on the circumstances.

Resps' Mot. for Stay at 12. Moreover, petitioner blinks away the practical reality that this case cannot be viewed in isolation, but only as one of a legion of recently filed Guantanamo detainee habeas cases each of which entails the same burdens, cumulatively, to the extent factual returns are required.[10]

In its September 1, 2005 Order, the Court properly and reasonably balanced the interests of the parties, the burdens on them, and the significance and likely impact of the pending appeals

---

[10] Petitioner also trivializes the risk of inadvertent disclosure of classified information. Petr's Recon. Mot. at 9, professing that "[c]ounsel are unaware" of any report of disclosure or compromise of classified information. The government is aware of at least one instance in other Guantanamo detainee cases in which the requirements of the protective order have not been properly observed, leading to unauthorized disclosure of classified information. Even putting that incident aside, it is folly to suggest that the government would have to wait for an actual improper disclosure and ensuing harm to national security before concern that the risk of such a disclosure not be needlessly magnified could be credited as a legitimate issue.

in staying proceedings, including respondents' obligation to produce a factual return. Petitioner has presented no valid grounds for reconsidering that decision.

## CONCLUSION

A motion for reconsideration should not be simply a second bite at the apple or an opportunity to make arguments never made in the first instance, or to refine arguments already made and rejected. Having "'once battled for the court's decision," the parties "should not be required, nor without good reason permitted, to battle for it again.'" Singh, 2005 WL 2009875, at *1 (internal quotation marks omitted). Respondents request that petitioner's motion to reconsider and vacate portions of the Court's September 1, 2005 Order be denied.

Dated: September 30, 2005             Respectfully submitted,

                                      PETER D. KEISLER
                                      Assistant Attorney General

                                      KENNETH L. WAINSTEIN
                                      United States Attorney

                                      DOUGLAS N. LETTER
                                      Terrorism Litigation Counsel


                                      [*signature block continued on next page*]

      /s/ Robert J. Katerberg
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
EDWARD H. WHITE
PREEYA M. NORONHA
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents