UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HASSAN BIN ATTASH, *et al.*,    )
    Petitioners,    )
        )
        )
*v.*    )    Civil Action No. 05-1592 (RCL)
        )
GEORGE W. BUSH, *et al.*,    )
    Respondents.    )
        )

## PETITIONER'S MOTION TO RECONSIDER AND VACATE PORTIONS OF SEPTEMBER 1, 2005 ORDER

Petitioner, Hassan Bin Attash, respectfully asks the Court to reconsider and vacate those portions of its September 1, 2005 Order (dkt no. 12) staying Respondents' obligation to file a factual return for him, and declining to require Respondents to provide the Court and counsel with 30-days' advance notice of any intended removal of Petitioner from Guantánamo.

When Petitioner briefed these issues, this action was assigned to Judge Kennedy. Like most of the other judges of this Court, Judge Kennedy has consistently granted Guantánamo habeas petitioners the relief sought here. Accordingly, in his moving papers, Petitioner did not repeat the arguments for granting such relief. The action was then reassigned to this Court, which had not previously considered the issues. Petitioner now seeks to brief the issues anew.

The Court should order Respondents to file factual returns forthwith. At least ten judges of this Court have granted such relief in these cases even while staying the cases pending appeal.[1] They have recognized that counsel have a duty to begin preparing their clients' cases

---

[1]    *See Al-Mohammed v. Bush*, 05-CV-0247 (HHK) (D.D.C. Apr. 30, 2005) (dkt no. 18) (Ex. A); *Hatim v. Bush*, 05-CV-1429 (RMU) (D.D.C. Aug. 22, 2005) (dkt no. 16) (Ex. B); *Kurnaz v. Bush*, 04-CV-1135 (ESH), 2005 WL 839542 (D.D.C. Apr. 12, 2005) (Ex. C); *Al-Adahi v. Bush*, 05-CV-0280 (GK) (D.D.C. Apr. 29, 2005) (dkt no. 35) (Ex. D); *Al-Anazi v. Bush*, 05-CV-00345
(continued...)

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

while the appeals are pending and that "even initial conversations by counsel with their clients may be very difficult without access to that basic factual information." *Al-Anazi v. Bush*, 05-CV-00345(JDB), at 20 (D.D.C. Apr. 21, 2005) (dkt no. 22) (Ex. E). They have required Respondents to provide returns now "to ensure that the proceedings can continue in an orderly fashion in the event that the detainees prevail on appeal." *Kurnaz v. Bush*, No. 04-CV-1135 (ESH), 2005 WL 839542, at *1 (D.D.C. Apr. 12, 2005) (Ex. M).

The Court should also require Respondents to provide the Court and counsel with 30-days' advance notice of any intended removal of Petitioner from Guantánamo. At least nine judges of this Court have required advance notice to protect their jurisdiction and ensure the petitioners' counsel an opportunity to contest the removal.[2] As discussed at the conclusion of this motion, the circumstances here are distinguishable from those in *Al-Anazi*, Ex. T, on which this Court relied in declining to require notice.

---

(JDB) (D.D.C. Apr. 21, 2005) (dkt no. 22) (Ex. E); *Al-Shamri v. Bush*, 05-CV-0551 (RWR) (D.D.C. May 10, 2005) (dkt no. 10) (Ex. F); *Errachidi v. Bush*, No. 05-CV-0640 (EGS) (D.D.C. Apr. 21, 2005) (undocketed minute order); *El-Mashad v. Bush*, 05-CV-0270 (JR) (D.D.C. Apr. 7, 2005) (dkt no. 29) (Ex. G); *Al-Wazan v. Bush*, 05-CV-0329 (PLF) (D.D.C. Mar. 23, 2005) (dkt no. 15) (Ex. H). Only one judge besides your Honor has denied the show-cause order. *See Hamoodah v. Bush*, 05-CV-0795 (RJL) (D.D.C. May 23, 2005) (dkt no. 13) (Ex. I).

