# Exhibit H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AHMED ABDULLAH AL-WAZAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-0329 (PLF) |
| ) | |
| GEORGE W. BUSH, et al., ) | |
| ) | |
| Respondents. ) | |

ORDER

This matter is before the Court on petitioner's motion for entry of a protective

order and respondents' motion to stay this case pending resolution of all appeals in cases filed by

other detainees at the United States Naval Base in Guantanamo Bay, Cuba.  Upon consideration

of the arguments of the parties and the full record in this case, it is hereby

ORDERED that [8] petitioner's Motion for Entry of Protective Order is

GRANTED.  The Amended Protective Order and Procedures for Counsel Access to Detainees at

the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004; the

Order Addressing Designation Procedures for "Protected Information" entered on November 10,

2004; and the Order Supplementing and Amending Filing Procedures Contained in November 8,

2004 Amended Protective Order, issued on December 13, 2004, in the In re Guantanamo Bay

Detainee Cases, Civil No. 02-0299, et al., by Judge Joyce Hens Green shall apply in this case;

and it is

FURTHER ORDERED that [9] respondents' Motion to Stay Proceedings Pending

Related Appeals and for Continued Coordination is GRANTED.  This case is STAYED pending

resolution of all appeals in In re Guantanamo Detainee Cases, Civil No. 02-0299, et al., 2005 WL

195356 (D.D.C. Jan. 31, 2005), and Khalid et al. v. Bush, Civil No. 04-1142, 2005 WL 100924

(D.D.C. Jan. 19, 2005).  This stay shall not, however, prevent the parties from continuing to avail

themselves of the procedures set forth in the Protective Order, nor shall it bar the filing or

disposition of any motion for emergency relief, including petitioner's pending motion for

preliminary injunction.

        SO ORDERED.


        /s/_____
        PAUL L. FRIEDMAN
        United States District Judge

DATE: March 23, 2005

# Exhibit I

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SOFIAN EBRAHIM HAMAD HAMOODAH, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civ. Action No. 05-795 (RJL) |
| GEORGE W. BUSH, President of the United States, et al., | ) ) ) | |
| Respondents. | ) ) | |

### ORDER

Upon consideration of respondents' Motion to Stay Proceedings Pending Related Appeals and For Continued Coordination, the petitioner's non-opposition thereto, and the entire record herein, it is, this **23rd** day of May, 2005, hereby

**ORDERED** that the Motion [#7] is **GRANTED**; and it is further

**ORDERED** that the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004 in *In re Guantanamo Bay Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, first issued on December 13, 2004 in *In re Guantanamo Bay Detainee Cases*, and the Order Addressing Designation Procedures for "Protected Information," first issued on November 10, 2004 in *In re Guantanamo Bay Detainee Cases* shall apply in the above-captioned case; and it is further

**ORDERED** that the above-captioned matter is stayed pending resolution of all appeals in *Khalid v. Bush*, No. 04-CV-1142 (RJL), and *Boumediene v. Bush*, No. 04-CV-1166 (RJL), *see* D.C. Circuit Nos. 05-5062, 05-5063, and in the *In re Guantanamo Bay Detainee Cases*, No. 02-CV-0299, *et al.*, *see* D.C. Circuit No. 05-8003; and it is further

**ORDERED** that the petitioner's Motion For the Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause pursuant to 28 U.S.C. § 2243 [#3] is **DENIED**.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge

# Exhibit J

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SALEED MOHAMMED SALEH                  :
            HATIM, *et al.*,                    :
                                       :
            Petitioners/               :
            Plaintiffs,                 :
                                       :
            v.                          :    Civil Action No.:    05-1429 (RMU)
                                       :
                                       :
GEORGE W. BUSH *et al.*,                  :    Document Nos.:      7, 10, 11
                                       :
            Respondents/               :
            Defendants                 :

## MEMORANDUM ORDER

### GRANTING RESPONDENT'S MOTION TO STAY; DENYING PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION; GRANTING PETITIONER'S MOTION FOR ORDER TO SHOW CAUSE

This matter comes before the court on the respondents' motion to stay, the petitioners'

motion for a temporary restraining order and the petitioners' motion for order to show cause.

This case presents issues similar to those of other Guantanamo detainees litigating in this court.

In brief, the petitioner seeks a temporary restraining order requiring the respondents to provide 30

days advance notice of any intent to transfer the petitioners from Guantanamo Bay Naval Base in

Cuba.

On January 19, 2005, Judge Leon issued opinions in *Khalid v. Bush* and *Boumediene v.*

*Bush* granting the government's motion to dismiss petitions for writ of habeas corpus brought by

detainees at the United States Naval Station at Guantanamo Bay, Cuba ("GTMO"). *Khalid v.*

*Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005). On January 31, 2005, Judge Green issued an opinion

in *In re Guantanamo Cases*, granting in part and denying in part the government's motion to

1

dismiss in eleven cases consolidated for the purpose of that motion. *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005). The petitioners in the above cases filed notices of appeal, and the D.C. Circuit has yet to issue an opinion. Accordingly, the state of the law in this circuit concerning the habeas rights of GTMO detainees is unclear.

The court is well aware of the petitioners' concern that the government may remove the petitioners from GTMO in the near future, thereby divesting (either as a matter of law or *de facto*) the court of jurisdiction. Such an outcome would abuse the processes now put in place for the purpose of adjudicating matters on their merits. *See Rasul v. Bush*, 124 S.Ct. 2686 (2004). Accordingly, the court cannot allow such a scenario to unfold; the court will "guard against depriving the processes of justice of their suppleness of adaptation to varying conditions." *Landis v. North American Co.*, 299 U.S. 248, 256 (1936). Coextensive with the district court's inherent power to stay proceedings is the court's power to craft a stay that balances the hardships to the parties. *Id.* at 255 (noting concerns regarding the stay causing "even a fair possibility . . . [of] damage to some one else"); *see also Clinton v. Jones*, 520 U.S. 681, 707 (1997) (noting that "burdens [to the parties] are appropriate matters for the District Court to evaluate in its management of the case").

Also before the court is the petitioners' motion for a writ of habeas corpus or an order to show cause why the writ should not issue. "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. The government takes the position that

2

> [i]t makes no sense for proceedings related to the merits of these cases, such as the submission of factual returns in response to orders to show cause regarding the issuance of habeas writs, to go forward when decision from the D.C. Circuit on the related Guantanamo detainee appeals, which are proceeding in an expedited fashion, will determine the legal analyses applicable to the cases and, indeed, whether and how these cases should proceed.

Defs.' Mot. to Stay at 9. Furthermore, the government argues that requiring submission of factual returns "burdens the government's resources and risks the inadvertent disclosure of classified information." *Id.* at 11.

The fact that the D.C. Circuit has not yet issued its decision in the related appeals (or that this case is stayed pending the D.C. Circuit's decision on those appeals) does not prevent the government from processing the returns. On the contrary, the court determines that petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients. As to the government's concerns regarding classified information, the protective order entered in this case will guard against any such inadvertent disclosures. Finally, the government's generic references to the expenditure of its resources and a "logistical burden," *id.*, does not persuade the court to delay ordering the returns; the court is confident that the government can handle this task.

Accordingly, it is this 22nd day of August, 2005,

**ORDERED** that the respondents' motion for stay is **GRANTED**; and it is

**FURTHER ORDERED** that the respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, may not remove the

3

petitioners from GTMO unless this court and counsel for petitioners receive thirty days' advance notice of such removal; and it is

     **ORDERED** that, in light of this order, the petitioners' motion for preliminary injunction is denied without prejudice as moot, and it is

     **FURTHER ORDERED** that the petitioners' motion for an order to show cause is granted, and it is

     **ORDERED** that the respondents shall show cause[1] by Monday, August 29, 2005, why the writ should not be granted.

     **SO ORDERED**.

 

                                        RICARDO M. URBINA
                                  United States District Judge

---

[1] "The person to whom the . . . order is directed *shall* make a return certifying the true cause of the detention." 28 U.S.C. § 2243.

# Exhibit K

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAIFULLAH PARACHA,                          )
                                            )
          Petitioner,                       )
                                            )
     v.                                     )        Civil Action No. 04-2022 (PLF)
                                            )
GEORGE W. BUSH, et al.,                     )
                                            )
          Respondents.                      )
                                            )

MEMORANDUM OPINION AND ORDER

This matter is before the Court on petitioner's motion for a preliminary injunction

ordering his removal from isolation and prohibiting his rendition and on petitioner's two

applications for leave to proceed in forma pauperis.

In support of his motion for preliminary injunction, petitioner alleges that he is

being held "in isolation and solitary confinement" at the United States Naval Base at

Guantanamo Bay, Cuba, and that continued detention under such conditions threatens petitioner

with irreparable harm.  He also states that there is "a clear and present threat" that petitioner may

be rendered into the custody of another country where he may face the threat of torture.

