IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HASSAN BIN ATTASH, *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-1592 (RCL) |
| GEORGE W. BUSH,<br>President of the United States,<br>*et al.*, | ) ) ) ) ) | |
| Respondents. | ) ) ) | |

**RESPONDENTS OPPOSITION TO PETITIONER'S
MOTION FOR TEMPORARY RESTRAINING ORDER**

Petitioner in this case has moved for a temporary restraining order prohibiting the government from proceeding with an investigation in a particular manner on the ground that the government's action will interfere with the attorney-client privilege. But the government's approach to the investigation was not only designed to protect attorney-client communications from any disclosure which might be considered inappropriate; it was affirmatively approved by this Court. *See Hicks v. Bush*, 452 F. Supp. 2d 88 (D.D.C. 2006) (Robertson, J.). The only reason that petitioner has given for the Court to ignore its earlier ruling is that the investigation has not proceeded at a pace that petitioner would consider commensurate with the exigencies of the situation as described in motion papers filed earlier in this case by respondents. But it is petitioner who has not proceeded in a timely manner. He has known since September of 2006 that this Court considered the government's investigation plan to be appropriate, but did not move to enjoin that plan until August of 2007.

In any event, this Court lacks jurisdiction to grant the relief for which petitioner has

moved. Congress determined as much when it enacted the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7, 120 Stat. 2600 (2006). The D.C. Circuit upheld the constitutionality of that statute in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3078 (June 29, 2007).[1]

Because petitioner cannot overcome the jurisdictional hurdle that he faces, and because he cannot meet the considerable burden he faces in moving for emergency relief, the present motion should be denied in this case.[2]

## BACKGROUND

In June of 2006, three detainees at the Guantanamo Bay Naval Station were found dead in their cells. In the course of investigating the circumstances of their deaths, the Naval Criminal Investigative Service ("NCIS") determined that it would be appropriate to review certain documents from the cells of the various detainees at Guantanamo Bay. In an effort to avoid reviewing documents that might contain attorney-client communications, NCIS decided to set up a mechanism for having such documents reviewed by a "filter team" designed to maintain a divide between the personnel making up the filter team (and an associated special litigation team) and those employees of respondents working on the present litigation. Out of an even

---

[1] The apparent anomaly inherent in the government's having sought affirmative relief in this case at an earlier stage of this case, only to argue now that the Court lacks jurisdiction, is discussed below.

[2] Respondents' counsel understand that petitioner's counsel has been in contact with the chambers of Judge Robertson with regard to the present motion and that Judge Robertson's chambers are monitoring the docket of this case in connection with the motion. Petitioner's counsel suggested that respondents' counsel inform Judge Robertson's law clerk by telephone of the filing of this opposition at or around the time of its filing. The undersigned intend to do so.

greater abundance of caution, respondents decided to seek the Court's imprimatur for that filter team arrangement.

Recognizing that the proposition that this Court had jurisdiction to consider respondents' motion was "admittedly cloudy," *Hicks*, 452 F. Supp. 2d at 98, this Court nonetheless granted respondents' motion in order to "give the government the guidance it seeks." *Id*. at 99. The motion was not granted, however, in every case in which it was made.[3] In most of those cases, including this one, each motion was transferred to Judge Robertson by the judge before whom it had been filed. The transfer order in this case, however, was entered after Judge Robertson had ruled in *Hicks* and no order was ever entered in connection with the government's motion in this case and a few others.[4] *See* Order (dkt. no. 52) (transferring respondents' motion to Judge

---

[3] Respondents' motion was expressly granted in four of the cases cited in footnote 1 of petitioner's motion as cases in which his counsel also wants a temporary restraining order entered. *See Abdah v. Bush*, 04-CV-1254 (HHK) (dkt. no. 192); *Al Hela v. Bush*, 05-CV-1048 (RMU) (dkt. no. 75); *Hatim v. Bush*, 05-CV-1429 (RMU) (dkt. no. 59); *Paracha v. Bush*, 04-CV-2022 (PLF) (dkt. no. 112). The fifth case cited in that footnote – *Belbacha v. Bush*, 05-CV-2349 (RMC) – is one in which respondents withdrew their motion for approval of the NCIS filter team investigation on July 20, 2006, in a notice stating that the cases in which it was filed involved petitioners who either had not been identified as being at Guantanamo Bay or had no attorney-client materials impounded for purposes of the NCIS investigation. *See* Notice of Withdrawal of Respondents' Motion for Procedures Related To Review Of Certain Detainee Materials And Request For Expedited Briefing (dkt. no. 17). Respondents' counsel has conferred with petitioner's counsel by telephone about this matter and it is respondent's counsel's understanding that petitioner's counsel no longer intends to seek relief with respect to the petitioners in the cases listed in footnote 1 of petitioner's motion. Respondents' counsel has informed petitioner's counsel that the filter team has already conducted its review of the seized materials for all detainees with seized materials, with the exception of those detainees in cases listed in the caption of respondents' recent notice of withdrawal. With respect to those detainees, including the petitioner in the case, the filter team has not reviewed the seized materials, but it intends to do so shortly, consistent with the procedures adopted by the Court in *Hicks*.

