*Cleared for Public Filing*
*September 9, 2008*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE:<br>GUANTÁNAMO BAY<br>DETAINEE LITIGATION<br>) ) ) ) ) | Misc. No. 08-442 (TFH)<br>Civil Action Nos. 04-CV-1254 and,<br>04-CV-1194, 04-CV-1937, 04-CV-2022,<br>04-CV-2215, 05-CV-0270, 05-CV-0329,<br>05-CV-0359, 05-CV-0492, 05-CV-0520,<br>05-CV-0526, 05-CV-0748, 05-CV-0764,<br>05-CV-0877, 05-CV-0883, 05-CV-0892,<br>05-CV-0993, 05-CV-0999, 05-CV-1124,<br>05-CV-1244, 05-CV-1347, 05-CV-1429,<br>05-CV-1457, 05-CV-1490, 05-CV-1555,<br>05-CV-1592, 05-CV-1601, 05-CV-1607,<br>05-CV-1623, 05-CV-1638, 05-CV-1678,<br>05-CV-1983, 05-CV-2104, 05-CV-2185,<br>05-CV-2186, 05-CV-2249, 05-CV-2349,<br>05-CV-2367, 05-CV-2379, 05-CV-2380,<br>05-CV-2386, 05-CV-2479, 06-CV-1668,<br>06-CV-1761, 06-CV-1766, 06-CV-1767,<br>07-CV-1710, 07-CV-2337, 07-CV-2338,<br>08-CV-1221, 08-CV-0987, 08-CV-1185,<br>08-CV-1230, 08-CV-1231, 08-CV-1233,<br>08-CV-1235, 08-CV-1236, 08-CV-1237,<br>08-CV-1238, 08-CV-1440, 04-CV-2046,<br>06-CV-1678, 06-CV-1677, 05-CV-2088, |

Counsel in each of the above cases will file separate notices listing the individual Petitioners who are joining this motion.

## PETITIONERS' RESPONSE TO RESPONDENTS'
## MOTION FOR RELIEF FROM SCHEDULING ORDER

The Court should strike Respondents' motion. First, Respondents failed to confer with Petitioners' counsel in violation of Local Civil Rule 7(m). The Court has severely sanctioned parties in other cases for less consequential violations of the rule. Second, Respondents filed their motion so late—literally, at the last minute, 11:59 p.m., on August 29, 2008—as to secure for themselves in substantial measure the very relief their motion seeks, without a ruling on their motion. The Court should not countenance such self-help.

Alternatively, the Court should deny Respondents' motion. First, the motion makes clear that Respondents do not consider themselves bound by deadlines set by the Court. They filed by August 29, 2008 only *ten* of the first 50 returns required in these cases by the Scheduling Order. No private party would dare treat the Court's deadlines as merely aspirational or be allowed to do so. Second, granting the motion would substantially prejudice Petitioners by further delaying their habeas hearings, contrary to the Supreme Court's admonition in *Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008), that Petitioners are entitled to "a *prompt* habeas corpus hearing" (emphasis added) and must no longer be made to bear "the costs of delay." Third, Respondents' excuses are unpersuasive: their asserted difficulties are of their own making.

The Court must do more than tell Respondents to go and sin no more. The Court should order Respondents to adhere to the Scheduling Order. Moreover, to sanction Respondents for violating the August 29, 2008 deadline, and to deter violations of future deadlines, the Court should deny without further consideration all late-filed motions to amend a return (including motions due but not filed by August 29, 2008), unless the Petitioner waives his objection to a late filing. In the case of late-filed *original* returns, the Court should require Respondents to file within seven days all such returns as were due by August 29, 2008; and if Respondents fail to meet that deadline or any existing future deadline for filing original returns, the Court should impose meaningful sanctions, including appropriate default, evidentiary and/or monetary sanctions.

Nothing less will do to ensure Respondents' future compliance with the Court's deadlines and protect Petitioners' rights.

