**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FILED WITH THE
COURT SECURITY OFFICER
CSO:
DATE:

HASSAN BIN ATTASH, *et al.*                    )
                                               )
                    Petitioners,               )
          v.                                   )
                                               )        Civil Action No. 05-1592 (RCL)
BARACK H. OBAMA, President of the              )
United States, *et al.*,                       )
                                               )
                    Respondents.               )
                                               )

## MEMORANDUM OPINION

Now before the Court are three discovery motions [176] filed by petitioner Bin Attash.

Petitioner has filed motions to compel: (1) exculpatory evidence and automatic discovery

pursuant to §§ I.D.1 and I.E.1 of the Amended Case Management Order (2) evidence relating to

physical and psychological coercion; and (3) additional permissive discovery. Upon

consideration of the motions, the consolidated opposition, the consolidated reply, and the

consolidated surreply, the motions will be GRANTED in part and DENIED in part for the

reasons set forth below.


## I.      BACKGROUND

This Court is operating under the Case Management Order ("CMO") [125] entered on

November 6, 2008, as amended [140] on December 16, 2008. Section I.D.1 of the Amended

CMO requires the government to "disclose to the petitioner all reasonably available evidence in

its possession that tends materially to undermine the information presented to support the

1

government's justification for holding the petitioner." "Reasonably available evidence" is

defined as "evidence contained in any information reviewed by attorneys preparing factual

returns for all detainees; it is not limited to evidence discovered by the attorneys preparing factual

returns for the petitioner." § I.D.1. The government has certified that it has provided all

exculpatory information pursuant to § I.D.1 of the Amended CMO [173], and the petitioner has

filed motions asserting that the government has failed to comply with the CMO by neglecting to

turn over various items.

In addition to exculpatory information, the Amended CMO also requires, that if requested

by the petitioner, the government shall disclose:

> (1) any documents and objects in the government's possession that the
> government relies on to justify detention; (2) all statements, in whatever form,
> made or adopted by the petitioner that the government relies on to justify
> detention; and (3) information about the circumstances in which such statements
> of the petitioner were made or adopted.

Amended CMO § I.E.1.

Finally the petitioner has moved for five types of "good cause" discovery, as permitted if

the petitioner meets the four-part test in Section I.E.2 of the Case Management Order.

## II.   APPLICABLE LAW

In response to the petitioner's request for exculpatory information, the Court is operating

under the following legal framework: First, the Court must scrutinize whether the petitioner has

made specific requests for exculpatory information. If he has not, the Court will not order further

evidence production. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("In the typical case

where a defendant makes only a general request for exculpatory material under *Brady v.*

*Maryland*, 373 U.S. 83 (1963), it is the State that decides which information must be

2

disclosed."). *See also United States v. Brooks*, 966 F.2d 1500, 1505 (D.C. Cir. 1992) (stating that *in camera* review of alleged *Brady* material by the district court is unnecessary unless the defendant identifies specific exculpatory evidence that the prosecution withheld") (internal citations omitted).

If the requested information is specific and exculpatory on its face, the Court will order that the government turn it over to the petitioner. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . ."). If, however, the petitioner has raised a colorable claim that certain information is exculpatory (as defined by the CMO), but the Court cannot conclusively rule on its character absent an examination of the evidence, the Court will scrutinize the evidence *in camera*. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files."). If, after *in camera* examination, the Court concludes that the evidence is exculpatory, it will order that it be produced to the petitioner. Finally, if the petitioner has failed to make a specific, colorable claim that the discovery requested does in fact contain exculpatory information, the Court will deny the petitioner's request.

With the relevant legal framework in place, the Court will now turn to the evidence requested by the petitioner.

## III.   ANALYSIS

### A. Petitioner's Motion for Exculpatory Information and Automatic Discovery

The petitioner has filed a motion for production of exculpatory information and automatic

3

discovery, making various discovery requests. The Court will take each request in turn.