[2] *See, e.g.*, *Hatim v. Bush*, 05-CV-1429 (RMU) (D.D.C. Aug. 22, 2005) (dkt no.16) (Ex. J); *Paracha v. Bush*, 04-CV-2022 (PLF) (D.D.C. June 16, 2005) (dkt no. 58) (Ex. K); *Deghayes v. Bush*, No. 04-CV-2215 (RMC) (D.D.C. June 14, 2005) (dkt no. 18) (Ex. L); *Kurnaz v. Bush*, No. 04-CV-1135 (ESH), 2005 WL 839542 (D.D.C. Apr. 12, 2005) (Ex. M); *El-Banna v. Bush*, No. 04-CV-1144 (RWR) (D.D.C. Apr. 8, 2005) (dkt no. 141) (Ex. N); *El-Mashad v. Bush*, 05-CV-0270 (JR) (D.D.C. Apr. 7, 2005) (dkt no. 29) (Ex. O) (blocking removal of petitioners from Guantánamo altogether pending appeal); *Al-Joudi v. Bush*, No. 05-CV-0301 (GK) (D.D.C. Apr. 4, 2005) (dkt no. 19) (Ex. P); *Abdah v. Bush*, No. 04-CV-1254 (HHK), 2005 WL 711814 (D.D.C. Mar. 29, 2005) (dkt no. 147) (Ex. Q); *Abdah v. Bush*, No. 04-CV-1254 (HHK) (D.D.C. Mar. 12, 2005) (dkt no. 120) (Ex. R) (Judge Collyer, as motions judge, granting petitioners' *ex parte* motion for TRO requiring 30-days' notice to counsel prior to removal); *see also Almurbati v. Bush*, No. 04-CV-1227 (RBW), 366 F. Supp. 2d 72, 73–74 (D.D.C. 2005) (Ex. S) (ordering Respondents to provide notice to the court of any transfer). Only two judges besides your Honor have declined to require notice, either to counsel or the Court, before removal. *See, e.g.*, *Al-Anazi v. Bush*, 05-CV-0345 (JDB), 370 F. Supp. 2d 188 (D.D.C. Apr. 21, 2005) (Ex. T); *Mammar v. Bush*, No. 05-CV-0573 (RJL) (D.D.C. May 2, 2005) (dkt no. 8) (Ex. U).

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

## STATEMENT OF FACTS

### I.     Respondents' Imprisonment of Petitioner Attash

Attash is a young Yemeni who has been imprisoned at Guantánamo since about January 2005. Although his habeas counsel have been permitted to meet with him, and have met with him, Respondents have refused to disclose any information about him and to date have offered no justification for his detention.

On information and belief, Attash was 17 years old when he was seized in 2002 from his home in Karachi, Pakistan. After being held for four days in a Karachi prison, he was transferred to a prison operated by U.S. authorities near Kabul, Afghanistan. While imprisoned there, Attash was tortured. In September 2002, U.S. authorities transferred him to a prison in Jordan, where he was tortured. For three months, Attash was tortured 12 hours a day. In early 2004, Attash was transferred to U.S. prisons in Bagram and Kabul, Afghanistan. While imprisoned there, Attash suffered abuse, if not torture, that left him with a shattered eardrum and a damaged throat.

In early 2005, Attash was transferred to Guantánamo. It is unknown whether a Combatant Status Review Tribunal ("CSRT") has classified Attash as an "enemy combatant," if so, whether Respondents continue to consider him an enemy combatant, and if not, why he continues to be imprisoned. In other cases, Respondents have failed to inform habeas counsel or the Court that a prisoner had been cleared months earlier by CSRTs. *See Qassim v. Bush*, No. 05-0497 (JR) (D.D.C. Aug. 19, 2005) (dkt no. 34) at 1 (Ex. V).