Although petitioner's motion alleges he is being held in solitary confinement, the only support

for this proposition is a single statement from petitioner's written submission to the Combatant

Status Review Tribunal:

> I was kept in isolation from July 2003 -- Sept 20, 200 [year
> truncated, presumably 2004] and since Sept 20, 2004, I am in
> isolat[ion] cell in Guantanamo Bay Island.

Points and Authorities in Support of Petitioner's Motion for Preliminary Injunction Ordering His

Removal from Isolation and Prohibiting His Rendition (Apr. 5, 2005) at 6 (modifications in

original). Although they reveal little about the actual conditions of petitioner's detention,

respondents assert that he is not, in fact, in solitary confinement.[1]

The absence of any specific firsthand information from petitioner about the

conditions of his confinement in support of his motion for an injunction highlights the disturbing

fact that, after more than six months of litigation, counsel for petitioner still has had no contact

with his client. The government reports that petitioner's counsel thus far has refused to take part

in the procedures for client contact set forth in the Amended Protective Order and Procedures for

Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba entered

in this case by Judge Joyce Hens Green on December 16, 2004. See Opposition to Petitioner's

Motion for Preliminary Injunction Ordering His Removal from Isolation and Prohibiting His

Rendition (Apr. 22, 2005) ("Opp.") at 13 & n.14.

Petitioner has chosen to appeal the Court's Order of March 23, 2005, denying

petitioner's motion to vacate Judge Green's Protective Order and imposing a stay on proceedings

pending the appeal of related cases.[2] The Court does not believe that a decision by counsel to

avail himself of the procedures of the Protective Order would compromise petitioner's appeal of

---

[1]     Respondents state that while petitioner "is housed in an individual cell, he does
have access to an outdoor exercise yard for approximately one hour each day." Respondents also
state that petitioner's conditions of detention afford him the access to medical care and the
opportunity to maintain personal hygiene. See Opp. at 11-12.

[2]     The government argues that the stay imposed by the Court bars petitioner's
motion for injunction. See Opp. at 7-10. As the government acknowledges, however, the stay by
its terms does not "bar the filing and disposition of any motion for emergency relief," see Order
(Mar. 23, 2005), which this motion for preliminary injunction clearly is.

this decision, and very likely would enhance counsel's ability to represent his client's interests. Such a tactical decision is, of course, in the hands of counsel, but the Court strongly encourages counsel for petitioner to consider subscribing to the same procedures that have enabled counsel for many similarly-situated *habeas* petitioners to contact their clients.

Without less ambiguous or more reliable information about the conditions of petitioner's detention – and in light of the fact that the unavailability of such information in this case is occasioned solely by counsel's refusal to participate in the procedures established by the Court for facilitating the exchange of information between clients and their attorneys – petitioner has not demonstrated sufficiently that he will suffer irreparable harm unless an injunction is granted.

Similar concerns are raised by petitioner's applications to proceed *in forma pauperis*. Attached to petitioner's applications are affidavits from petitioner's wife and counsel asserting that all of petitioner's properties and companies are "subjected, mortgaged, attached, or put under action by the Courts of Law," and that petitioner's bank accounts contain only about $1750. The information provided, however, is not sufficiently detailed to fulfill the statutory and Rule requirements, which demand that an *in forma pauperis* application be accompanied by an affidavit containing, *inter alia*, a statement of all assets petitioner possesses, the names and ages of the persons who rely on petitioner for support, an estimate of petitioner's and his dependents' monthly expenses, and a statement of any monies paid by petitioner to attorneys in connection with his case. See 20 U.S.C. § 1915(a); FED.R. APP. PROC. 24(A)(1); FED.R. APP. PROC. FORM 4. In all likelihood, some of the required information already is available to counsel, even if petitioner's consent is required to disclose it; counsel states that he would have access to the rest

3

of the required information if he participated in the Protective Order's procedures for attorney-

client communication.  See Points and Authorities in Support of Application to Proceed in Forma

Pauperis (March 17, 2005) at 5.  Accordingly, it is hereby

       ORDERED that [50] Petitioner's Motion for Preliminary Injunction Ordering His

Removal from Isolation is DENIED without prejudice; it is

       FURTHER ORDERED that [48] Petitioner's Application to Proceed In Forma

Pauperis is DENIED without prejudice; it is

       FURTHER ORDERED that [56] Petitioner's Application to Appeal In Forma

Pauperis is DENIED without prejudice; it is

       FURTHER ORDERED that the respondents, their agents, servants, employees,

confederates, and any persons acting in concert or participation with them, or having actual or

implicit knowledge of this Order by personal service or otherwise, may not remove petitioner

from the Guantanamo Bay Naval Base unless this Court and counsel for petitioners receive thirty

(30) days' advance notice of such removal; and it is

       FURTHER ORDERED that in light of this order, [50] Petitioner's Motion for

Preliminary Injunction Prohibiting His Rendition is DENIED as moot.

       SO ORDERED.


               /s/_____
               PAUL L. FRIEDMAN
               United States District Judge

DATE: June 16, 2005

4

# Exhibit L

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **OMAR DEGHAYES,** *et al.,* | ) | |
| | ) | |
| **Petitioners,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 04-2215 (RMC)** |
| | ) | |
| **GEORGE WALKER BUSH,** *et al.,* | ) | |
| | ) | |
| **Respondents.** | ) | |

## ORDER

The United States military has detained Omar Deghayes, Shaker Aamer, and Jamal Kiyemba ("Petitioners") and is holding them at a facility in Guantanamo Bay, Cuba. These men have filed a Petition for Writ of *Habeas Corpus* ("Petition") in this Court. This Petition raises many of the same legal issues now under consideration by the D.C. Circuit Court of Appeals on earlier *habeas* petitions filed by other detainees.[1] At the request of the United States, this case has been stayed.

Pending before the Court is a motion for a preliminary injunction to enjoin the United States from transferring or removing the Petitioners to "hostile foreign authorities" without thirty-days' advance notice to their counsel and an adequate opportunity to be heard. *See* Supplemental Memorandum in Support of Motion for a Preliminary Injunction at 1. Similar motions have been presented to other Judges of the Court, some of whom have granted injunctive relief, *see, e.g., Al-Joudi v. Bush*, No. 05-301 (GK), 2005 U.S. Dist. LEXIS 6265, at *22 (D.D.C. April 4, 2005),

---

[1] *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005); *Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005).

some of whom have ordered advance notice without an accompanying injunction, *see, e.g., Kurnaz v. Bush*, No. 04-1135 (ESH), 2005 U.S. Dist. LEXIS 6560, at *9 (D.D.C. April 12, 2005), and some of whom have denied the motions in their entirety, *see, e.g., Al-Anazi v. Bush*, No 05-345 (JDB), 2005 WL 1119602, at *11 (D.D.C. April 21, 2005). The United States urges the Court to deny the motion in its entirety.

## BACKGROUND

Although not British citizens, the Petitioners are long-term residents of the United Kingdom who wish to be released and returned to Britain. They have been in the custody of the United States for over three years and are currently held at Guantanamo Bay Naval Station ("Guantanamo"), Cuba.

The facts in support of their motion for a preliminary injunction are presented by counsel and are not supported by sworn affidavit. The United States does not explicitly contest the facts as presented but, rather, argues that they are not supported by competent evidence.

According to counsel, Mr. Deghayes's father was assassinated by the Libyan government. *See* Motion and Memorandum for Preliminary Injunction, for Expedited Discovery on Relevant Issues, and Opposition to Blanket Stay of Proceedings ("Pets' Mot.") at 6. Afterwards, his family left Libya and obtained political asylum in England. *Id.* After completing his education in Britain, Mr. Deghayes traveled to Afghanistan where he met and married an Afghani woman. Petition ¶ 30. At the beginning of the war in Afghanistan, he took his family to Pakistan. *Id.* ¶ 31. While in Pakistan, "some people broke into their house because . . . [t]here were bounties at the time for seizing 'foreign Taliban' and apparently they sold him to the Americans as that." *Id.* ¶ 32. Mr. Deghayes alleges that he was tortured and abused both before and after the Pakistanis transferred him

-2-

to U.S. control. Most particularly, counsel asserts that U.S. military personnel took Mr. Deghayes

from his prison at Guantanamo on September 9 and 11, 2004 to a location where he was interrogated

and threatened by four Libyans associated with the government of Muammar Qadhafi. Mr.

Deghayes asserts that the Central Intelligence Agency ("CIA") brought the Libyans to Guantanamo

to threaten him and other detainees. Pets' Mot. at 7. The Libyans accused Mr. Deghayes of anti-

Qadhafi activities and allegedly told him that he would "be brought to judgment in Libya." *Id.* at 11-

12. "In here I cannot do anything, but if I meet you [later] I will kill you, if you don't kill me." *Id.*

Counsel for Mr. Deghayes tells the Court that he is a sophisticated man, trained as a lawyer in

Britain, and that his case is being championed in the U.K. by the Law Society.