[4] Three judges of this Court did not transfer respondents' motion to Judge Robertson for decision. Two of the judges denied the motion on jurisdictional grounds, without prejudice to

Robertson for handling and decision). Nonetheless, by granting respondents' motion in the cases in which it did act, the Court has provided the guidance that the government sought when it filed its motion.

As of August 13, 2007, respondents' motion remained pending in fourteen cases. Respondents determined that it was appropriate to proceed with the NCIS investigation even as to the materials related to petitioners in those cases. Although the mere pendency of the government's motion would not, in itself, have prohibited the NCIS from reviewing those documents, the government exercised even further caution in this connection by withdrawing its motion in the fourteen cases and announcing its intention to proceed with the document review. *See* Notice of Withdrawal of Respondents' Motion for Procedures Related To Review Of Certain Detainee Materials And Request For Expedited Briefing (dkt. no. 77).

Having sat silent for nearly a year after the Court approved of the government's investigation approach, petitioner in this case has filed an emergency motion seeking to stop respondents from proceeding with action that the Court has already opined is appropriate. That motion should be denied.

## ARGUMENT

**I.    THE COURT LACKS JURISDICTION TO GRANT PETITIONER'S MOTION**

For one thing, the Court is without jurisdiction to award the emergency relief that is the subject of the present motion under *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3078 (June 29, 2007). In that case, the D.C. Circuit upheld the

---

respondents proceeding with the filter team review, *see Boumediene v. Bush*, 450 F. Supp. 2d 25 (D.D.C. 2006) (Leon, J.); *Thabid v. Bush*, 05-CV-2398 (ESH) (Huvelle, J.) (Minute Order) (Jan. 9, 2007). and one did not rule on it.

constitutionality of the provision of the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7, 120 Stat. 2600 (2006), under which this Court lacks jurisdiction over habeas corpus proceedings such as this case, brought on behalf of aliens detained by the United States at Guantanamo Bay as enemy combatants. Recognizing the anomaly inherent in the government's asking the Court to deny relief that is, in some senses, similar to relief that the government itself had requested and was granted, respondents note that the MCA went into effect after this Court ruled on the government's motion. To whatever degree the jurisdictional question was cloudy before the passage of that statute, at this point it is clear that the Court is without jurisdiction to grant the temporary restraining order for which petitioner moves.

In *Boumediene*, the Court of Appeals for this Circuit made clear that under the MCA this Court lacks jurisdiction over cases such as this one. Under settled rules governing the precedential effect of appellate rulings, regardless of what might happen at some point in the future in the course of the *Boumediene* litigation, this Court has no choice but to act in accordance with the decision in that case. *See Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) ("this Court is bound to follow circuit precedent until it is overruled either by an *en banc* court or the Supreme Court"); *Chambers v. United States*, 22 F.3d 939, 942 n.3 (9th Cir. 1994) ("In this circuit, once a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an en banc court."), *vacated on other grounds*, 47 F.3d 1015 (1995). *See also Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) (holding that district court was bound by principle of *stare decisis* to abide by a Court of Appeals decision even in absence of effective mandate). Activity in the Supreme Court short of a reversal does not diminish the binding nature of the D.C. Circuit's *Boumediene*

decision. As expressed by Judge Henderson in *Ayuda*,

> Nor is it relevant that another circuit has ruled differently on the jurisdictional question or that the United States Supreme Court has granted *certiorari* on the question. Unless and until [the D.C. Circuit's earlier opinion] is reversed or overruled by the United States Supreme Court or by this court *en banc*, [the earlier opinion] remains the law of this circuit and no amount of hardship the appellees may suffer as a consequence can confer jurisdiction on the district court.

*Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring).