## STATEMENT OF FACTS

1.    On July 8, 2008, the Court held a status conference at which it invited the parties to express their views as to how these cases should be managed and scheduled. Respondents asked to be allowed until the end of August to file motions for leave to amend factual returns in

the first fifty cases and to continue filing motions for leave to amend returns at a rate of fifty per month after that.  *See* Notice by Resp'ts ¶ 1, *In re Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (D.D.C. July 9, 2008) (Doc. 39).  Respondents assured the Court that their request for a "short lead time" would best facilitate expeditious adjudication of the cases (*id.*), and that they were "dedicating substantial resources to facilitate the expeditious handling of these cases." *Id.* at Ex. A, Letter from Gregory G. Katsas to Hon. Royce C. Lamberth and Hon. Thomas F. Hogan (June 30, 2008).

  2. The Court gave Respondents the scheduling order they requested.  In so doing, however, the Court admonished Respondents to make known to other agencies that proceedings in these cases must be a top priority:

> I think the government has to understand, they're going to set aside every other case that's pending before them in their division, and address these cases first. Put them on notice that I expect the corresponding agencies to do the same; that they're now in a court process, the Supreme Court has spoken, has asked strongly that these be handled promptly . . . .

July 8, 2008 Hearing Tr. at 90.  The Court also warned that delays would be granted only "rarely" and only upon a showing of good cause:

> I'm concerned about time and extensions.  And whatever I decide, I would anticipate the parties will follow and that motion[s] for extension will be rarely granted. And that any type of extension would have to be approved by the court.  It makes no sense to set a schedule and to make continuances.

*Id.* at 60.

  3. Respondents now request an additional thirty days to complete their filing of the first round of returns and offer the Court only their "hope" that they will meet later deadlines, *see, e.g.*, Resp'ts' Mot. at 1, and a pledge to "strive" to do so, *id.* at 12.  Nowhere in Respondents' motion do they assure the Court that they *will* comply with any deadline.  It does not take a crystal ball to anticipate what Respondents will be telling the Court a month from now.

3

**ARGUMENT**

I.   **THE COURT SHOULD STRIKE RESPONDENTS' MOTION.**

   A.   **Respondents Violated Local Civil Rule 7(m).**

Local Civil Rule 7(m) provides, in pertinent part:

Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement.

Rule 7(m) serves important institutional purposes, and this Court does not treat violations of the rule lightly. *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).[1] It is of no moment that the litigants believe that conferring would be pointless. As Judge Urbina has stated:

A meet and confer session is required under Local Civil Rule 7.1(m) [*sic*] regardless of whether or not the litigants believe it will be productive. *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 27 (D.D.C. 2001) (Hogan, C.J.). The purpose of this rule is "for litigants to attempt to resolve, or . . . narrow, the disputed issues to prevent unnecessary waste of time and effort on any given motion," not "to simply determine whether the motion will be opposed." *Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999) (Lamberth, J.).

*Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 71 n.7 (D.D.C. 2002); *see also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008).

To be sure, the Court has occasionally stopped short of sanctioning an offending party, instead admonishing the party to comply with the rule in the future.[2] Such cases, however, are

---

[1]   *See Penobscot Indian Nation v. HUD*, Civ. No. 07-1282 (PLF), 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order granting motion to strike papers filed in violation of Rule 7(m)); *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 (D.D.C. 2002) (denying plaintiffs' motion to lift stay and awarding fees and costs to defendants); *see also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying motion to strike because party "failed to comply with Rule 7(m) and meet its heavy burden in filing its motion to strike").

the exception, not the rule; and the government, of all litigants, is not entitled to such leniency, especially where, as here, so much is at stake. *See Gray Panthers v. Schweiker*, 716 F.2d 23, 33 (D.C. Cir. 1983) ("There is, indeed, much to suggest that government counsel have a higher duty to uphold because their client is not only the agency they represent but also the public at large.").