1.    **The August 29, 2006 CITF Report of the Interrogation of** ████████████

In the factual return, the government alleges that petitioner bin Attash was involved in a

plot to destroy American vessels in the Straits of Hormuz. The government alleges that Attash's

role was to purchase necessary items for the plot in the local community. Factual Return ¶ 33. It

also alleges that the petitioner "expressed his knowledge" that the ship was "to be used to

transport weapons, explosives, and possible uranium . . . ." Factual Return ¶ 34. Petitioner's

counsel state that they have seen[1] an August 29, 2006 interrogation report of another detainee at

Guantanamo Bay, ████████████ (████████), in which ████████ discusses the alleged plot in

detail but does not mention petitioner's name as someone who was involved. Further, petitioner

states that ████████ explains that the boat he purchased (the boat the government alleges was

used in the Straits of Hormuz plot) was intended to be used for a small cargo business.

Petitioner's discovery request is specific; however, the evidence requested is merely neutral, and

not exculpatory. ████████ failure to mention the petitioner in the August 29, 2006 may not be

inculpatory; however, it also does not tend to undermine anything in the factual return.

Moreover, the fact that ████████ states that the boat was to be used for the small cargo business

also does not undermine the government's justification for holding the petitioner. The

government alleges that the petitioner expressed knowledge that a boat to be used in the plot was

to be purchased. The government justification for holding the petitioner is merely that he had

knowledge that a boat was to be purchased for use in the plot—the government does not rely on

---

[1]Petitioner's counsel state that they have seen the August 29, 2006 interrogation report of
████████ but that they do not have a copy of the report. (Petitioner's Mot. at 9.)

4

the character of any boat in particular as justification for holding the petitioner himself. If it becomes apparent that the government begins to rely on the nature of the boats purchased as justification for holding the petitioner, the Court can order the production of the statement at that time. At this time, however, the petitioner's request will be denied.

### 2.   Visual Documentation of the "30 Foot Wooden Boat"

Similarly, the petitioner's request for visual depictions of the 30 foot wooden boat will be denied at this time. As for the boat plot, the government merely relies on the petitioner's knowledge that a boat was to be purchased for use in a plot in which "small, explosives-laden boats would be launched." Factual Return ¶ 33. The government does not, however, rely on the character of any individual boat as justification for holding the petitioner. Indeed, the government acknowledges that the petitioner's role in the plot was too attenuated for the actual boat to have any relevance to the petitioner's case. (*See* Government Opp'n at 10) (stating that the "government does not assert that petitioner was involved in purchasing the boat").

### 3.   Documents Showing that "Mugheera" was an alias for someone other than Petitioner

The petitioner also learned that during one of ██████████████ interrogations, he stated that the petitioner was known by the alias of "Mugheera." The petitioner contends that because this alias appears nowhere else in the factual return, there must be documents that show "Mugheera" is actually the alias of another person. However, the petitioner has pointed to nothing beyond mere speculation that such documents exist. Absent a specific and colorable claim that the government has not produced material exculpatory evidence, the Court cannot order the government to reconduct a search or produce evidence to the Court for *in camera*

5

UNCLASSIFIED// FOR PUBLIC RELEASE

review. Accordingly, the petitioner's request for any documents that indicate Mugheera is an alias for someone other than the petitioner will be denied.

**4.    Petitioner's Statements Denying Involvement in the Allegations Contained in the Factual Return**

The petitioner also states that he has given numerous statements of denial over the course of his detainment but that the government only provided one statement of denial in the factual return. The length of the petitioner's detention combined with the fact that the government has not denied these allegations leads the Court to conclude this exculpatory evidence likely exists and has not been turned over. The Court agrees with the petitioner that any denials of petitioner's involvement in the allegations detailed in the factual return are exculpatory because they tend to undermine any other statements in which the petitioner does admit involvement in the plot. *United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence . . . as well as exculpatory evidence, falls within the *Brady* rule."). Accordingly, the government will be ordered to disclose to the petitioner any reasonably available evidence that show the petitioner denied involvement in the allegations contained in the factual return.