### II.     Threat of Rendition

Although Attash was born in Yemen, his family now lives in Saudi Arabia. Attash fears that he may be transferred from Guantánamo to a foreign country – whether Saudi Arabia, Yemen, or some third country – where he will be tortured.

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

Respondents dismiss Attash's fears as "rife speculation." Opp. Mem. at 11. Their declarants state that it is government "policy" not to transfer prisoners to countries where it is "more likely than not" that they will be tortured. Prosper Decl. ¶ 4; Waxman Decl. ¶ 6. As Judge Kessler observed, however, Respondents' "declarations . . . neither refute [the petitioners'] claims nor render them frivolous." *Al-Joudi*, Ex. P at 9. Respondents do not in fact deny that they render prisoners to foreign countries for the purpose of extracting information by torture or abuse, or that they rendered Attash to Jordan for that purpose.

A classified document in the factual return of Majid Mahmud Abdu Ahmad,[3] a petitioner in *Abdah v. Bush*, Ex. Q, ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████

████████████████████████████████████████

Classified Ex. A at 3 (emphasis added).[4] There is only one meaning that can be gleaned from this passage: The government believes that Ahmad has information that the government wants but believes cannot be extracted without torture, and for that reason they may remove Ahmad to a country where the information can be extracted by torture.

---

[3]     Ahmad is listed in the *Abdah* habeas petition as Majid Mahmoud Ahmed. To avoid confusion, we use the names used by the Government in identifying the petitioners.

[4]     The Classified Exhibits appear at the end of the appendix.

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

Respondents deny that the United States maintains constructive custody of prisoners it transfers to other countries. Opp. Mem. at 4-5. Again, this representation cannot be squared with classified documents from the factual returns in *Abdah*:



Rendition is thus so common that it has spawned a new military acronym, TRCD, for "Transfer to the Control of Another Country for Continued Detention." Press accounts confirm this odious practice.[8]

---

5     Busayss is listed in the habeas petition as Adil Saeed el Haj Obaid.

6     Ismail is listed in the habeas petition as Yasein Khasem Mohammad Esmail.

7     Abd is listed in the habeas petition as Adnan Farhan Abdul Latif.

8     *See, e.g.,* Douglas Jehl & David Johnston, *Rule Change Lets C.I.A. Freely Send Suspects Abroad to Jails,* N.Y. Times, Mar. 6, 2005 (describing Administration's secret program to transfer prisoners to foreign countries including Egypt, Syria, Saudi Arabia, Jordan and Pakistan, where former prisoners report being brutalized) (Ex. W); Michael Hirsh, *et al., Aboard Air CIA,* Newsweek, Feb. 28, 2005 (discussing evidence of the CIA's global "ghost prison system" and noting that some officials do not believe "assurances" from U.S. allies, such as Egypt and Jordan, "that they were not mistreating prisoners") (Ex. X); Jane Mayer, *Outsourcing Torture,* The
(continued...)

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

In light of such information, judges of this Court have refused to accept Respondents' assurances regarding rendition. As Judge Kessler observed, several Guantánamo prisoners "have been transferred to countries that our own State Department has acknowledged torture prisoners, including Pakistan, Saudi Arabia, and Morocco." *Al-Joudi*, Ex. P at 9. The State Department reports that Attash's home country of Yemen (not to mention Saudi Arabia, where his family now lives) engages in the torture of prisoners. *See* Dep't of State, *Country Reports on Human Rights Practices, Yemen 2004* (Feb. 28, 2005), available at http://www.state.gov/g/drl/rls/hrrpt/2004/41736.htm, § 1(c). Finally, as Judge Kessler has pointed out, Respondents' affidavits fail to "address the Central Intelligence Agency's involvement in any transfer or 'rendition' programs." *Al-Joudi*, Ex. P at 9 n.8.

## ARGUMENT

The relief sought here is modest. If it is granted, the burden on Respondents would be negligible. If it is denied, the results for Attash could be severe and irreparable.