Counsel states that Shaker Aamer was born in Saudi Arabia but has applied for

British citizenship. *Id.* at 17. He is a long-term resident of Britain, is married to a British national,

and has four British children. He provides no explanation for why he, his pregnant wife, and three

children were in Afghanistan when the war began. Mr. Aamer provides a lengthy description of

abuse at the hands of American military personnel in Afghanistan and, to a lesser extent, in

Guantanamo. *Id.* at 18-20. He fears return to Saudi Arabia because he faces imprisonment for

marrying a foreigner and for being absent from the country without the government's permission.

In addition, he fears that, because the United States has erroneously informed Saudi Arabia that he

is a terrorist, he will be subject to torture if returned to his native country. *Id.* at 21.

Counsel states that Jamal Tony Kiyemba was born in Uganda but moved to Britain

when he was thirteen or fourteen years old. *Id.* at 21-22. He was educated in Britain and has family

there. Mr. Kiyemba was seized in Pakistan, *id.* at 23 n.11, and transferred to Guantanamo where he

alleges that U.S. military personnel abused him. *Id.* at 25. He fears persecution if he is returned to

Uganda because he is a Muslim. Mr. Kiyemba also claims that his interrogators have threatened to send him to Egypt, where "our Egyptian friends who are renowned for torturing . . . will do the dirty work for us." *Id.* at 25.

## ANALYSIS

In *Rasul v. Bush*, 124 S. Ct. 2686, 2699 (2004), the Supreme Court held that federal courts have jurisdiction to determine the legality of the ongoing detention of petitioners held in Guantanamo. Accordingly, the Court must also have authority to preserve this jurisdiction if it can be shown that the United States is acting to circumvent it. *See* All Writs Act, 28 U.S.C. § 1651(a) (2001); *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996) (All Writs Act "empowers a district court to issue injunctions to protect its jurisdiction"); *Lindstrom v. Graber*, 203 F.3d 470, 474-76 (7th Cir. 2000) (All Writs Act permits court to stay extradition pending appeal of habeas corpus petition). *See also* FED. R. APP. P. 23(a); *Jago v. United States Dist. Court*, 570 F.2d 618, 626 (6th Cir. 1978) (Rule 23(a) preserves the district judge's authority to issue order regarding custody of prisoner pending review of habeas petition).[2]

The parties appear to agree that if a detainee is transferred to a foreign nation with no further control by the United States, the Court would lose its jurisdiction. The United States

---

[2] The Court references Rule 23(a) of the Federal Rules of Appellate Procedure as a basis for its jurisdiction here because this case is stayed, at the specific request of the United States, so that the fundamental legal issues it raises can be resolved in the context of other cases already on appeal. Where petitioners are prevented by the Court's stay from continuing to pursue their cases for the convenience and efficiency of the United States and the courts and where the fundamental legal issues that will be decided in the cases on appeal will guide this Court's decision, the legal position of these Petitioners may be construed as sufficiently "on appeal" as to be covered by Rule 23(a). The United States argues that it relinquishes custody and does not "transfer" custody within the meaning of Rule 23(a) when it returns a detainee to his home country. Given the disposition of the motion, the Court does not need to address this argument.

explains:

> [The Department of Defense ("DoD")] has no interest in detaining enemy combatants longer than necessary . . . . Where continued detention is deemed no longer necessary, a detainee may be transferred to the control of another government for release. Furthermore, the United States also transfers [Guantanamo] detainees, under appropriate conditions, to the control of other governments for investigation and possible prosecution and continued detention when those governments are willing to accept responsibility for ensuring, consistent with their laws, that the detainees will not continue to pose a threat to the United States and its allies. Such governments can include the government of a detainee's home country, or a country other than the detainee's home country that may have law enforcement or prosecution interest in the detainee . . . .
>
> Of those 65 detainees who have been transferred to the control of other governments, [as of March 8, 2005] 29 were transferred to Pakistan, 9 to the United Kingdom, 7 to Russia, 5 to Morocco, 6 to France, 4 to Saudi Arabia, 1 to Denmark, 1 to Spain, 1 to Sweden, 1 to Kuwait, and 1 to Australia.
>
> When the DoD transfers [Guantanamo] detainees to the control of other governments, the DoD does not ask or direct the receiving government to detain the individual on behalf of the United States. Accordingly, the detainees are no longer subject to the control of the United States once they are transferred.

First Declaration of Matthew C. Waxman ("1st Waxman Decl.") ¶¶ 3 - 5. Pursuant to the specific

direction of the U.S. Senate when it adopted the Convention Against Torture ("CAT"),[3] it is the

policy of the United States not to transfer individuals to any country where it is more likely than not

that they will be tortured. *See* Resolution of Ratification, 136 CONG. REC. S17486, S17492 (Oct.

27, 1990) ("The Senate's advice and consent is subject to the following understandings, which shall

---

[3] Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, opened for signature Feb. 4, 1985, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 113.

apply to the obligations of the United States under this Convention . . . . That the United States understands the phrase, 'where there are substantial grounds for believing that he would be in danger of being subjected to torture,' as used in Article 3 of the convention, to mean 'if it is more likely than not that he would be tortured.'"); Declaration of Pierre-Richard Prosper ("Prosper Decl.") ¶ 8 ("The essential question in evaluating foreign government assurances is whether the competent Department of State officials believe it is more likely than not that the individual will be tortured in the country to which he is being transferred.").

The record is conspicuously barren of evidence that the United States plans to transfer Shaker Aamer or Jamal Kiyemba to their home countries. Although it appears that at least four persons have been transferred to Saudi Arabia, there is no report that Mr. Aamer has been threatened with return to Saudi Arabia. Although counsel regards the Arab Republic of Egypt as a possible transfer destination, there is no evidence that Egypt would have a law enforcement or prosecution interest in Mr. Aamer. Similarly, Mr. Kiyemba states that he fears transfer to Uganda, a country which he asserts would subject him to torture because he is a Muslim. However, he provides no evidence that the United States has threatened to involuntarily repatriate him.[4]  In fact, counsel reports no transfer threats of any kind directed toward Mr. Kiyemba.

Even more telling is the complete absence of evidence that the United States would transfer either Mr. Aamer or Mr. Kiyemba to a country that might use torture to question them as an

---

[4] The paucity of evidence before the Court makes it impossible to assess the validity of Mr. Kiyemba's fear but, to the extent it is demonstrably true, such a transfer would appear to be against the specific policy of the United States. *See* Prosper Decl. at ¶ 4 ("Of particular concern to the Department of State in making recommendations on transfers is the question of whether the foreign government concerned will treat the detainee humanely . . . and will not persecute the individual on the basis of his race, religion, nationality, membership in a social group, or political opinion.").

agent of, or on behalf of, the United States. *Compare Abdah v. Bush*, No. 04-1254 (HKK) (RMC),

2005 U.S. Dist. LEXIS 4144 (D.D.C. Mar. 12, 2005) (sufficient evidence of record to raise a serious

question of whether U.S. would transfer Yemeni nationals to a foreign country for questioning but

retain control) *with Does 1-570 v. Bush*, No. 05-313 (CKK) (RMC), 2005 U.S. Dist. LEXIS 6417

(D.D.C. Mar. 13, 2005) (no evidence of record that specific petitioners were at immediate risk of

transfer).  Neither of these Petitioners presents sufficient evidence of direct harm, much less its

imminency, to obtain the extraordinary remedy of a preliminary injunction against the United States.[5]

The analysis of Mr. Deghayes's situation is somewhat different.  The United States

neither admits nor denies that it transported Libyan nationals to Guantanamo Bay to threaten Mr.

Deghayes.  Instead, it says that,

> to the extent that is true, that Libyan agents came and interrogated Mr.
> Deghayes . . . , there [was] no threat of rendition that you know the Libyans
> are somehow going to arrange to have the petitioner[] sent to Libya.  Rather,
> there [were] just kind of general threats about if you end up in Libya[,] we
> are going to get you.  That kind of thing.  And what we have at best is a
> hearsay allegation . . . .  But in any event, the representations that might be
> made or threats that might be made by an agent of a foreign government I
> don't think that can be compared to the sworn declarations that have been
> provided by an Assistant Secretary of Defense as well as a United States
> Ambassador outlining the policy and practice of the United States.