Indeed, on more than one occasion since the Supreme Court granted *certiorari* in *Boumediene*, the Court of Appeals for this Circuit has relied on its own precedent in denying motions by Guantanamo Bay detainees seeking relief where jurisdiction is denied under the MCA. *Belbacha v. Bush*, No. 07-5258 (D.C. Cir. Aug. 2, 2007) (attached as Exhibit 1); *Hamlily v. Gates*, No. 07-1127 (D.C. Cir. July 16, 2007) (Petition for Rehearing pending) (attached as Exhibit 2). The *Hamlily* ruling cites the jurisdictional provisions of the Military Commissions Act. In *Belbacha* (which was decided by the Court of Appeals after that Court recalled its mandate in *Boumediene* – action which has no impact on the binding nature of the opinion in that case as circuit precedent, *see Maxwell*; *Vo Van Chau*), the court expressly relied on *Boumediene* and *Maxwell v. Snow* in refusing to deviate from circuit precedent. And in *Belbacha*, the Supreme Court denied a motion for an emergency stay of a transfer. *Belbacha v. Bush*, No. 07A98 (U.S. Aug. 10, 2007) (attached as Exhibit 3).

The MCA constitutes a jurisdictional bar to the relief that petitioner seeks even aside from the question pending before the Supreme Court in *Boumediene*. Even if the Supreme Court were to reverse the Court of Appeals' holding that section 7 of the MCA eliminates federal jurisdiction over pending petitions for habeas corpus, 476 F.3d at 986, 994, another aspect of the MCA would nevertheless preclude this Court from granting an order enjoining filter team

review. A holding by the Supreme Court that the MCA's removal of federal court jurisdiction over habeas petitions is unenforceable – which is all that the petitioners in *Boumediene* are seeking – would not affect the independent provision of the MCA which expressly bars any claims regarding other non-habeas matters "relating to any aspect of detention." *Compare* 28 U.S.C. § 2241(e)(1) (added by MCA 7(a)) ("No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.") *with* 28 U.S.C. § 2241(e)(2) (added by MCA 7(a)) ("[with the exception of Detainee Treatment Act proceedings initiated in the Court of Appeals,] no court, justice, or judge shall have jurisdiction to hear or consider *any other action* against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement [of alien enemy combatant detainees]") (emphasis added). Because the claims asserted by petitioner in this motion fall under section (e)(2), even if the Supreme Court were to invalidate subsection (e)(1), that decision would have no effect on the jurisdictional obstacle most relevant here.[5]

In light of these jurisdictional considerations alone, the Court should deny the requested relief.

---

[5] Even before the enactment of the MCA, one judge of this Court (who did not transfer his "NCIS filter team" motions to Judge Robertson) held that he lacked jurisdiction to consider even the government's earlier motion. *See Boumediene v. Bush*, 450 F. Supp. 2d 25 (D.D.C. 2006) (Leon, J.). Since passage of that statute, the one other judge to have retained jurisdiction over the government's motion denied it on jurisdictional grounds as well. *See, e.g., Thabid v. Bush*, 05-CV-2398 (ESH) (Huvelle, J.) (Minute Order) (Jan. 9, 2007).

## II.    PETITIONER'S MOTION WOULD HAVE TO BE DENIED ON ITS MERITS, IN ANY EVENT

Further, petitioner's argument that this Court should decline to follow its own precedent is wrong. The Court's earlier decision on the merits of the filter team review was correct when made, and remains so now.

It is well-established that a request for a temporary restraining order "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail on a request for a temporary restraining order, a movant "must 'demonstrate 1) a substantial likelihood of success on the merits, 2) that [he] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction.'" *Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (quoting *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).

With respect to the likelihood of success prong, there is no basis for petitioner's requested injunction because this Court has previously approved respondents' filter team procedures in scores of other Guantanamo Bay habeas cases. *See Hicks v. Bush*, 452 F. Supp. 2d 88 (D.D.C. 2006) (Robertson, J.). Petitioner offers no factual basis upon which to distinguish his case from the other cases in which the filter team procedures have been implemented, nor does petitioner offer any intervening legal authority casting doubt on the Court's prior decision.[6]

---

[6] The Court of Appeals' recent decision in *United States v. Rayburn House Office Building, Room 2113*, 2007 WL 2275237 (D.C. Cir. Aug. 3, 2007), is not to the contrary. That case arose in a unique context of a search of a sitting United States Congressman's office by the Executive pursuant to a search warrant issued as part of a criminal investigation targeting the Congressman's activities. The factual context here, of course, involves the search of materials at