      **B.**      **Granting The Motion Would Reward Respondents' Self-Help.**

Respondents obviously knew well before the August 29, 2008 deadline that they would not meet the deadline. They could have alerted Petitioners' counsel and the Court that they intended to seek relief from the deadline, leaving enough time for consideration of their motion before the deadline passed. Instead, Respondents waited until literally the last minute on August 29, 2008 to file their motion for relief. By filing their motion so late, Respondents secured for themselves in substantial measure the very relief their motion seeks, without having to justify their requested relief to the Court. This practice should not be tolerated. As Justice Rehnquist, sitting as a Circuit Justice, stated in an analogous context:

> To use the technique of a last-minute filing as a sort of insurance to get at least a temporary stay when an adequate application might have been presented earlier, is, in my opinion, a tactic unworthy of our profession.

*Evans v. Bennett*, 440 U.S. 1301, 1307 (1979) (Rehnquist, Circuit Justice). Indeed, the Seventh Circuit has rebuked the Department of Justice for filing a motion for an extension of time to file a brief on the day the brief was due, thereby securing the relief the government sought without a ruling on its motion. *Ramos v. Ashcroft*, 371 F.3d 948, 949-50 (7th Cir. 2004) ("Filing motions in lieu of briefs, a form of self-help extension, has become increasingly common but is not au-

---

[2] *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 31-32 (D.D.C. 2007); *Alexander v. FBI*, 186 F.R.D. 197, 199 (D.D.C. 1999); *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 71 (D.D.C. 2002).

thorized by any rule, either national or local."); *see also United States v. Lloyd*, 398 F.3d 978, 980-81 (7th Cir. 2005) (also criticizing the practice).

The Court should strike Respondents' motion to deny them any benefit from their last-minute self-help filing.

## II.     ALTERNATIVELY, THE COURT SHOULD DENY RESPONDENTS' MOTION.

### A.     Respondents Effectively Seek Leave To Miss Deadlines.

The Court should deny Respondents' motion because they do not commit themselves to meet future deadlines. Respondents' motion purports to seek "partial and temporary" relief from the deadlines set by the Court in the Scheduling Order. (Of course, there is nothing "temporary" or "partial" about Respondents' request to move each monthly deadline back 30 days.) In reality, however, Respondents leave no doubt that they will consider any deadlines set by the Court purely aspirational. Thus, for example, Respondents state: "We *expect* to finish production of the first 50 returns on a rolling basis throughout September, and *hope* to achieve production of the returns at that rate each month thereafter." Resp'ts' Mot. at 4 (emphasis added). They state that they "will continue to *strive* to meet the 50-per-month requirement." *Id.* at 12 (emphasis added). Respondents offer only to do what they can, in their own fashion and at their own pace, to meet the Court's deadlines, and just too bad for Petitioners if Respondents do not come through.[3]

---

[3]   Petitioners do not contend that Respondents may never obtain an extension for filing a return. Scheduling Order ¶ 4 provides:

> [I]f the government believes that an individual factual return is significantly more complicated than others or a particular detainee's circumstances present unique issues that require more time to complete the return such that processing the return would delay the overall processing, the government shall move for an excep-
>
> (continued…)

### B. Granting The Motion Would Prejudice Petitioners.

The motion also should be denied because of the severe prejudice that Petitioners would suffer if the motion is granted. The prejudice from still more delay, after they have already waited more than six years for their day in court, is self-evident and we need not belabor it. Petitioners are harmed each additional day that they are detained and delayed in their opportunity to present their challenges to their detention. The Supreme Court in *Boumediene*, and this Court in these proceedings, have made the point in the most emphatic terms. Petitioners have been making the point since February 2002. It is past time to permit more delay.[4]

### C. Respondents' Excuses For Delay Are Unpersuasive.

Although Respondents profess to encounter difficulties in obtaining timely interagency clearance of newly drafted factual returns, these alleged difficulties are entirely within Respondents' control to solve. Respondents decided to rely "extensive[ly]" on classified information that they did not previously use to justify Petitioners' detention; they delayed compiling and reviewing the information, and they decided to include DOJ narratives. Resp'ts' Mot. at 3, 6. Such self-engineered hurdles cannot be permitted to justify Respondents' delay.