**5.    Evidence that Other Individuals Owned or Leased the Guest House Where bin Attash was Captured**

The petitioner also requests information that shows that other individuals owned or leased the Karachi safehouse where bin Attash was captured. However, the only evidence that the petitioner has provided that this information even exists is a version of the ▆▆▆▆▆▆▆[2] for ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, which states that ▆▆▆▆▆▆▆▆▆▆▆▆

---

[2] The Department of Defense ▆▆▆▆▆▆▆ that the DoD maintains on each detainee is often referred to as a ▆▆▆▆▆

6

█████████ There is nothing beyond mere speculation that indicates that this would preclude bin

Attash from also owning or operating the guesthouse or from owning another guesthouse.

Accordingly, because the petitioner has not presented a colorable claim that evidence of others

owning or leasing the guesthouse exists—and even if it does, that this evidence is

exculpatory—the petitioner's request for information showing that others owned or leased the

Karachi safehouse will be denied.

6.   **Evidence that Shows** ████████████████████ ████████ used
     **the alias** ████████

The government has also alleged that the petitioner rented the guesthouse under the name

"Sayyid Nur." Factual Return ¶ 35. However, the petitioner has pointed to evidence[3] that shows

████████ who was captured with the petitioner, was known by the alias of ████████

(Petitioner's Ex. 22 at 1.) That evidence, if true, would tend to materially undermine the

government's position that the petitioner was known by the alias of ████████ as it would

present evidence that ████████ not the petitioner, was actually known by the alias of ████████

Accordingly, the Court will order that the government produce to the petitioner all reasonably

available evidence that indicates ████████ was known by the alias of ████████

7.   **Evidence that Other Individuals Were Captured with Remote Detonating**
     **Devices**

The petitioner has also discovered a report that states: (1) ████████ was captured along

with the petitioner (2) ████████ was apprehended with 6–8 electronic timing devices, but that (3)

does not state that the petitioner was apprehended with any electronic timing devices.

---

[3]The petitioner has a copy of the ████████████████ from discovery that DOJ
attorneys disclosed to petitioners in other Guantanamo cases. However, the attorneys in this case
did not disclose the ████████████████ (Pet.'s Mot. at 13.)

7

(Petitioner's Ex. 22 at 1–2.)  The petitioner therefore requests any evidence indicating that ███████ was captured with the remote devices and/or admitted ownership to the devices.  The Court agrees with the petitioner that evidence that attributes remote detonating devices to others who were captured at the same time as the petitioner materially undermines the government's assertion that remote detonating devices are attributable to the petitioner.  Accordingly, the petitioner's request for this information will be granted.

8.      **Statements that Reflect bin Attash was a** ████████████

The petitioner, relying on summary interrogation report of ███████ produced by the government, has learned that ███████ gave a statement that bin Attash was a ███████ was ███████ and was ████████ when he allegedly ██████████████████████.  The petitioner argues that this type of evidence is exculpatory because it would show that the petitioner was ████████████████████████████ (Petitioner's Mot. at 14.)  Accordingly, the petitioner requests the full statements and other materials that characterize the petitioner as a ████████  It is not apparent to the Court how statements such as the statement that bin Attash was a ████████ indicates that the petitioner was ████████ ████████ or that those type of statements materially undermine any other information that is relied on by the government in its factual return.  Accordingly, bin Attash's request for this information will be denied.

9.      **Documents that show** ████████████ **is Unreliable**

The petitioner has also pointed to other documents that have come into his possession that show ███████ is receiving perks such as ████████████████████████████ ████████████████████ at Guantanamo.  The petitioner learned of this through

8

documents disclosed by DOJ attorneys in other Guantanamo cases, but these documents were not turned over to petitioner in his case. The government argues that ███████ was "minor" and that it is "not exculpatory" because it was approved as a perk one year after ██████ gave a statement related to this petitioner. While this may factor into the Court's decision regarding the extent (if any) that ████████ statements should be discredited, the Court cannot agree that a government witness receiving perks ████████ is "not exculpatory."[4] As a result, these documents and any other reasonably available evidence showing that ██████ is receiving perks ████████ are clearly exculpatory and should be produced to the petitioner.