**I.    Respondents should be required to produce factual returns now.**

The Court should require Respondents to produce forthwith factual returns justifying Attash's imprisonment. The Supreme Court has held that prisoners such as Attash are entitled to challenge their incarceration by applying for the Great Writ, *Rasul v. Bush*, 124 S. Ct. 2686, 2699 (2004), and the habeas statute *requires* a court to order the government to file returns

---

New Yorker, Feb. 14, 2005 (detailing the history and ongoing practice of "extraordinary rendition") (Ex. Y); Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1 (describing "renditions" based on agreements between the United States and foreign governments "that agree to have local security services hold certain terror suspects in their facilities for interrogation by CIA and foreign liaison officers") (Ex. Z); Dana Priest, *Jet Is an Open Secret in Terror War*, Wash. Post, Dec. 27, 2004 (reporting that a Gulfstream jet has been used to whisk suspected terrorists from one country to another and noting congressional testimony by CIA officials that since September 11, 2001, "renditions have become a principal weapon in the CIA's arsenal against suspected al Qaeda terrorists") (Ex. AA).

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

"forthwith." 28 U.S.C. § 2243, ¶ 1 (the "court . . . shall forthwith award the writ or issue an or-
der directing the respondent to show cause"). The statute specifies that the writ or order to show
cause "*shall* be returned within three days unless for good cause additional time, not exceeding
twenty days, is allowed." *Id.* ¶ 2 (emphasis added).

It is critically important that Attash's counsel have access to the factual returns in his case
as soon as possible. As Judge Bates observed, "the factual returns appear necessary for petition-
ers' counsel effectively to represent petitioners," and "even initial conversations by counsel with
their clients may be very difficult without access to that basic factual information." *Al-Anazi*,
Ex. E at 20. Although Respondents have permitted counsel to meet with Attash, counsel's ef-
forts to gain his trust and develop his case are hobbled because counsel do not even know what
Respondents' allege he has done or the bases for their allegations.

Factual returns are necessary "to ensure that the proceedings can continue in an orderly
fashion in the event that the detainees prevail on appeal." *Kurnaz*, Ex. C, 2005 WL 839542, at
*1. Counsel must "begin preparing their defense well in advance of any ruling by the Court of
Appeals." *Al-Adahi v. Bush*, Ex. D at 2 & n.1; *see also Tumani v. Bush*, 05-CV-0526 (RMU),
slip op. at 2 (D.D.C. Apr. 19, 2005) ("petitioners' counsel should be able to review the returns
now so that they can develop their case and prepare for any consultation with their clients") (Ex.
BB).

The stay in this case does not mitigate the urgent need for counsel to begin gathering evi-
dence and otherwise preparing for the eventuality of a habeas hearing. Ongoing preparation is
necessary because memories fade, witnesses move, die, or change jobs, and documentary evi-
dence disappears. As time passes, Attash faces increasing prejudice by his counsel's inability to
interview him in an informed manner and to prepare his case. As the Eighth Circuit has stated,

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

the "writ of habeas corpus, challenging illegality of detention, is reduced to a sham if the trial

courts do not act within a reasonable time." *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978).

Respondents complain that providing Attash's returns would confront them with "an im-

mense logistical burden." *See* Respondents' Motion to Stay Proceedings Pending Related Ap-

peals (dkt no. 10) ("Motion to Stay") at 12. But Respondents have already provided factual re-

turns in scores of other Guantánamo habeas cases, and they continue to do so under show-cause

orders as recent as last month. *See Hatim v. Bush*, 05-CV-1429 (RMU) (D.D.C. Aug. 22, 2005)

(dkt no. 16) (Ex. B). Most of the other judges of this Court have rejected Respondents' claim of

burden. *See supra* note 1. In any event, any "burden" to Respondents does not outweigh At-

tash's interest in ensuring the investigation and preparation of his case before the trail – cool as it

might be now – becomes completely cold, and in being able to proceed without delay if his case

is allowed to continue.