Hearing Tr. at 17 - 18.  The United States acknowledges that "Libya consistently is not that high on

---

[5] The Court notes that counsel seek to minimize their requested remedy by describing it only as notice of a potential transfer.  They also candidly admit that the purpose of such notice would be to allow counsel to assess the proposed transfer, seek discovery from the United States if they thought it necessary, and bring the issue to Court to seek to prevent a transfer they deemed injurious to their clients' interests.  The lack of evidence to support their case counsels strongly against even beginning down that road by requiring prior notice of a transfer.  Rather, the Court assumes, as it must, that the Waxman and Prosper Declarations fully describe the policy of the United States and that neither Mr. Aamer nor Mr. Kiyemba would be transferred to a country where it is more likely than not that they would be subject to torture.

the human rights scale." *Id.* at 22. In fact, the U.S. Department of State in its 2004 Country Reports

on Human Rights Practices, informed the Congress of the United States that,

> [t]he law [in Libya] does not prohibit [torture and cruel, inhuman, or degrading treatment or punishment], and there were reports that government officials employed them. Security personnel reportedly routinely tortured prisoners during interrogations or as punishment. Government agents reportedly detained and tortured foreign workers . . . .
>
> The reported methods of torture included: chaining prisoners to a wall for hours; clubbing; applying electric shock; applying corkscrews to the back; pouring lemon juice in open wounds; breaking fingers and allow the joints to heal without medical care; suffocating with plastic bags; deprivation of food and water; hanging by the wrists; suspension from a pole inserted between the knees and elbows; cigarette burns; threats of being attacked by dogs; and beating on the soles of the feet.

*See* U.S. Dep't of State, Country Reports on Human Rights Practices, Libya, § 1(c), Libya, *available*

*at* http://www.state.gov/g/drl/rls/hrrpt/2004/41727.htm (last visited June 1, 2005). Despite this

recent report, the United States has declined to give assurances to Mr. Deghayes that it would

exercise its executive discretion and not transfer him to Libya. On the other hand, the United States

informs the Court:

> Petitioners' unsworn story about an alleged encounter between petitioner Deghayes and four Libyan agents does not even purport to speak to what may be the intentions or plans to [sic] the United States officials who would be in charge of deciding on any transfer or repatriation, and, even if credited, hardly establishes that he is at risk of the United States sending him to Libya to be tortured or treated inhumanely. As is made abundantly clear in the attached brief and declarations, the United States does not transfer individuals to countries where it is more likely than not that they will be tortured.

Respondents' Memorandum in Opposition to Petitioners' Motion for Preliminary Injunction and

Expedited Discovery at 4 n.4. The Court interprets this footnote as an informal signal that the United

States will not transfer Mr. Deghayes to Libya, despite its official silence, because of the reported

use of torture in the Libyan prison system.   With this understanding, the request for prior notice before such a transfer becomes moot, as there is no evidence that any threat has been made to transfer Mr. Deghayes elsewhere or any evidence that the United States might transfer him elsewhere and retain some degree of control.  To ensure that the Court has not misread the intentions of the United States and specifically noting that the Court has no occasion to decide at this time whether a transfer of Mr. Deghayes to Libya could be subject to an injunction, the Court will direct the United States to file notice with the Court thirty days prior to any transfer of Mr. Deghayes to Libya.

In light of this disposition of the motion, the Petitioners' motion for expedited discovery will be denied.  Pursuant to the suggestion of the United States, the Court will enter the December 13, 2004 supplementary order entered in the coordinated Guantanamo detainee cases, as well as a stop gap order, similar to the November 10, 2004 Order Addressing Designation Procedures for "Protected Information" in the coordinated cases, that provides for provisional treatment of designated information as protected while a request to the Court for such treatment is pending.

## CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Court **ENTERS** by way of reference the supplementary orders previously entered in *In re Guantanamo Bay Detainee Cases* by Judge Joyce Hens Green.  These include the Order Addressing Designation Procedures for "Protected Information," entered on November 10, 2004, and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, issued on December 13, 2004; and

It is further **ORDERED** that the Petitioners' motion for 30-days' prior notice of any

-9-

transfer from Guantanamo Bay to "hostile foreign authorities" is **DENIED**; and

It is further **ORDERED** that the United States shall file notice with the Court 30 days prior to any transfer of Mr. Deghayes to Libya if there is a decision by the Department of Defense to transfer him to his home country; and

It is further **ORDERED** that the Petitioners' motion for expedited discovery is **DENIED.**

DATE: June 14, 2005.                    /s/ _____
                                        ROSEMARY M. COLLYER
                                        United States District Judge

-10-

# Exhibit M

Westlaw.

Slip Copy
Slip Copy, 2005 WL 839542 (D.D.C.)
**(Cite as: 2005 WL 839542 (D.D.C.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, District of Columbia.
Murat KURNAZ, et al. Petitioners,
v.
George W. BUSH, et al., Respondents.
Jamel AMEZIANE, Petitioner,
v.
George W. BUSH, et al., Respondents
**No. Civ.04-1135(ESH), Civ.05-0392(ESH).**

April 12, 2005.
Baher Azmy, Newark, NJ, Eric M. Freedman, Shayana Devendra Kadidal, Center for Constitutional Rights, New York, NY, Barry J. Pollack, Collier Shannon Scott, PLLC, Washington, DC, for Petitioners.

Terry Marcus Henry, U.S. Department of Justice, Washington, DC, for Defendants.

*ORDER*

HUVELLE, J.

**\*1** Petitioners in the above-captioned cases have each requested a preliminary injunction ordering respondents to provide advance notice of petitioners' transfer from the United States Naval Base at Guantanamo Bay, Cuba, where they are currently detained. Murat Kurnaz, a twenty-two year old Turkish citizen who was born and raised in Germany, has been detained in Guantanamo Bay for more than three years. He requests thirty-days notice to counsel of any proposed transfer. Jamel Ameziane is a citizen of Algeria and has been detained for more than two years. Mr. Ameziane is as yet unaware of his representation by counsel. His counsel requests that petitioner not be transferred from Guantanamo until counsel has had an opportunity to meet with him to ascertain his interests.

Kurnaz's case was initially consolidated before Judge Joyce Hens Green and has been stayed pending appeal to the United States Court of Appeals for the District of Columbia. *See* Order Granting in Part and Denying in Part Resp'ts' Mot. for Certification of Jan. 31, 2005 Orders and For a Stay, *In re Guantanamo Detainee Cases,* No. 02-0299, *et al.* (D.D.C. Feb. 3, 2005). [FN1] Since Ameziane's Petition for Writ of Habeas Corpus was filed subsequent to Judge Green's decision, it is not subject to the stay or protective orders entered by her. This Court ordered respondents to show cause by April 1, 2005 why Ameziane's writ should not be granted. (Show Cause Order, Mar. 10, 2005.) Respondents have, however, moved for a stay, which Ameziane opposes. Ameziane has also moved for entry of a protective order. The parties presented oral argument on each of these motions on April 8, 2005.

> FN1. The stay entered by Judge Green does not bar the Court's consideration of Kurnaz's motion for injunctive relief. As noted by Judge Collyer, the stay was intended to save time, money, and judicial resources, but "could not be read to also deprive Petitioners of their rights to seek emergency assistance when faced with continued detention at the request of the United States but no venue in which to challenge its legality." *Abdah v. Bush,* 2005 WL 711814, at \*4 (D.D.C. Mar.12, 2005).

As neither Ameziane nor respondents oppose entry of protective orders identical to those entered by Judge Green, the Court does so by order below. The Court also concludes that respondents' Motion to Stay should be granted. However, to ensure that the proceedings can continue in an orderly fashion in the event that the detainees prevail on appeal, respondents are ordered to provide factual returns to Ameziane's counsel within ninety days of the date of this Order. Finally, upon consideration of the arguments of the parties, in view of the orders issued by four other judges on this Court granting substantially identical relief as is requested in this case, *see Al-Marri v. Bush,* No. 04-2035 (D.D.C. Apr. 4, 2005); *Al-Joudi v. Bush,* No. 05-0301 (D.D.C. Apr. 4, 2005); *Al-Oshan v. Bush,* No. 05-0520 (D.D.C. Mar. 31, 2005); *Al-Shiry v. Bush,* No. 04-0490 (D.D.C. Apr. 1, 2005); *Abdah v. Bush,* 2005 WL 711814 (D.D.C. Mar.29, 2005), and for the reasons stated below, the Court concludes that petitioners must be given notice of a potential transfer in a limited type of circumstance. In particular, if respondents have not reached a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                       Page 2
Slip Copy, 2005 WL 839542 (D.D.C.)
**(Cite as: 2005 WL 839542 (D.D.C.))**

diplomatic understanding with the transferee country that a petitioner's transfer from Guantanamo is for release only, respondents must provide that petitioner's counsel with thirty days advance notice of the proposed transfer.