-8-

Indeed, it is noteworthy that the only argument petitioner presents on the merits is to mischaracterize respondents as having sat on their rights during the pendency of respondents' motion before this Court.  *See* Petitioner's Motion at 2-4.  As mentioned above, respondents decided to seek the Court's authorization out of an abundance of caution before proceeding with the proposed filter team procedures.  The fact that respondents did not immediately proceed with the filter team review in this case following the Court's decision in *Hicks* does not establish that the NCIS investigation was not exigent, and it certainly does not cast doubt on the correctness of Court's *Hicks* decision.  To the contrary, out of deference to this Court, which had a pending motion before it, respondents declined to proceed with the filter team review in order to provide the Court with an opportunity to rule on respondents' motion.  At this juncture, fourteen months since the three suicides occurred, the interests underlying NCIS' need to complete its investigation cannot seriously be questioned.  As previously explained in respondents' July 7, 2006 Motion, Guantanamo was faced with three concurrent suicides in the same cellblock on the same day, in essentially the same manner, and evidence exists that the deceased detainees had

---

a detention facility, where the Supreme Court has recognized, even in the context of the detention of U.S. individuals possessing constitutional rights, that prison officials must be permitted to take all reasonable steps to mitigate and address potential threats to the security of the institution and the safety of personnel and detainees in those facilities, including with respect to searches of detainee quarters and materials.  *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520 (1979); *Block v. Rutherford*, 468 U.S. 576 (1984).  Indeed, Executive Branch review of attorney-client materials has been expressly allowed by the Court of Appeals in the context of the Detainee Treatment Act cases brought by Guantanamo detainees.  *See Bismullah v. Gates* --- F.3d ----, 2007 WL 2067938, *9 (D.C. Cir. June 20, 2007) (establishing privilege team to review attorney-client material).  Further, the confidentiality of the materials at issue in *Rayburn House Office Building* was a function of a constitutional privilege.  Petitioner in this case has no constitutional rights.  *See Boumediene*, 476 F.3d at 991.  And, the very panel that decided *Rayburn House Office Building* also decided *Bismullah*, in which the court only left open the question of whether Guantanamo Bay detainees have any attorney-client privilege.  2007 WL 2067938, *10 ("Without expressing any view as to whether the attorney-client privilege applies in this context").

secreted suicide notes between themselves and at least one other living detainee and had (mis)used materials for support of the suicides that were on their face reserved for privileged legal communications. *See* July 7, 2007 Motion at 3-8. Indeed, respondents' compelling interests with respect to safety and security at wartime detention facility as well as the safeguards respondents will implement regarding use of the filter team, as previously approved in *Hicks*, support allowing the filter team to proceed without delay.

With respect to the other temporary restraining order factors, petitioner will not suffer irreparable harm if the requested injunction is not granted. As the Court recognized in *Hicks*, respondents' proposed filter team procedures are reasonable and impose appropriate safeguards in order to protect attorney-client communications.[7] *See Hicks*, 452 F. Supp. 2d at 102 ("I find that the proposed procedures are reasonably related to the legitimate penological interest in investigating the detainee suicides and thwarting future prison disruption."). Conversely, an injunction prohibiting respondents from proceeding with the filter team review will compromise Guantanamo's legitimate need to investigate the circumstances surrounding the suicides and to identify any matters directly pertaining to maintenance of safety and security within a wartime detention facility. The public interest similarly would not be furthered by an injunction prohibiting respondents from taking reasonable and appropriate steps that ensure the safety and security of a wartime detention facility and that also protect the attorney-client privilege.

At the very least, if any injunctive order issues on the present motion, it should simply restrict the government to the terms that the Court previously approved in *Hicks*. *See* 452 F.

---

[7] Even in the domestic prison context in which constitutional rights attach, a prison inmate has no reasonable expectation of privacy in his prison cell. *See Hudson v. Palmer*, 468 U.S. 517, 535 (1984) ("We hold that the Fourth Amendment has no applicability to a prison cell.").

Supp. 2d at 104. That would allow the investigation to proceed in a manner that would minimize confusion and would maximize coherence in the result.

## CONCLUSION

For the reasons stated above, respondents respectfully request that petitioner's motion for temporary restraining order be denied.


Dated: August 17, 2007                             Respectfully submitted,

                                                                            PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

   /s/ *Andrew I. Warden*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar 347518)
TERRY M. HENRY
JEAN LIN
JAMES J. SCHWARTZ (D.C. Bar No. 468625)
ROBERT J. KATERBERG
ANDREW I. WARDEN (IN Bar No. 23840-49)
NICHOLAS A. OLDHAM
JAMES C. LUH
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 616-5084
Fax: (202) 616-8470

Attorneys for Respondent