Respondents have had between twenty and fifty attorneys from DOJ and thirty attorneys from the DOD working full time on these cases. *See id.* at Ex. B, Dell'Orto Decl. ¶ 3; Ex. C, Katsas Decl. ¶ 5. But Respondents have literally *thousands* of lawyers available to them. They

---

tion to the sequencing described above. As with amendments, the Court will only allow exceptions where the government establishes cause.

[4] The fact that Respondents asked for a new schedule right at the deadline also prejudiced Petitioners planning to move for summary judgment promptly on receiving their returns. If Respondents had complied with Rule 7(m) and conferred with counsel regarding their asserted problems meeting the August 29, 2008 deadline, counsel likely would have asked Respondents, or the Court, to move their cases to the front of the line for government review.

easily could have secured 250 lawyers from the U.S. Attorneys' Offices around the country, from DOD, and from the Civil Division. Most of our clients have been incarcerated for more than six years, and the Supreme Court has stated in no uncertain terms that they are entitled to prompt hearings. The time has come for the Respondents to stop complaining about the burdens placed on its lawyers and other resources to comply with the dictates of the courts.[5]

Although Petitioners have not been permitted to see (and therefore object to) the *ex parte*, *in camera* classified portions of the declaration submitted by CIA Director Michael V. Hayden,[6] Director Hayden's unclassified declaration is sufficient to show that the government lacks any sound excuse for failing to meet this Court's deadline. Even after *Boumediene* was decided, on June 12, 2008, DOJ and DOD waited until July to assemble staff and resources. *See* Resp'ts' Mot. at 3. Moreover, according to Director Hayden, Respondents did not provide the first factual returns for CIA review until August 12, 2008, six weeks after Respondents first suggested a deadline of August 29, 2008, and *two months* after Boumediene was decided; and Respondents provided the CIA with returns for the first fifty cases as late as August 25, 2008. *See id.* at Ex. D, Hayden Decl. ¶ 19. Between fifty and eighty DOJ and DOD lawyers, therefore, took well over a month from the issuance of this Court's scheduling order, and two months after *Boumediene* was decided, to generate even a single draft return for CIA review. Any burden Respondents

---

[5] According to Daniel J. Dell'Orto, Acting General Counsel of DOD, DOD's thirty-person team reviewed 1,900 classified documents in 30 days, working at a snail's pace of barely over 3 documents per person per day, excluding weekends. See Dell'Orto Decl. ¶¶ 5-7. Considering that the DTA and DOD's own regulations require annual reviews of detainee files to determine whether continued detention is warranted, DOD's dismal performance is inexcusable (and casts considerable doubt on the thoroughness of its annual reviews).

[6] Petitioners also object to Director Hayden's suggestion that he be allowed to testify *ex parte*, *in camera*. Any such testimony should be under oath and subject to cross-examination by Petitioners' counsel with appropriate security clearances.

8

must shoulder now results from their own decision to junk the original CSRT returns and instead start from scratch, and from their failure to devote adequate resources to get the job done on time. *Cf. Boumediene*, 128 S. Ct. at 2278 (Souter, J., joined by Ginsburg & Breyer, JJ., concurring) ("[W]hether one agrees or disagrees with today's decision, it is no bolt out of the blue.").[7]

The asserted difficulties in obtaining timely interagency clearance of amended factual returns also do not provide a credible basis for delay. The proceedings in first-filed habeas cases, involving habeas petitions on behalf of more than sixty Petitioners, prove the point. Four years ago, Respondents were able to assemble, submit for interagency classification review, and produce returns for more than fifty Petitioners within six weeks. Here, Respondents insist that it will take them about three months—nearly twice as long as in 2004—to do the same.[8]