### 10. Other Documents Showing that Government Witnesses are Unreliable

The petitioner has also made a generalized request that the Court order the government to disclose any evidence that the individuals (including interrogators) on whom the Government relies are biased or unreliable. The petitioner has not made this request with enough specificity for the Court to know that this evidence exists or for the Court to order *in camera* review of any specific documents or set of documents.[5] With respect to ████████ however, whose statement the government relies on, the petitioner has pointed to specific evidence indicating that ██████ was

---

[4] *See United States v. Bagley*, 473 U.S. 667, 676 (stating that impeachment evidence falls within the *Brady* rule). Impeachment evidence includes any benefits offered to the witness, such as monetary rewards, *Banks v. Dretke*, 540 U.S. 668, 698 (2004), or offers of leniency, *Giglio v. United States*, 405 U.S. 150, 154–55 (1972), as well as any evidence that shows a government witness is unreliable. *See Kyles v. Whitley*, 514 U.S. 419, 454 (1995).

[5] While the Court cannot order the government to conduct a generalized search, it agrees that the government should have turned over "any evidence that tends to materially undermine the evidence that the Government intends to rely on its case-in-chief . . . such as evidence that casts doubt on a speaker's credibility, evidence that undermines the reliability of a witness's identification of [the petitioner], or evidence that indicates a statement is unreliable because it is the product of abuse, torture, or mental or physical incapacity." *Al Odah v. United States*, No. 02-828 (CKK), February 13, 2009, Docket [474] at 2.

9

physically and/or psychologically coerced prior to giving statements. Accordingly, if the

government wishes to rely on any statement of [redacted] it must provide any evidence that he

was physically or psychologically coerced prior to or contemporaneous with the time that he gave

the statement that the government relies on.

### 11.   Photographs shown to any Detainee on whom the Government Relies to Justify the Detention of the Petitioner

Petitioner also requests photographs shown to other detainees that the government may

have used to identify the petitioner. The petitioner has offered nothing beyond mere speculation

that indicates that these photographs are exculpatory. As a result, the Court will not order *in

camera* review or production of the photographs.

### 12.   Documents Showing that the Petitioner is Not affiliated with al-Qaida or the Taliban

This request is not made with enough specificity to allow the Court to meaningfully

review the request. In the absence of a colorable claim for specific exculpatory evidence, the

government makes the call on whether a particular piece of information is exculpatory. It goes

without saying that if this evidence is reasonably available it should have been turned over to the

petitioner. However, the Court has no reason to believe that this evidence exists and that the

government has failed to turn it over to the petitioner.

### 13.   Documents that show that the Training Camps and Guesthouses Petitioner Allegedly Attended were not Affiliated with al-Qaida or the Taliban

The petitioner also argues that the government should turn over any evidence indicating

that the alleged training camps that the petitioner attended or the guesthouses he stayed at were

not affiliated with al-Qaida or the Taliban. Again, this evidence, if it exists, should have been

10

turned over by the government. However, the petitioner has given no evidence that would

warrant the Court to order the government to reconduct a search for these materials.

**14.    Documents that show bin Attash was confused with** ████████████████

████

The petitioner also requests evidence of misidentification; including any evidence that the

interrogators or interpreters confused the petitioner with ████████████████    Indeed,

any "evidence that undermines the reliability of a witness's identification of one or more

petitioners" should be disclosed. *Al Odah v. United States*, No. 02-828 (CKK), February 13,

2009, Docket [474] at 2.  However, the petitioner has not provided anything beyond mere

speculation that evidence of misidentification exists.  Accordingly, the Court has nothing specific

to order turned over to the petitioner or for *in camera* review.

**15.    Documents from the Administrative Review Board or Combatant Status
        Review Tribunal**

To the extent that this evidence is reasonably available and contains information that is

either exculpatory or required to be disclosed by the Amended CMO or this Court's orders, it

should be turned over to the petitioner.