Respondents' asserted "burden," moreover, is vastly overblown. The factual return is

simply the record of proceedings before the CSRT. *See* Motion to Stay at 11 n.9. That record

already exists. Classification decisions regarding the information in the record of those proceed-

ings were made *before* the proceedings began, and the entirety of the proceedings underwent le-

gal review upon their completion. *See, e.g.*, Mem. from Bree A. Ermintrout to Director, CSRT,

Jan. 18, 2005, *in* Factual Return for Petitioner Abdulsalam Ali Abdulrahman Al-Hela, *Al-Hela v.

Bush*, 05-CV-01048 (RMU) (D.D.C. June 15, 2005) (Ex. CC). The only "burden" facing Re-

spondents now is photocopying, sorting and stapling.

Respondents claim that the returns would be useless to Attash's counsel because counsel

could not share with Attash the classified information in his returns. Mot. to Stay at 11. But not

all the information in the returns is classified. The allegations against Attash, which are set forth

\

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

in the returns, are not classified; until Attash's counsel have seen the returns, they will not know what he is accused of having done, and cannot meaningfully interview him or begin to investigate or prepare his case.

The returns also include: (1) an unclassified discussion of the classified information before the CSRT; (2) an unclassified summary of the transcripts of the CSRT hearings, including any statement or testimony by Attash or his "personal representative"; and (3) other unclassified information that counsel have found highly useful in their representation of other prisoners. And, although counsel may not disclose classified information in the returns to Attash, knowing that information enables counsel to focus their investigation and preparation of his cases and to seek from him and others facts pertinent to his "enemy combatant" designation.

Finally, Respondents speculate that providing the returns in this case would increase the risk of inadvertent disclosure – or other compromise – of classified information. Motion to Stay at 11-12. This speculation lacks basis. Only counsel who have been granted security clearances and submitted themselves to a stringent Protective Order may see the classified information in the returns. "The Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance." *Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004). Counsel are unaware of any report that classified information provided by Respondents to cleared counsel in the detainee cases has been disclosed or otherwise compromised.

Respondents should therefore be required to produce factual returns forthwith.

## II.    Attash has demonstrated his need for 30-days' advance notice.

This Court has equitable power to "specify protective conditions in balancing the hardship necessarily imposed on the party whose suit . . . has been stayed pending appeal." *El-Banna*, Ex. N at 5 (citing *Cooks v. Fowler*, 459 F.2d 1269, 1272–73 & n.27 (D.C. Cir. 1971). In

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

addition, the All Writs Act, 28 U.S.C. § 1651(a), empowers the Court "to issue injunctions to protect its jurisdiction." *SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996). Attash has demonstrated that the modest relief he requests is an appropriate and necessary exercise of these powers.

### A.    Attash is entitled to injunctive relief.

Attash meets the four-factor test for granting a preliminary injunction:  He will suffer irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Attash is likely to succeed on the merits of his claims; and (4) there is a clear public interest in preventing Respondents from rendering individuals to foreign countries for detention and torture. *See Al-Joudi*, Ex. P at 6 (citing *Al-Fayed v. CIA*, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001)).  The balance of hardships tips decidedly toward Attash, and he "has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Id.* at 7 (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)).

### 1.    Attash faces irreparable harm.

Attash has established that he faces irreparable harm without 30-days' notice.  First, if unable to contest his removal from Guantánamo, Attash stands to suffer extreme physical and psychological injury, and perhaps even death. *See Al-Joudi*, Ex. P at 7 (citing "possibility of transfer to a country where [prisoners] might be tortured or indefinitely confined . . . undeniably would constitute irreparable harm" and "is a serious potential threat"); *El-Banna*, Ex. N at 3–4 (citing fears that government may "involuntarily 'render' the detainees to other countries, where they may be subject to continued detention without due process of law or to mental or physical abuse," and noting they "do not appear fanciful").  Respondents' assurances to the contrary are unpersuasive.  As Judge Kessler has stated, Respondents' "declarations that attempt to mitigate

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

these concerns . . . neither refute [prisoners'] claims nor render them frivolous." *Al-Joudi*, Ex. P at 9; *see also Abdah*, Ex. Q, 2005 WL 711814, at *4 ("These declarations concerning general policy and practice . . . do not entirely refute [prisoners'] claims or render them frivolous.").