*\*2* In _Rasul v. Bush,_ --- U.S. ----, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004), the Supreme Court held that federal courts have jurisdiction to determine the legality of the ongoing detention of petitioners held in Guantanamo Bay. _Id._ at 2698. _See also In re Guantanamo Detainee Cases,_ 355 F.Supp.2d 443, 464 & 479 (D.D.C.2004) (Guantanamo detainees possess rights under the Due Process Clause and Geneva Convention); _Hamdan v. Rumsfeld._ 344 F.Supp.2d 152, 165 (D.D.C.2004) (Guantanamo detainees possess rights under Geneva Convention). Accordingly, the Court must also have authority to preserve this jurisdiction if it can be shown that respondents are acting to circumvent it. _See_ All Writs Act, 28 U.S.C. § 1651(a); _Al-Marri,_ No. 04-2035, slip. op. at 10 n. 11 (quoting _SEC v. Vision Communications, Inc.,_ 74 F.3d 287, 291 (D.C.Cir.1996)) (All Writs Act "empowers a district court to issue injunctions to protect its jurisdiction"); _Abu Ali v. Ashcroft,_ 350 F.Supp.2d 28, 54 (D.D.C.2004) (federal courts "may and should take such action as will defeat attempts to wrongfully deprive parties" of their right to sue in federal court) (internal citation omitted); _Lindstrom v. Graber._ 203 F.3d 470, 474-76 (7th Cir.2000) (All Writs Act permits court to stay extradition pending appeal of habeas corpus petition); _Michael v. INS,_ 48 F.3d 657, 664 (2d Cir.1995) (All Writs Act permits federal Court of Appeals to stay a deportation order pending review of its legality). _Cf._ Fed. R.App. P. 23(a); _Jago v. U.S. Dist. Court,_ 570 F.2d 618, 623 (6th Cir.1978) (Rule 23(a) preserves district judge's authority to issue order regarding custody of prisoner pending review of habeas petition).

Respondents state that some petitioners may be transferred to custody of a foreign government

for investigation and possible prosecution and continued detention when those governments are willing to accept responsibility for ensuring, consistent with their laws, that the detainees will not continue to pose a threat to the United States and its allies. Such governments can include the government of a detainee's home country, or a country other than the detainee's home country that may have law enforcement or prosecution interest in the detainee.

(Waxman Decl. ¶ 3.) According to respondents, once such a transfer is effected, the Court would lose

its jurisdiction. While the Court has no occasion to decide at this time whether this or any other type of transfer could be subject to an injunction, several examples offered by petitioners raise sufficiently serious concerns to justify the limited remedy of advance notice. For instance, a petitioner could be transferred to the custody of a different United States custodian in a foreign country, such as the United States military base in Afghanistan. (_See_ Kurnaz Reply at 14.) Alternatively, he could be transferred to the custody of a foreign government, but held under the direction and control of the United States government. _See Abu Ali._ 350 F.Supp.2d at 69. Or, he could be transferred to the custody of a country where he has never had occasion to violate that country's laws, again raising a possible question as to the governmental claim of an "independent law enforcement" interest. In such narrowly circumscribed circumstances, closer scrutiny of the transfer might well be appropriate in order to preserve the petitioner's right to obtain review of the legality of his detention.

*\*3* For these reasons, it is hereby

ORDERED that respondents' Motion to Stay is GRANTED and _Ameziane v. Bush,_ No. 05-0392, is STAYED pending resolution of all appeals in _In re Guantanamo Detainee Cases,_ 355 F.Supp.2d 443 (D.D.C.2005), and _Khalid v. Bush,_ 355 F.Supp.2d 311 (D.D.C.2005). This stay shall not, however, prevent the parties from availing themselves of the procedures set forth in the Protective Order entered below, nor shall it bar the filing or disposition of any motion for emergency relief.

It is further ORDERED that respondents shall provide a factual return to the Court and to counsel for Ameziane within ninety (90) days of the date of this Order; and it is further

ORDERED that the Court ENTERS by way of reference the protective order and supplementary orders previously entered in _In re Guantanamo Bay Detainee Cases,_ Civil No. 02-0299, _et al.,_ by Judge Joyce Hens Green. These include the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004; the Order Addressing Designation Procedures for "Protected Information," entered on November 10, 2004; and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, issued on December 13, 2004.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                         Page 3
Slip Copy, 2005 WL 839542 (D.D.C.)
**(Cite as: 2005 WL 839542 (D.D.C.))**

 It is further ORDERED that, where respondents do not have an understanding with the receiving country that a transfer from Guantanamo Bay, Cuba is for purposes of release only, respondents shall provide petitioner's counsel with thirty (30) days advance notice of the transfer, including the proposed destination and conditions of transfer.

 ORDERED that petitioners' motions for preliminary injunctions are DENIED AS MOOT.


   **Motions, Pleadings and Filings** (Back to top)

-       1:05cv00392                (Docket) (Feb. 24, 2005)

-       1:04cv01135                (Docket) (Jul. 02, 2004)

END OF DOCUMENT


© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit N

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                                  )
JAMIL EL-BANNA <u>et</u> <u>al</u>.,           )
                                  )
        Petitioners,              )
                                  )
            v.                    )   Civil Action No. 04-1144 (RWR)
                                  )
GEORGE W. BUSH <u>et</u> <u>al</u>.,           )
                                  )
        Respondents.              )
_____ )
                                  )
HANI SALEH RASHID ABDULLAH        )
<u>et</u> <u>al</u>.,                          )
                                  )
        Petitioners,              )
                                  )
            v.                    )   Civil Action No. 05-23 (RWR)
                                  )
GEORGE W. BUSH <u>et</u> <u>al</u>.,           )
                                  )
        Respondents.              )
_____ )
                                  )
ABDULLAH IBRAHIM ABDULLAH         )
AL RASHAIDAN <u>et</u> <u>al</u>.,             )
                                  )
        Petitioners,              )
                                  )
            v.                    )   Civil Action No. 05-586 (RWR)
                                  )
GEORGE W. BUSH <u>et</u> <u>al</u>.,           )
                                  )
        Respondents.              )
_____ )

-2-

### MEMORANDUM ORDER

Petitioners Jamil El-Banna, Bisher Al-Rawi, Martin Mubanga,[1] Hani Abdullah, Rami Al-Oteibi,[2] and Abdullah Al Rashaidan,[3] in three separate cases seek writs of habeas corpus, challenging the legality of their detention by the United States at Guantanamo Bay Naval Base, Cuba. Respondents moved for a stay of proceedings in each case pending resolution of the appeals in In re Guantanamo Detainee Cases, — F. Supp. 2d — , 2005 WL 195356 (D.D.C. Jan. 31, 2005), appeal docketed, No. 05-8003 (D.C. Cir. March 10, 2005), and Boumediene v. Bush et al., — F. Supp. 2d — , 2005 WL 100924 (D.D.C. Jan. 19, 2005), appeal docketed, No. 05-5062 (D.C. Cir. March 10, 2005). A primary purpose of a stay pending resolution of the issues on appeal is to preserve the status quo among the parties. Washington Area Metro. Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977) (a stay pending appeal is preventative or protective, and seeks to maintain the status quo pending a final determination of issues on appeal); see Warm Springs Dam Task Force v. Gribble, 417 U.S. 1301, 1310 (1974) (granting stay pending appeal to

---

[1]  Petitioner-detainees in Civil Action No. 04-1144.

[2]  Petitioner-detainees in Civil Action No. 05-23.

[3]  Petitioner-detainee in Civil Action No. 05-586.

-3-

maintain the status quo between the parties).  In Civil Action

No. 04-1144, Judge Joyce Hens Green entered a stay order on

February 3, 2005.  (Dkt. # 122.)  In Civil Action No. 05-23, a

stay was entered on March 16, 2005 that nevertheless allowed

petitioners to seek from this court emergency relief in

appropriate circumstances, such as when petitioners reasonably

believe they will be removed from the jurisdiction of this court.

(Dkt. # 16).[4]  In Civil Action No. 05-586, respondents' motion to

stay the proceedings is pending.

In each action, petitioners have moved for a preliminary

injunction to enjoin respondents from transferring any of the

petitioner-detainees from United States custody at Guantanamo Bay

Naval Base to any other location or any other custodian without

providing 30 days notice of the intended transfer or removal.

Petitioners fear that respondents may involuntarily "render" the

detainees to other countries, where they may be subject to

continued detention without due process of law or to mental or

physical abuse, and, by means of transfer, divest this court of

jurisdiction either as a practical or legal matter.  Respondents

oppose petitioners' motions for a preliminary injunction.

_____

    [4]  A protective order was entered in that case on the same
day.  (Dkt. # 17.)

-4-

Petitioners' fears do not appear fanciful.  Petitioners cite
to a report of an investigative journalist describing the
rendition of several named individuals who have been transferred
in and out of United States custody, a practice respondents have
not denied in these proceedings.  Further, respondents concede
they have transferred custody of many Guantanamo detainees to
foreign sovereigns and assert that such transfer divests this
court of jurisdiction over pending habeas corpus petitions.
Another press report cited by petitioners, and not denied by
respondents, indicates that respondents either have, or had,
plans to accelerate the transfer of Guantanamo detainees to other
sovereigns and other locations.