---

[7] The first detailed DOJ lawyers did not arrive until sometime in July, *see* Resp'ts' Mot. at Ex. C, Katsas Decl. ¶ 7, and the first detailed DOD lawyers did not arrive until mid-July, *see id.* at Ex. B, Dell'Orto Decl. ¶ 3. It is no coincidence that Respondents' decision to start from scratch guarantees that habeas hearings for most Petitioners will be delayed long past the time such hearings would have been held had Respondents relied on the original returns, which Respondents insisted for four years were adequate to justify Petitioners' detention. All of a sudden, Respondents treat those returns as inadequate. If Respondents had not decided to start from scratch, it would have been a simple matter for them to comply with the Court's deadlines.

[8] In a submission dated August 20, 2004 requesting coordination of the pending habeas cases, Respondents asserted, as they do here, that "the information concerning [Petitioners'] seizure and detention has not been maintained in a manner that would facilitate presentation to the Court or a format that is appropriate for submission to the Court. Thus, a significant review and assembly process is necessary to formulate appropriate responses to these petitions." Respondents' Motion To Postpone Response To Petition For Writ Of Habeas Corpus Pending Development Of Coordinated Schedule For Pending Guantanamo Bay Detainee Cases at 10 n.6, *Abdah v. Bush*, Civ. No. 04-1254 (D.D.C. Aug. 20, 2004) (Doc. 11). As here, Respondents also told the Court that "[s]ome of the information could be classified or otherwise protected, which would require establishment of mechanisms for the segregation and handling of such information in consultation with the originating agencies." *Id.* at 10. Yet, in an August 31, 2004 submission in those proceedings, Respondents proposed (and Judge Joyce Hens Green adopted their proposal) to submit the factual returns for the sixty-plus Petitioners on a rolling basis, with the first factual returns to be submitted on or around September 8, 2004 (a week after Respondents proposed their schedule), the majority of the returns by the end of September 2004, and all of the factual

(continued…)

Underlying Respondents' declarations explaining why Respondents have failed to meet the Court's deadline is not that they need more time to gather information, but that the CIA has decided that it must conduct a painstaking "document-by-document, line-by-line" review of all information in Respondents' amended returns, Resp'ts' Mot. at 10, regardless of which agency originated the information, and regardless of its classification level, to determine what information can be released to the Court and counsel who already have the security clearance required for access to this information. Despite their ability and willingness to produce classified returns to the Court and Petitioners' counsel four years ago, Respondents now assert that this time-consuming, special CIA review is needed before the information can be released "outside of the Executive Branch." Resp'ts' Mot. at 7- 8, 9-10. Respondents cite no authority that imposes such a requirement, and such a restriction on dissemination of classified information is not normal practice. See Matthew B. Kaplan Decl. ¶¶ 10-12, Ex. 1 hereto.

With all due respect, this self-imposed requirement appears to be a delaying tactic. Director Hayden suggests that, notwithstanding their security clearances and the severe criminal and civil sanctions they would face for unauthorized disclosure of classified information, *Petitioners' counsel cannot be trusted*. See Hayden Decl. ¶¶ 12-13. This excuse is not credible. Over the last four years, DOD has made available to cleared counsel in multitudes of habeas cases the classified information in Petitioner's CSRT records. Respondents have never alleged, much less proven, that any counsel for Petitioners has improperly disclosed classified informa-

---

returns by the week of October 18, 2004 (six weeks after Respondents proposed their schedule). Respondents substantially complied with the Court's schedule, producing more than fifty returns by October 29, 2004, less than two weeks after their proposed deadline, and less than two months after proposing the schedule. Order Setting Final Deadline For Submission Of Factual Returns at 1, *Abdah v. Bush*, Civ. No. 04-1254 (D.D.C. Oct. 29, 2004) (Doc. 49) .

tion. Yet Director Hayden now asserts that, if classified information is provided to counsel, "unauthorized disclosures . . . are not only probable, but inevitable." *Id.* ¶ 12.