**16.    Unredacted Copies of Intelligence Reports**

The petitioner also requests unredacted copies of three intelligence reports that are

appended to the factual return, relying on Section I.E.1 of the Amended CMO, which requires the

government to disclose "any documents and objects in the government's possession that the

government relies on to justify detention."  The government, argues, however, that it is (1) only

relying on the "unredacted" portions of the documents to justify detention of the petitioner; and

(2) that the petitioner does not have a "need to know" the redacted information.  The Court

11

rejects the government's interpretation of the Amended CMO.  Section I.E.1 requires the

government to disclose any documents that the government relies on to justify detention, not

merely portions of those documents.  Accordingly, the default procedure under Section I.E.1

would be for the government to disclose the entire document.  If the government believes it has

compelling reasons to withhold disclosure because of the nature of the information involved, it

may move for an exception.  § I.F.  However, in deciding whether an exception will apply, the

Court will have to undertake an *in camera* review of the unredacted reports.  *Al-Odah v. United

States*, 559 F.3d 539, 545 (D.C. Cir. 2009) (rejecting the government's argument that when it

certifies that redacted material in the factual return is immaterial, that certification is sufficient to

preclude the district court from undertaking an *in camera* review for relevancy and materiality).[6]

If, in accordance with the *Al-Odah* opinion, the Court concluded that the redacted information

was relevant, material, and that there were no feasible alternatives to disclosing the classified

information, the government would be required to disclose the redacted portions.  Because the

intelligence reports are to be disclosed under the plain language of the CMO, however, and

because the government has not moved for an exception, the Court will order the unredacted

reports produced.  If the government wishes to move for an exception under Section § I.F, it may

do so, but it must simultaneously produce the unredacted reports to the Court for *in camera*

---

[6]The Court also rejects the government's argument that *Al-Odah* has "no relevance here." (Government's Surreply at 2.)  In *Al-Odah*, Judge Leon, after *in camera* examination of classified documents, ordered that they be produced to the petitioner because they were relevant to the case. 559 F.3d at 543.  The Court of Appeals vacated Judge Leon's ruling and stated that classified information relied on in a factual return must only be disclosed to the petitioner if it is relevant *and* material to the litigation.  The Court of Appeals stated that it was the court's obligation, not the government's, to make this determination, and that the court could allow an alternative if the alternative would adequately substitute for unredacted access to the material.  *Id.* at 547.

12

review.

17.    **Underlying Primary Documents**

Petitioner requests underlying primary documents for each Intelligence Information

Report ▬▬ , Summary Interrogation Report ▬▬ , and ▬▬▬▬▬▬▬▬

contained in the Factual Return. This request is inconsistent with the purpose of the Amended

Case Management Order. Although the original case management order required that the

government produce "any documents or objects in its possession that are referenced in the factual

return," the Amended Case Management Order only requires "documents and objects in the

government's possession that the government relies on to justify detention." Unless the

government relies on the underlying primary documents, they need not be produced.

18.    ▬▬▬▬▬▬ **or Detonating Devices**

The petitioner has also requested that the government disclose any ▬▬▬▬▬ or

detonating devices that are referenced in the Factual Return. Factual Return ¶ 38. Petitioner

argues that he is entitled to ▬▬▬▬▬ both because of his allegation that it is dubious that a

▬▬▬▬▬ can be turned into a detonating device and because the CMO requires that the

government produce "any documents and objects in the government's possession that the

government relies on to justify detention." Amended CMO I.E.1(1). The government argues,

however, that it is not relying on the objects themselves to justify detention but merely

intelligence reports that the petitioner had the devices. The Court agrees with the government's

interpretation. When stating that the petitioner was captured with remote detonating devices, the

government cites to an intelligence report, not to the objects themselves. Factual Return ¶ 37.

Accordingly, while the intelligence reports must be disclosed to the petitioner, the objects do

13

not.[7]  To require otherwise would be to ignore the language of the Amended CMO and revert to

the Original CMO, which required production of any objects "referenced in the factual return."

**19.    Petitioner's Statements that are Included in the Factual Return**

Section I.E.1 of the Amended CMO requires the government to turn over "(2) all

statements, in whatever form, made or adopted by the petitioner that the government relies on to

justify detention; and (3) information about the circumstances in which such statements of the

petitioner were made or adopted." The government has included summaries of five statements

that the petitioner made in the factual return. However, it has refused to turn over the actual

statements to the petitioner, claiming that this is not required under the CMO. The Court rejects

the government's argument and adopts the analysis of Judge Bates on this issue:

> [T]he Court rejects respondents' argument that they have already complied with
> section I.E.1(2) of the Case Management Order. The phrase "in whatever form" is
> plainly meant to expand respondents' obligation, not cabin it. As written, section
> I.E.1(2) requires that if respondents rely on one of petitioner's statements to
> justify detention, then they must produce <u>all forms of that statement</u>. Producing
> only statements in the particular form that the government has chosen to use is
> contrary to the plain language of section I.E.1(2) and defies common sense.
> Therefore, respondents have not complied with the Case Management Order by
> producing only that which was already appended to the Factual Return.