Second, if involuntarily removed from Guantánamo, Attash would risk losing his right – as either a legal or a practical matter – to adjudicate his habeas claims in the federal court whose jurisdiction he has now properly invoked. *See Al-Joudi*, Ex. P at 10 (concluding that the "danger that, upon transfer, the Court could lose jurisdiction to adjudicate [prisoners'] claims . . . would certainly constitute a threat of irreparable harm"); *El-Banna*, Ex. N at 4 ("The outcome petition-ers fear, if realized, would improperly subvert the court's ability to adjudicate these actions on their merits."); *cf. Abdah*, Ex. Q, 2005 WL 711814, at *4 (transfer "from Guantánamo to over-seas custody . . . would effectively extinguish [his] habeas claims by fiat" and "would eliminate any opportunity . . . to ever obtain a fair adjudication of [his] 'fundamental right to test the le-gitimacy of [his] executive detention'") (quoting *Lee v. Reno*, 15 F. Supp. 2d 26, 32 (D.D.C. 1998)).

Respondents pretend that the harm Attash claims to face is the very "relief" that he seeks – *i.e.*, release "from United States custody." Opp. Mem. at 10. This argument has been de-scribed by judges of this Court as "perplexing," *Abdah*, Ex. Q, 2005 WL 711814, at *4 n.3, and "overly simplistic," *Al-Joudi*, Ex. P at 8 n.7. Attash wishes to be released from Guantánamo into freedom, not into indefinite detention or torture by another government. He also does not want to be transferred from Guantánamo to another U.S. detention center, in some remote part of the world, where his lawyers will have more difficulty visiting him and where the U.S. government may argue that habeas jurisdiction does not exist. In sum, as Judge Kennedy observed, "it seems beyond question that advocating for release into freedom is not equivalent to advocating for

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

transfer from ongoing detention in one locale to ongoing detention in another." *Abdah*, Ex. Q, 2005 WL 711814, at *4 n.3; *see also Al-Joudi*, Ex. P at 8 n.7 (prisoner seeks "total freedom from all custody, not just United States custody . . . which can only be obtained if the Court determines that [his] underlying detention was unconstitutional or illegal").

Attash has also demonstrated that the harm he faces is imminent.  Because Respondents have refused on many occasions to provide advance warning to prisoners or their counsel before they are transferred from Guantánamo, and because the timing of any such removal is within the absolute control of Respondents, Attash has sufficiently established that the harm he faces could occur at any time.  *See Al-Joudi*, Ex. P at 10 (concluding that threats are imminent because "the Government is clearly maintaining its right to transfer [prisoners] at any time after the Court rules upon the instant Motion" and "transfer could occur in the near future").

    2.   **Attash has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation.**

Contrary to Respondents' assertion, Attash has demonstrated a substantial likelihood of success on the merits of his habeas claims.  The Supreme Court has held that the Guantánamo prisoners have the right to invoke the habeas jurisdiction of this Court and that their claims of violations of Constitutional, international law and treaty rights state a claim upon which relief can be granted.  *Rasul*, 124 S. Ct. at 2698 & n.15.  To be sure, there is disagreement among the judges of this Court concerning the status of the rights Attash asserts, and that disagreement is now the subject of the pending appeals, but the disagreement only confirms that Attash's claims meet the "fair ground for litigation" standard.