The outcome petitioners fear, if realized, would improperly
subvert the court's ability to adjudicate these actions on their
merits.  See Rasul v. Bush, 124 S. Ct. 2686, 2698 (2004) ("We
therefore hold that [28 U.S.C.] § 2241 confers on the District
Court jurisdiction to hear petitioners' habeas corpus challenges
to the legality of their detention at the Guantanamo Bay Naval
Base.").  Furthermore, such a result would nullify the stay's
purpose of preserving the status quo between the parties.

"It is well established that 'the federal courts may and
should take such action as will defeat attempts to wrongfully
deprive parties entitled to sue in the Federal courts for the

-5-

protection of their rights in those tribunals.'"  <u>Abu Ali v.</u>

<u>Ashcroft</u>, 350 F. Supp. 2d 28, 54 (D.D.C. 2004) (quoting <u>Alabama</u>

<u>Great S. R. Co. v. Thompson</u>, 200 U.S. 206, 218 (1906)).  In

addition, a court may, in appropriate situations, specify

protective conditions in balancing the hardship necessarily

imposed on the party whose suit or execution of judgment has been

stayed pending appeal.  <u>Cooks v. Fowler</u>, 459 F.2d 1269, 1272-73 &

n.27 (D.C. Cir. 1971) (affirming condition of stay requiring

tenant appealing judgment to deposit funds in court registry

pending appeal); <u>see also</u>, <u>City of Portland, Or. v. Federal</u>

<u>Maritime Comm'n</u>, 433 F.2d 502, 504 (D.C. Cir. 1970) (directing

the proponent of a stay in a case challenging shippers' exclusion

of one city's port from service to "be prepared to state reasons

why this court should not impose a conditional stay requiring the

rotation of service among the ports involved pending final review

and determination."); <u>Scott v. Scott</u>, 382 F.2d 461, 462 (D.C.

Cir. 1967) (discussing a stay of execution of judgment

conditioned upon support payments); <u>Center for Int'l</u>

<u>Environmental Law v. Office of the U.S. Trade Rep.</u>, 240 F. Supp.

2d 21, 23 (D.D.C. 2003) (conditioning stay pending appeal on

party seeking an expedited appeal).  Where, as here, the

condition imposed on the proponent of the stay is "neither heavy

nor unexpected," imposing a protective condition is well within a

-6-

court's discretion.  Cooks v. Fowler, 459 F.2d at 249 (quoting

Bell v. Tsintolas Realty Co., 430 F.2d at 482 (D.C. Cir. 1970)

(stating "[w]e have little doubt that . . . [a court] may fashion

an equitable remedy to avoid placing one party at a severe

disadvantage during the period of litigation")).

Therefore, here

> the court will "guard against depriving the processes
> of justice of their suppleness of adaptation to varying
> conditions." Landis v. North American Co., 299 U.S.
> 248, 256 (1936).  Coextensive with a district court's
> inherent power to stay proceedings is the power to
> craft a stay that balances the hardships to the
> parties.  Id. at 255 (noting concern regarding a stay
> causing "even a fair possibility . . . [of] damage to
> some one else."); see also Clinton v. Jones, 520 U.S.
> 681, 707 (1997) (noting that "burdens [to the parties]
> are appropriate matters for the District Court to
> evaluate in its management of the case.").

Al-Oshan v. Bush, Civil Action No. 05-520 (D.D.C. Mar. 31, 2005)

(Urbina, J.) (Order, Dkt. # 12).  Accordingly, it is hereby

ORDERED that respondents' motion for a stay in Civil Action

No. 05-586 (Dkt. # 5) be, and hereby is, GRANTED in part and

DENIED in part.  The proceedings in Civil Action No. 05-586 are

STAYED pending resolution of the appeals pending before the

United States Court of Appeals for the District of Columbia

Circuit, in In re Guantanamo Detainee Cases and Boumediene v.

Bush et al., except that petitioners in Civil Action Nos. 04-1144

and 05-586 may seek emergency relief from this court in

-7-

appropriate circumstances, such as when petitioners have reason
to believe that they are facing the possibility of continued
detention at the request of the United States in a location that
does not provide access to this court.  It is further

ORDERED that in all three cases captioned above,
respondents, their agents, servants, employees, confederates, and
any persons acting in concert or participation with them, or
having actual or implicit knowledge of this Order by personal
service or otherwise, may not transfer or remove the detained
petitioners from United States custody at Guantanamo Bay unless
this court and counsel for petitioners receive thirty days'
advance notice of such transfer or removal.  It is further

ORDERED that, given the ongoing conduct of combatant status
review tribunals, respondents shall file factual returns relating
to each detained petitioner within 30 days after entry of a
protective order in that petitioner's action, unless such returns
have been filed already.  It is further

ORDERED that the motions for a preliminary injunction in all
three cases captioned above (Dkt. # 128, Civil Action No. 04-
1144; Dkt. # 15, Civil Action No. 05-23; Dkt. # 3, Civil Action
No. 05-586) be, and hereby are, DENIED as moot.

-8-

SIGNED this 8th day of April, 2005.


_____/s_____
RICHARD W. ROBERTS
United States District Judge

# Exhibit O

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHERIF el-MASHAD, *et al.*,          :
                                     :
          Petitioners,               :
                                     :
     v.                              :  Civil Action No. 05-0270 (JR)
                                     :
GEORGE W. BUSH, *et al.*,            :
                                     :
          Respondents.               :

## ORDER

   Petitioners' motion for a preliminary injunction [3] is **denied.** Petitioners' motion for an order to show cause [17] is **granted.** Respondents' motion for a stay [16] is **granted.** Petitioners having submitted themselves to the jurisdiction of this Court, and the Court having asserted <u>in personam</u> jurisdiction, <u>see</u> <u>Rasul v. Bush</u>, 124 S.Ct. 2686 (2004), the stay will apply to all proceedings applicable to the petitioners, including without limitation their release, repatriation, or rendition, and it will remain in effect until further order of the Court. **IT IS SO ORDERED.**

         JAMES ROBERTSON
       United States District Judge

# Exhibit P

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAJID ABDULLA AL-JOUDI,              :
et al.,                             :
                                    :
        Petitioners,                :
                                    :
    v.                              :   Civil Action No. 05-301 (GK)
                                    :
GEORGE W. BUSH, et al.,             :
                                    :
        Respondents.                :
                                    :

MEMORANDUM OPINION

Petitioners, four Saudi Arabian nationals, bring this action against Defendants, seeking release from the Guantanamo Bay Naval Station ("GTMO") in Cuba, where they are being detained.[1]  This matter is before the Court on Petitioners' Motion for a Temporary Restraining Order and Preliminary Injunction Requiring Respondents to Provide Counsel for Petitioners and the Court with 30-Days' Advance Notice of Any Intended Removal from Guantanamo.  Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Petitioners' Motion is **granted.**

---

[1] Petitioners are Majid Abdulla Al-Joudi, Yousif Mohammad Mubarak Al-Shehry, Abdul-Hakim Abdul-Raman Al-Moosa, and Abdulla Mohammaed Al-Ghanmi.  There are four other Petitioners, who are Next Friends of the detainees.  The Next Friends obviously are not subject to transfer from Guantanamo.  All references herein will be to the Petitioners who actually are being detained.

I.    **BACKGROUND**

A.    **Procedural History**

Petitioners are being detained at GTMO and have been classified as enemy combatants.[2] On February 9, 2005, they filed a Petition for Writ of Habeas Corpus in this Court. They are among many GTMO detainees who have filed such petitions in the United States District Court for the District of Columbia since the Supreme Court held that "the federal courts have jurisdiction to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing." Rasul v. Bush, 124 S. Ct. 2686, 2699 (2004).

On January 19, 2005, Judge Richard Leon granted the Government's Motion to Dismiss the detainees' Petition for Writ of Habeas Corpus in Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005). On January 31, 2005, Judge Green granted in part and denied in part the Government's Motion to Dismiss in eleven cases consolidated pursuant to the September 15, 2004, Resolution of the Executive Session. In re Guantanamo Cases, 355 F. Supp. 2d 443 (D.D.C. 2005).[3] The cases before Judges Leon and Green have been fully

_____

[2] Petitioners' counsel has not yet been able to meet with her clients and therefore has very limited knowledge of Petitioners' precise circumstances. Upon receiving the proper security clearances, which counsel hopes to obtain in the near future, she will travel to Cuba to meet with her client. Transcript of Motions Hearing ("Tr.") at 15 (March 30, 2005).

[3] Judge Green's Memorandum Opinion and Order did not apply to the instant case, which was filed after the release of her Opinion.

2

briefed in the United States Court of Appeals for the District of Columbia and are under submission.

_____On February 3, 2005, Judge Green granted a stay in the eleven cases to which her January 31, 2005, Opinion and Order applied.  A Motion to Stay the instant case until resolution of Khalid and In Re Guantanamo Cases is pending in this Court.