Respondents' own investigators, applying Respondents' own criteria, have determined that counsel for Petitioners are of sufficient integrity, loyalty, and reliability to be trusted with certain categories of classified information. After four years of experience, Respondents cannot now in good faith say that they cannot trust counsel to have access to these very categories of classified information.

Respondents certainly should not be permitted to use their unfounded mistrust of Petitioners' counsel to impose a specially invented CIA review process for the materials that they have decided to use, and then tell the Court that the process they have imposed upon themselves is so laborious that they cannot meet deadlines that Respondents themselves proposed. This special review process is particularly inappropriate here because, in the overwhelming majority of the habeas cases, the classified information that Respondents rely upon is readily available to tens of thousands of individuals with appropriate security clearances, Kaplan Decl. ¶ 14, and there is no indication that Respondents will rely on more highly classified or more stringently controlled information will be used in the future. See Resp'ts' Mot. at 7-8.[9]

### III.    THE APPROPRIATE SANCTION IS DEFAULT AND OTHER RELIEF.

The Court cannot ensure that Respondents will comply with the Court's deadlines, subject to any extensions granted in individual cases, *see* Scheduling Order ¶ 4, unless it makes Re-

---

[9] The exception is the small number of habeas cases involving so-called "high value detainees," previously held in secret CIA prisons, in which the government apparently relies on Top Secret/SCI information, but those cases are not at issue here. To the extent that, in certain other cases, Respondents are considering using more highly classified information or SCI information, it should promptly identify these other cases to the Court and arrange for swift investigations of counsel requiring the appropriate security clearances.

spondents pay a price for violating its deadlines.  The Court should order Respondents to adhere to the Scheduling Order.  Moreover, to sanction Respondents for violating the August 29, 2008 deadline, and to deter violations of future existing deadlines, the Court should deny without further consideration all late-filed motions to amend a return (including motions due but not filed by August 29, 2008), unless the Petitioner waives his objection to a late filing.  In the case of late-filed *original* returns, the Court should require Respondents to file within seven days all such returns as were due by August 29, 2008; and if Respondents fail to meet that deadline or any existing future deadline for filing original returns, the Court should impose meaningful sanctions, including appropriate default, evidentiary and/or monetary sanctions.  Such sanctions will deny Respondents any benefit from their violation of the August 29, 2008 deadline and future deadlines.

Petitioners have conferred with Respondents by telephone, as contemplated by Rule 7(m), "to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement."  Respondents oppose the relief sought.

## CONCLUSION

The Court should strike or deny Respondents' motion and order the sanctions described above.  A proposed order is attached for the Court's convenience.

    Respectfully submitted,

    /s/
    _____
    David H. Remes
    D.C. Bar. No. 370372
    APPEAL FOR JUSTICE
    1106 Noyes Drive
    Silver Spring, MD 20910
    (202) 669-6508 (phone)
    remesdh@gmail.com

        S. William Livingston
        D.C. Bar. No. 59055
        Alan A. Pemberton
        D.C. Bar. No. 367108
        COVINGTON & BURLING LLP
        1201 Pennsylvania Ave., N.W.
        Washington, DC 20004-2401
        (202) 662-6000 (phone)
        (202) 778-6000 (fax)
        wlivingston@cov.com
        apemberton@cov.com

        Marc D. Falkoff
        D.C. Bar No. 491149
        NORTHERN ILLINOIS UNIVERSITY
        COLLEGE OF LAW
        DeKalb, IL 60614
        (347) 564-5043 (phone)
        (815) 753-9301 (fax)
        mdf19@columbia.edu

        *Counsel for Petitioners*
        *Civil Action No. 04-CV-1254*