*Zaid v. Bush*, Case No. 05-cv-1646 (JDB), Docket [130] at 2.  If the government wishes to use

petitioner's statements against him, it must produce all forms of that statement to the petitioner

as well as the circumstances in which the statements were made or adopted, which would include

interrogation logs.

**20.    Top Secret Documents or Objects on which the Government Relies to**

---

[7]The petitioner remains free to argue that the government's assertion that ███████████
███████were "remote detonating devices" is dubious because it has failed to turn over the
devices or any analyses of the devices.

14

### Support the Allegations Contained in the Factual Return

The petitioner speculates that the government has not reviewed and/or turned over any Top Secret documents in its possession regarding this case. The petitioner's claims are speculative and the government denies the petitioner's claims. Accordingly, this request will be denied.

**21.   Other Exculpatory Evidence**

The petitioner also states that the government has not turned over evidence that is being turned over in other cases and should therefore be reminded of the definition of exculpatory. The petitioner, citing to the frustrations of other judges on this Court, also urges the Court to require government counsel to provide written explanations stating the scope of what it has done to search for exculpatory materials. As noted above, this is beyond the scope of the general legal framework that applies to a Court's duty to order the production of exculpatory evidence. Moreover, the Court does not agree with the petitioner, at this time, that the government's conduct in producing discovery has been so egregious that it warrants the Court imposing additional burdens on the government. As a result, the Court will not order the government to re-search for general exculpatory information or to certify the searches that it has conducted.

However, in accordance with other judges of this Court, the Court will consider that information compiled by the Executive Task Force created by President Obama's January 22, 2009 Executive Order[8] is reasonably available information. *See, e.g., Alhami v. Obama,* Case No. 05-359 (GK), May 11, 2009, Docket [189] at 3 (stating that "reasonably available evidence" under § I.D.1 of the Case Management Order includes "any evidence discovered during the

---

[8]Executive Order No. 13,492 at § 4(c)(1), 74 Fed. Reg. 4897 (Jan 22, 2009).

15

ongoing review of Guantanamo cases ordered by President Obama on January 22, 2009"); *Abdah v. Obama*, Case No. 04-1254 (HHK), April 8, 2009, Docket [477] at 5 (same); *Alsawam v. Obama*, Case No. 05-1244 (CKK), April 6, 2009, Docket [158] at 7 (same); *Alkhemisi et al v. Bush*, Case No. 05-1983 (RMU), April 23, 2009, Docket [144] at 3 (same).

As noted by Judge Bates, "The Executive Order will presumably add to the consolidated files now in the respondents' possession or create a new, more comprehensive set of consolidated files on each detainee. These files will be a new source of easily-accessible information about petitioner . . . ." *Zaid v. Bush*, 596 F. Supp. 2d 11, 15 (D.D.C. 2009). Not only is the information compiled by the Executive Task Force a readily-available source of information for DOJ attorneys, but the government has conceded that, if exculpatory information on a given detainee exists, the Task Force "offers the prospect of revealing significant new pieces of exculpatory information . . . ." (Petitioner's Mot. for Reconsideration, Case No. 08-mc-442 (CKK), Docket [1755-2] at 16–17.) The Court cannot turn a blind eye to the Task Force's emergence as a reasonably available source of information that has the prospect of revealing significant exculpatory evidence. Moreover, the Court is "unwilling to accept a situation in which both the Task Force and the Court simultaneously review the Petitioner's status as a detainee at Guantanamo Bay, but the Court does so with less information than that is currently available to the Attorney General and the Task Force." *Alsawam v. Bush*, Case No. 05-cv-1244, April 17, 2009, Docket [156] at n.1. The government's weak, generalized assertions that the search for exculpatory information would be too burdensome cannot trump the Supreme Court's command that this Court give a detainee a "meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." *Boumediene*

16

*v. Bush*, 128 S. Ct. 2229, 2266 (2008).