For example, because Attash may have a constitutional right to due process, Attash has established that there is a fair ground for litigation on the question of whether he could obtain an injunction barring his transfer under the "state endangerment" doctrine. *See Butera v. District of*

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

*Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001). Under this doctrine, "an individual can assert a substantive due process right to protection . . . from third-party violence when . . . officials affirmatively act to increase or create the danger that ultimately results in the individual's harm" if the official conduct "may fairly be said to shock the contemporary conscience." *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998) (internal quotation marks omitted).

There is also a "fair ground for litigation" with respect to whether Attash's Convention Against Torture ("CAT") claim would support an order blocking his transfer. The Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), which implements the Convention, provides that "[i]t shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States." Pub. L. No. 105-277, § 2242(a) (1998). "FARRA gives the CAT domestic effect. FARRA and the regulations are now the positive law of the United States, and, as such, are cognizable under habeas." *St. Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003); *accord Wang v. Ashcroft*, 320 F.3d 130, 142 (2d Cir. 2003) (same); *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 220 (3d Cir. 2003).

Respondents assert that there are no circumstances under which Attash could obtain a court order blocking his transfer from Guantánamo. *See* Opp. Mem. at 13. That is mere assertion, and it is also incorrect. At least one judge of this Court has already granted such relief. *See El-Mashad v. Bush*, Ex. O at 1 (staying all proceedings, "including without limitation [petitioners'] release, repatriation, or rendition . . . until further order of the Court").

### 3.    The balance of harms tips overwhelmingly in Attash's favor.

Judges of this Court have routinely ordered the 30-days' advance notice in numerous cases. *See supra* note 2. As Judge Kessler has stated, such relief is "concrete, narrow, and

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

minimally burdensome." *Al-Joudi*, Ex. P at 15. Indeed, "[t]he requested relief does not constitute even a minimal burden on the Government; at most, it would require the Government to file a few pieces of paper. Such a minimal consequence does not outweigh the imminent threats of indefinite detention, potential torture, and the elimination of [the petitioner's] claims." *Id.* at 14.

To weigh against the grave harms facing Attash, Respondents offer only "vague premonitions" of harm to the Executive's ability to conduct foreign policy. *Al-Joudi*, Ex. P at 13; *Abdah*, Ex. Q, 2005 WL 711814, at *5. Respondents acknowledge that many of the harms, such as judicial review and intervention, would not result from the narrow relief requested by Attash but are merely "foreshadowed." Opp. Mem. at 24. As Judge Kessler observed, "granting [prisoners'] request for 30 days' notice of transfer would not require the Court to second-guess foreign policy decisions of the Executive, would not require the Government to divulge information relating to its negotiations with foreign governments, and would not prevent the Government from speaking with one voice." *Al-Joudi*, Ex. P at 13. And as Judge Kennedy noted, an injunction requiring notice "will not require, or even enable, the court to take the two *specific* actions which Respondents' declarations warn against: forcing State Department officials to 'unilaterally disclose outside appropriate Executive branch channels its communications with a foreign government relating to particular mistreatment or torture concerns,' and publicly disclosing the facts gathered and analyses prepared by various State Department offices, or bringing these findings 'to the attention of officials and others in foreign states.'" *Abdah*, Ex. Q, 2005 WL 711814, at 5 (citations to Prosper Declaration omitted).

### 4.    The public interest would be served by an injunction.

The public interest favors providing Attash and his counsel with notice and a meaningful opportunity to challenge his transfer out of Guantánamo. An unnoticed transfer would have the effect of defeating this Court's jurisdiction over his habeas claims and denying him his rights.

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

Given the "fundamental importance" of the Great Writ, not to mention due process, the public interest must favor allowing habeas petitions to be heard. *See Johnson v. Avery*, 393 U.S. 483, 485–86 (1969). As discussed above, Attash claims Due Process rights that notice would protect, and "it is always in the public interest to prevent the violation of a party's constitutional rights." *Abdah*, Ex. Q, 2005 WL 711814, at *6 (citing *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n,* 23 F.3d 1071, 1079 (6th Cir. 1994)); *Al-Joudi*, Ex. P at 15 (same).