### B.    Transfers from GTMO

Approximately 540 foreign nationals currently are being held at GTMO.  Decl. of Matthew C. Waxman ¶ 2 ("Waxman Declaration").[4] The Department of Defense ("DOD") states it is conducting a review of each detainee's case, at least annually, to determine whether continued detention is warranted.  Id. at ¶ 3.  Since the Government began detaining individuals at GTMO, the DOD has transferred 211 detainees to other countries.  Id. at ¶ 4.

Detainees are subject to two types of transfer: (1) transfer to the custody of another country, with the understanding that they will be released, Tr. at 22-23; and (2) transfer to the custody of another country with the understanding that the country's government has "an independent law enforcement interest" in them and that they likely will face continued detention and processing by that country's judicial system.  Id. at 24.  In each case, the United States loses all control of the detainees once they are transferred to another country.  Waxman Decl. at ¶ 5.

---

[4] Waxman is the Deputy Assistant Secretary of Defense for Detainee Affairs.  Id. at ¶ 1.

Of the 211 detainees who have been transferred, 146 have been transferred with the understanding that they would be released. Id. at ¶ 7.   The Government represents that most of those individuals actually have been released, Tr. at 29, but it cannot provide precise numbers.  Id.

Sixty-five detainees have been transferred to the control of other countries for detention.  Waxman Decl. at ¶ 7.  Of that group, 29 were transferred to Pakistan; 9 to the United Kingdom; 7 to Russia; 5 to Morocco; 6 to France; 4 to Saudi Arabia; and 1 each to Australia, Denmark, Kuwait, Spain, and Sweden.  Id..

When transfers for detention are being considered, DOD coordinates with various other Government agencies, including the Department of State ("DOS").  Id. ¶ 6.  The Government states that, as a matter of policy, it does not "repatriate or transfer individuals to other countries where it believes it is more likely than not that they will be tortured."  Id..

The Government claims that it ensures compliance with this policy by obtaining "assurances" from officials within the foreign government.  The process for obtaining such assurances "involves a frank dialogue, discussion, [and] communication with officials of the other government."  Tr. at 32.  The Government evaluates the adequacy of the assurances by considering "the identity, position, or other information concerning the official relaying the assurances," Decl. of Pierre-Richard Prosper at ¶ 8 ("Prosper

4

Declaration")[5]; political or legal developments in the country that would provide context for the assurances, id.; and U.S. relations with the country. Id. Senior Government officials ultimately make the final decision on whether to transfer a detainee. Waxman Decl. at ¶ 7. The Government's papers do not indicate which DOD official has this responsibility.

In recent months, a number of newspaper articles about the transfer and treatment of detainees have been published. Some, for example, quote former employees of the United States government who have been involved in transferring detainees to other countries, including countries that practice torture. See, e.g., Dana Priest, Jet Is an Open Secret in Terror War, Wash. Post, Dec. 27, 2004, at A1. In addition, some quote by name former Guantanamo detainees who allege that they have been moved by the United States government to countries where they have been tortured. See, e.g. Douglas Jehl and David Johnson, Rule Change Lets C.I.A. Freely Send Suspects Abroad, N.Y. Times, Mar. 6, 2005, at A1.

On March 11, 2005, an article in The New York Times reported that DOD plans to transfer "hundreds of suspected terrorists to prisons in Saudi Arabia, Afghanistan, and Yemen." Douglas Jehl, Pentagon Seeks to Shift Inmates from Cuba Base, N.Y. Times, Mar. 11, 2005, at A1.

---

[5] Prosper is the Ambassador-at-Large for War Crimes Issues and has supervised the operation of the DOS Office of War Crimes Issues. Id. at ¶ 1.

In response to this article, several petitioners, including
the Petitioners in the instant case, filed motions for temporary
restraining orders and preliminary injunctions. On March 12, 2005,
Judge Rosemary Collyer granted a request for a temporary
restraining order in Abdah v. Bush, No. 04-CV-1254 (D.D.C. March
12, 2005) (order granting temporary restraining order) and denied
a similar request in John Does 1-570 v. Bush, No. 05-CV-313 (March
12, 2005) (order denying request for temporary restraining order).
On March 29, 2005, Judge Henry H. Kennedy granted a Preliminary
Injunction in Abdah.

After the Motion was filed in the instant case, the Government
represented to this Court that none of the parties were scheduled
for transfer within the next several weeks. In addition, counsel
for all parties agreed to a combined hearing on the request for a
temporary restraining order and the request for a preliminary
injunction. On March 17, 2005, based on those representations, the
Court scheduled the hearing on the Motion for March 30, 2005.

## II.   STANDARD OF REVIEW

In considering Petitioners' request for a preliminary
injunction, the Court must consider four factors: (1) whether
Petitioners would suffer irreparable injury if an injunction were
not granted; (2) whether Petitioners have a substantial likelihood
of success on the merits; (3) whether an injunction would
substantially injure other interested parties; and (4) whether the
grant of an injunction would further the public interest. Al-Fayed

6

v. CIA, 254 F.3d 300, 303 (D.C. Cir. 2001).[6] "These factors interrelate on a sliding scale and must be balanced against each other." Serono Labs, Inc. v. Shalala, 158 F.3d 1313, 1318 (D.C. Cir. 1998). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995).

When the balance of hardships tips decidedly toward the movant, it will "ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977) (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)). "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." Id. at 844.

---

[6] The same factors apply when considering a request for a temporary restraining order. Al-Fayed, 254 F.3d at 303, n.2. However, since the Court has granted the Motion for Preliminary Injunction, it is not necessary to apply these factors to their Motion for Temporary Restraining Order.

### III. ANALYSIS

#### A.    Harm to Petitioners

Petitioners argue that they will suffer irreparable harm if transferred to the custody of another country that practices torture or other inhumane treatment of prisoners.    Respondents argue that there is no potential harm to Petitioners, because there is no credible evidence that detainees are being transferred to countries that practice torture; instead, any transfers will be largely for purposes of release.[7]

Irreparable harm to the moving party is "the basis of injunctive relief in the federal courts." CityFed Fin. Corp., 58 F.3d at 747 (quoting Sampson v. Murray, 415 U.S. 61, 88 (1974)). To obtain preliminary injunctive relief, Petitioners must show that the threatened injury is not merely "remote and speculative." Milk Indus. Found. v. Glickman, 949 F. Supp. 882, 897 (D.D.C. 1996).

In this case, there are two obvious and substantial threats to Petitioners.    First, they face the possibility of transfer to a country where they might be tortured or indefinitely confined,

---

[7] The Government also argues that transferring Petitioners from United States custody provides them with the very relief they seek. Tr. at 40.    That argument is overly simplistic, however. Petitioners ultimately seek total freedom from all custody, not just United States custody.    They can only obtain such relief in this litigation if the Court determines that their underlying detention was unconstitutional or illegal.    Furthermore, a determination by a United States court that Petitioners are not enemy combatants might carry significant weight in their home country, thereby facilitating release from custody if they were transferred for continued detention.    Finally, on the most human level, proud people have a strong interest in clearing their names from association with acts of violence and terrorism.

which undeniably would constitute irreparable harm.    While the
Government presents declarations that attempt to mitigate these
concerns, they neither refute Petitioners' claims nor render them
frivolous.[8]    Indeed, the Government admits that 65 of the 211
detainees transferred to date have been transferred for detention,
not release.    Several of the 65 have been transferred to countries
that our own State Department has acknowledged torture prisoners,
including Pakistan, Saudi Arabia, and Morocco.    See Country Reports
on    Human    Rights    Practices    --    2004,    available    at
http://www.state.gov/g/drl/rls/hrrpt/2004. Finally, the Government
was  unable  to  provide  any  details  about  the  type  or  form  of
"assurances" given, the scope of the monitoring that takes place
after transfer, or the consequences of noncompliance.[9]   Tr. at 32-
33.    In  short,  the  threatened  injury  is  not  merely  remote  and
speculative; it is a serious potential threat.

Second, Petitioners face the threat of irreparable harm based
on the potential elimination of their habeas claims.   It is unclear
at  this  point  whether  transferring  Petitioners  would  strip  this
Court of jurisdiction.   See Abdah v. Bush, No. 04-CV-1254, Slip op.
at 7 (D.D.C. March 29, 2005) (transfer to another country "would
effectively extinguish [Petitioners'] habeas claims by fiat"); but

_____

[8] The  Court  notes  that  the  Government's  affidavits  do  not
address  the  Central  Intelligence  Agency's  involvement  in  any
transfer or "rendition" programs.