### B. Petitioner's Motion For Disclosure of Evidence Relating to Torture and Abuse

Petitioner has separately filed a motion for disclosure of evidence relating to torture and abuse. Petitioner alleges, through a declaration of his attorney as to the petitioner's recollection of his experiences (Petitioner's Ex. 2), that he was subject to abject physical and psychological coercion in Jordan, in a "Dark Prison" in Afghanistan, and in Bagram prior to his rendition to Guantanamo Bay. Petitioner states that he was taken to Guantanamo Bay, Cuba, on or about September 19, 2004. At that time, petitioner states that he was told that his previous interrogations had been reviewed and that he would be asked the same questions again. He also said that when he told his interrogators that his responses to previous interrogations were lies told in order to make the physical pain stop, they threatened to return him to Jordan and the Dark Prison. (Petitioner's Mot. for Evidence of Torture at 10–11.) The allegations are recounted with enough specificity—and the government does not deny them—that the Court is persuaded that the petitioner has made a colorable claim as to the fact that he was subject to these conditions during the period of 2002-2004.

Assuming that the physical or psychological coercion actually occurred prior to or simultaneously to the time that the petitioner gave the five statements that the government relies on in the factual return, evidence of that coercion would be exculpatory. The government argues that even if the coercion occurred, evidence relating to the coercion is not exculpatory because the statements that the government relies on were nonetheless "voluntary." Petitioner, on the other hand, includes argument as to why the alleged abuse renders the statements involuntary. Of course, the Court need not decide whether the statements were voluntary at this time. Instead,

17

the Court is merely limiting its ruling to whether the evidence would be exculpatory under the

CMO. Indeed, evidence that the petitioner was physically or psychologically coerced prior to or

simultaneous to giving statements would tend to undermine those statements. Moreover,

although the Court need not decide the issue at this time, evidence of abuse makes it more likely

that the petitioner will be able to prove that his statements were involuntary and therefore

inadmissible. *See Dickerson v. United States*, 530 U.S. 428, 433 (2000) (providing historical

account of inadmissibility of coerced confessions).

As a result, in accordance with other members of this Court, the Court will order that the

government produce to the petitioner any reasonably available evidence that indicates that the

petitioner was subjected to abuse, torture, coercion, or duress prior to or contemporaneous with

the time that he gave any statements that are included in the factual return.[9] *Al-Mithali v. Bush*,

No. 05-cv-2186-ESH, January 9, 2009, Docket [138] at 2 (stating that the government must

produce "[a]ny document that indicates that petitioner was subjected to abuse, torture, or

coercion by any government authorities (including both foreign and domestic authorities"); *Al

Odah v. United States*, No. 02-828-CKK, February 13, 2009, Docket [474] at 2, (stating that the

government must turn over any evidence that "indicates a statement is unreliable because it is the

product of abuse, torture, or mental or physical incapacity"); *Al-Adahi v. Obama*, No. 05-280-

GK, February 12, 2009, Docket [283-2] at 4 (stating that exculpatory evidence "includes any

---

[9]The petitioner requests separate orders from the Court requiring the government to disclose any evidence that the petitioner was "threatened with rendition" to Afghanistan or Jordan, or that he was interrogated by certain individuals known for using coercive techniques. These requests are already covered by the Court's order that the Government produce any evidence of physical and psychological coercion prior to or contemporaneous with the statements that are included in the factual return.

18

UNCLASSIFIED// FOR PUBLIC RELEASE

evidence of abusive treatment, torture, mental incapacity, or physical incapacity which could affect the credibility and/or reliability of the evidence being offered"); *Abdah v. Obama*, No. 04-cv-1254-HHK, April 8, 2009, Docket [477] at 7 (stating that § I.E.1(3) of the Amended CMO, which requires the government to disclose information about the circumstances in which such statements of the petitioner were made or adopted, "surely includes evidence of coercion or duress before or during the time that statement was made"). If the government fails to either deny the petitioner's allegations or produce evidence of the coercion, it will be precluded from using any of the petitioner's statements in the merits of this litigation.