   **B.    This Court may require 30-days' notice as a protective condition of the stay.**

   Alternatively, the Court may grant the relief requested as a condition of the stay that it has ordered in this case. "Where, as here, the condition imposed on the proponent of the stay is 'neither heavy nor unexpected,' imposing a protective condition is well within a court's discretion." *El-Banna*, Ex. N at 5-6 (quoting *Cooks*, 459 F.2d at 249).

   Federal Rule of Appellate Procedure 23(a) prohibits Respondents from removing Attash from Guantánamo while the appeals are pending. The Rule provides:

> Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule. When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as a party.

Rule 23(a) applies when an appeal is pending from any decision in a habeas proceeding. Its purpose is "to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Goodman v. Keohane*, 663 F.2d 1044, 1047 (11th Cir. 1981); *see also Jago v. U.S. Dist. Ct.*, 570 F.2d 618, 623 (6th Cir. 1978).

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

Inasmuch as Rule 23(a) prohibits Respondents from removing Attash from Guantánamo without authorization from the Court, Respondents must provide the Court and counsel with advance notice of any intended removal.

**C.    This case is distinguishable from *Al-Anazi***

In denying Attash's request for advance notice, this Court relied on Judge Bates' denial of such relief in *Al-Anazi*, Ex. T.  In denying such relief, however, Judge Bates stressed the limited record before him, which contained "no evidence that DOD is transferring Guantánamo detainees to foreign countries for an illicit purpose."  *Al-Anazi*, Ex. T, 370 F. Supp. 2d. at 196. Here, Attash alleges that the United States has already rendered him from Afghanistan, where he was tortured, to Jordan, where he was tortured; and classified documents in at least one other Guantánamo case show ███████████████████████████████████████████
████████████████████████████████████

Moreover, in granting a TRO in this very case, Judge Urbina observed that removal of Attash from Guantánamo would "either as a matter of law or *de facto*" divest the Court of jurisdiction over his action, and that "such an outcome would abuse the processes now put in place for the purpose of adjudicating matters on their merits."  Mem. Order at 2 (Aug. 11, 2005) (dkt no. 5) (Ex. DD) (citing *Rasul*).  This Court should continue to protect its jurisdiction to adjudicate Attash's claims and should protect him from removal from Guantánamo without notice and an opportunity to be heard.

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

## CONCLUSION

For the foregoing reasons, the motion should be granted. Petitioner respectfully requests oral argument on this motion.

Dated: Washington, D.C.
September 17, 2005

Respectfully submitted,

COVINGTON & BURLING

By:  _____/s/_____
David H. Remes
D.C. Bar No. 370782
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401
Tel: (202) 662-5212
Fax: (202) 778-5212

Marc D. Falkoff
D.C. Bar No. 491149
Robert H. Knowles, *pro hac vice* to be submitted
1330 Avenue of the Americas
New York, NY 10019
Tel: (212) 841-1166
Fax: (646) 441-9166

UNCLASSIFIED
Cleared by DoD for public filing
October 3, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HASSAN BIN ATTASH, *et al.*,              )
    Petitioners,                            )
                          )
       *v.*                                  )      Civil Action No. 05-1592 (RCL)
                           )
GEORGE W. BUSH, President of the           )
United States, *et al.*,                   )
    Respondents.                            )
                           )

## [PROPOSED] ORDER

Having considered Petitioner's Motion to Reconsider and Vacate Portions of September

1, 2005 Order, it is this ___ day of _____, 2005, hereby

ORDERED, that Respondents shall file a factual return by October 16, 2005; and it is

further

ORDERED, that Respondents shall provide Petitioners' counsel and the court with 30-

days' notice prior to transporting or removing any of Petitioners from Guantánamo Bay Naval

Base.

                                               _____
                                               United States District Judge