[9] Notably,  the  Government  was  also  unaware  of  several  other
important facts, such as the availability of extradition treaties
with  Qatar  or  Saudi  Arabia,  or  the  consequences  if  a  detainee's
home country refuses to accept him.

see <u>Abu Ali v. Ashcroft</u>, 350 F. Supp. 2d 28, 54 (D.D.C. 2004)
(holding that an individual detained in Saudi Arabia could survive
a motion to dismiss his habeas claim based on the theory of
constructive custody).    However, given the danger that, upon
transfer, the Court could lose jurisdiction to adjudicate
Petitioners' claims, it follows that such a transfer could obviate
Petitioners' right to "test the legitimacy of [their] executive
detention." <u>Lee v. Reno</u>, 15 F. Supp. 2d 26, 32 (D.D.C. 1998).
Since such a turn of events would certainly constitute a threat of
irreparable harm, an order preserving the status quo in this case
is appropriate.[10]

Both threats are imminent.    While the Court certainly has
relied upon the Government's representations that Petitioners will
not be transferred in the next several weeks, the Government is
clearly maintaining its right to transfer them at any time after
the Court rules upon the instant Motion.    Thus, the threats are not
distant or speculative, and transfer could occur in the near
future.

---

[10] The Court has the authority to issue such an injunction
pursuant to the All Writs Act, 28 U.S.C. § 1651(a), which "empowers
a district court to issue injunctions to protect its jurisdiction."
<u>SEC v. Vison Communications, Inc.</u>, 74 F.3d 287, 291 (D.C. Cir.
1996); <u>see also</u> <u>Abdah v. Bush</u>, No. 04-CV-1254, slip op. at 7 (March
12, 2004); <u>Abu Ali</u>, 350 F. Supp. 2d at 54 (quoting <u>Alabama Great S.</u>
<u>R. Co. v. Thompson</u>, 200 U.S. 206, 218 (1906)) ("It is well-
established that 'the federal courts may and should take such
action as will defeat attempts to wrongfully deprive parties
entitled to sue in the Federal courts for the protection of their
rights in those tribunals.'").

**B.    Likelihood of Success on the Merits**

Petitioners contend that, given Judge Green's Opinion in <u>In re</u>
<u>Guantanamo Cases</u>, they have a substantial likelihood of success on
the merits of their habeas claim.    The Government responds that
Petitioners' claim would be barred because the treaties under which
they seek review are non-self-executing, and because the review
sought would encroach upon the foreign policy authority of the
executive.

To justify granting a preliminary injunction, Petitioners need
not show "a mathematical probability of success."    <u>Washington</u>
<u>Metro. Area Transit Comm'n</u>, 559 F.2d at 844.    Rather, "it will
ordinarily be enough" that the questions raised are so "serious,
substantial, difficult and doubtful, as to make them a fair ground
for litigation."    <u>Id.</u> (quoting <u>Hamilton Watch Co.</u>, 206 F.2d at
740).

The exact chances of success in this case are extremely
difficult to assess.    It is clear, however, that, at a minimum,
Petitioners have raised "fair ground[s] for litigation."
<u>Washington Metro. Area Transit Comm'n</u>, 559 F.2d at 844.    The issues
raised in these motions are sensitive and involve complex
constitutional questions.    Indeed, there are areas of disagreement
even among the judges on this Bench about the legal issues raised
in these Petitions.    Like the issues in <u>Hamdi v. Rumsfeld</u>, <u>Padilla</u>
<u>v. Rumsfeld</u>, and <u>Rasul</u>, there is a strong probability that they
ultimately will be resolved by the Supreme Court.

For example, there is disagreement about whether the detainees have any constitutional rights at all. See Khalid, 355 F. Supp. 2d 311 (holding that Guantanamo detainees have no constitutional rights); but see In re Guantanamo Cases, 355 F. Supp. 2d 311 (holding that Guantanamo detainees have some constitutional rights). There is also disagreement over whether the Court will lose jurisdiction over the cases if Petitioners are transferred to another country.[11] See Abdah v. Bush, No. 04-CV-1254, slip op. at 7 (D.D.C. March 29, 2005); but see Abu Ali v. Ashcroft, 350 F. Supp. 2d at 54. And, there is disagreement about whether the Geneva Conventions are self-executing. See Hamdan v. Rumsfeld, 344 F. Supp. 2d 152, 164 (D.D.C. 2004).

In short, even though the mathematical probability of success is impossible to assess, there can be no doubt that the questions raised here are so "serious, substantial, difficult, and doubtful," as to make them a "fair ground for litigation." Washington Metro. Area Transit Comm'n, 559 F.2d at 844.

---

[11] The Government also argues that the Supreme Court in Rasul failed to protect its jurisdiction over detainees that were transferred. Rasul, 124 S.Ct. at 2690 n.1 (noting that two petitioners had been "released from custody" to the United Kingdom). However, the issue of transfer was not before the Court, and the Rasul petitioners were released to the United Kingdom, not a country known to torture its prisoners. See Country Reports on Human Rights Practices: United Kingdom, available at http://wwws.state.gov/g/drl/rls/hrrpt/2004/41716.htm. ("[t]he [British] Government generally respected the human rights of its citizens").

## C.    Harm to Government

Petitioners argue that there is absolutely no harm to the Government if it is required to provide the Court and Petitioners' counsel with 30 days' notice before transferring them to another country.    The Government contends, however, that there is great potential harm to its ability to conduct negotiations with foreign governments regarding the transfer and subsequent release of GTMO detainees, because such negotiations are often conducted in secret and divulging their details could seriously impair their success.

The Court fails to see any injury whatsoever that the Government would suffer from granting the requested preliminary injunction.    Petitioners request only 30 days' notice of transfer -- a narrow and discrete request that would impose no burden on the Government.    Beyond "vague premonitions" that such relief would harm the executive's ability to conduct foreign policy, there is no concrete evidence that such notice actually will intrude upon executive authority.    Abdah, slip op. at 10 (D.D.C. March 29, 2005).    For example, granting Petitioners' request for 30 days' notice of transfer would not require the Court to second-guess foreign policy decisions of the Executive, would not require the Government to divulge information relating to its negotiations with foreign governments, and would not prevent the Government from speaking with one voice.[12]

---

[12] Such issues could arise if Petitioners ultimately are scheduled for transfer and actually request additional relief. However, speculation about future requests is no justification for denying the narrow relief requested at this point.

13

In weighing the respective hardships imposed upon the parties, the balance clearly tilts in favor of Petitioners.  The requested relief does not constitute even a minimal burden on the Government; at most, it would require the Government to file a few pieces of paper.  Such a minimal consequence does not outweigh the imminent threats of indefinite detention, potential torture, and the elimination of Petitioners' claims before this Court.

**D.    Public Interest**

Petitioners argue that the public has a strong interest in protecting the constitutional rights of detainees.  The Government responds that the requested relief would be contrary to the public interest, because it could frustrate the Government's ability to conduct foreign policy, which ultimately could harm the nation by impairing the effectiveness of the war on terrorism.

The Government's argument is unpersuasive, however, for it "simply conflate[s] the public interest with [the Government's] own position," Abdah, 04-CV-1254, slip op. at 11 (March 29, 2005), and asks the Court to accept its predictions of harm without challenge. This the Court is not prepared to do.  It is obvious beyond words that there is a strong public interest in the zealous pursuit of those who wish to commit acts of terrorism against the United States and its citizens.  However, the narrow relief sought in this case will not compromise that effort in any way.

In contrast, the public interest undeniably is served by ensuring that Petitioners' constitutional rights can be adjudicated

14

in an appropriate manner.    G & V Lounge, Inc. v. Mich. Liquor
Control Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[i]t is always
in the public interest to protect the violation of a party's
constitutional rights").  Retaining jurisdiction over this case is
essential to protecting that public interest.   Thus, the public
interest clearly favors entering the preliminary injunction sought
by Petitioners.

**V.    CONCLUSION**

Petitioners have requested 30 days' notice of any transfer
from GTMO, a concrete, narrow, and minimally burdensome remedy.
Based on the Court's analysis of the four relevant factors set
forth in the applicable caselaw, it is clear that Petitioners have
satisfied their burden.   They are faced with an imminent threat of
serious harm, which far outweighs any conceivable burden that the
Government might face.   Furthermore, while it is not possible to
demonstrate a "mathematical probability of success," the questions
are "serious, substantial, difficult and doubtful."   Washington
Metro. Area Transit Comm'n, 559 F.2d at 844.   Certainly, the
Government cannot argue that its success on the merits is a
foregone conclusion.   Finally, the public interest in granting
Petitioners the requested relief is strong.   Therefore, for the
foregoing reasons, Petitioners' Motion for a Temporary Restraining
Order and Preliminary Injunction Requiring Respondents to Provide
Counsel for Petitioners and the Court with 30-Days' Advance Notice
of Any Intended Removal from Guantanamo is **granted.**

15

An Order will issue with this Opinion.


_____          ___/s/_____
April 4, 2005                  Gladys Kessler
                               United States District Judge


**Copies to**:  **Attorneys of Record via ECF**