The petitioner also requests evidence that demonstrates that statements of witnesses upon which the government relies were obtained by physically or psychologically coercive methods. Again, if the government intends to rely on the statement of any witness to justify holding the petitioner, it must produce any reasonably available evidence that would undermine the credibility of that witness's statement. *See Giglio v. United States*, 405 U.S. 150, 154 (1972) (stating that "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility" falls within the exculpatory evidence requirement of *Brady*). This includes "any evidence of any physically or psychologically coercive measures used against or inducements offered to a third party before or during the interrogation in which the statement was made, and any medical records of a third party to the extent that such records undermine the credibility or reliability of the third party's statements." *Abdah v. Obama*, No. 04-cv-1254-HHK, Docket [477] at 4–5, April 8, 2009. However, the Court will not specifically order this information, as the petitioner has not pointed to any specific evidence that any of the witnesses that the government relies on were coerced, other than those of

19

detainee ███████ Accordingly, the government will be ordered to turn over any evidence

indicating that ██████ was physically or psychologically coerced prior to or contemporaneous

with giving statements against the petitioner in this case.

### C.     Petitioner's Motion for Additional Permissive Discovery

Finally, the petitioner has filed a motion for additional permissive discovery.  To meet the

requirements for additional discovery under the CMO § I.E.2 the petitioner must make discovery

requests that:

> (1) are narrowly tailored, not open-ended;

> (2) specify the discovery sought;

> (3) explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention is unlawful; and

> (4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government.

The petitioner has made five requests for discovery under § I.E.2: (1) the petitioner's

classified case file; (2) the petitioner's medical psychiatric records; (3) the Department of

Defense's ████████████████ (a.k.a. ████████████ for the petitioner and for other

detainees upon which the government relies); (4) additional documents and facts generated by

the review of the petitioner's detention ordered by President Obama on January 22, 2009; and (5)

written discovery.

### 1.     Petitioner's Case File

The petitioner has failed to explain why this request is "*likely* to produce evidence that

demonstrates that the petitioner's detention is unlawful."  Instead, the petitioner merely

speculates that the case file would allow him to "identify and exploit any inconsistencies and contradictions" between the file and the factual return. This speculation does not provide a basis for concluding that the case file would likely produce evidence that would demonstrate the petitioner's detention is unlawful. Accordingly, this request will be denied.

### 2. All Medical and Psychiatric Records Relating to the Petitioner

Again, the petitioner has failed to show that these records would likely show that the petitioner's detention was unlawful. Moreover, to the extent that the records detail alleged "beatings, starvation, sleep deprivation, and other forms of torture," the records are covered by the Court's order of this date requiring the government to produce all reasonably available evidence that the detainee was subjected to physical or psychological coercion or abuse prior to or contemporaneous with the time that he gave the statements that are included in the factual return. Accordingly, this request will be denied.

### 3. The ███████████████ for the Petitioner and Other Detainees on Whom the Government Relies

Petitioner has failed to show that this information would likely show that the petitioner's detention was unlawful. Accordingly, this request will be denied.

### 4. All Documents Related to the Petitioner that were prepared or reviewed in connection with the President's review of the basis for detention

As explained above, the Court will order that the government review the information gathered by the Executive Task Force created by President Obama on January 22, 2009 for discoverable information.

### 5. Written Discovery

The petitioner also requests that he be permitted to issue a limited number of

21

UNCLASSIFIED// FOR PUBLIC RELEASE

interrogatories and/or seek depositions of detainees or interrogators.  Petitioner has failed to

show how this would provide evidence that would likely show that the petitioner's detention is

unlawful.  *See also Boumediene v. Bush*, 128 S. Ct. 2229, 2269 (2008) (stating that habeas corpus

proceedings need not resemble a criminal trial).  Accordingly, that request will be denied.

## IV.    CONCLUSION

For the reasons stated above, the petitioner's motions will be granted in part and denied in

part.  The precise categories of information that the government will be required to produce are

contained in the accompanying order.

SO ORDERED.


_____                    6/11/09
Chief Judge Royce C. Lamberth                              Date

UNCLASSIFIED// FOR PUBLIC RELEASE